

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

13 CV 1410

| | |
|---|---|
| MEGAN RAFFERTY, DEBORAH HAYNES, LEASON JACOB, and DIANA GRAY, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>ROBERT DOAR, in his capacity as its Commissioner of the New York City Human Resources Administration;<br><br>KRISTIN PROUD, in her capacity as Acting Commissioner of the New York State Office of Temporary and Disability Assistance;<br><br>NIRAV SHAH, M.D., in his capacity as its Commissioner of the New York State Department of Health;<br><br>the NEW YORK CITY HUMAN RESOURCES ADMINISTRATION;<br><br>the NEW YORK STATE OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE; and,<br><br>the NEW YORK STATE DEPARTMENT OF HEALTH,<br><br>        Defendants. | No. _____ (S.D.N.Y.)<br><br>RECEIVED<br>MAR 0 1 2013<br>U.S.D.C. S.D.N.Y.<br>CASHIERS |

## COMPLAINT

Megan Rafferty, Deborah Haynes, Leason Jacob and Diana Gray ( "Class

Representatives" or "Plaintiffs"), on behalf of themselves and all others similarly situated,

hereby commence this civil action against Robert Doar, in his capacity as Commissioner of the

New York City Human Resources Administration, Kristin Proud, in her capacity as Acting

Commissioner of the New York State Department of Health, Nirav Shah, M.D., in his capacity

as Commissioner of the New York State Department of Health, the New York City Human

Resources Administration ("HRA"), the New York State Office of Temporary and Disability

Assistance ("OTDA"), and the New York State Department of Health ("DOH") (collectively,

"Defendants") and allege as follows:

## PRELIMINARY STATEMENT

1.      This is a class action for declaratory relief, preliminary injunctive relief, and

permanent injunctive relief to compel Defendants to comply with the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; Section 504 of the Rehabilitation

Act of 1973 ("Section 504"), 29 U.S.C. §§ 701-797b; the Due Process Clause of the Fourteenth

Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1; the New York

State Human Rights Law, N.Y EXEC. LAW § 291 *et seq.*; the New York City Human Rights Law,

N.Y.C. ADMIN. CODE § 8-107; and regulations of the New York State Office of Temporary and

Disability Assistance, 18 N.Y.C.R.R. §303.1.

2.      The ADA, as stated in 42 U.S.C. § 12101(b)(1), was enacted in 1990 to

"provide a clear and comprehensive national mandate for the elimination of discrimination

against individuals with disabilities."

3.      Plaintiffs and other similarly situated blind and seriously visually impaired

Food Stamps and Medicaid applicants and recipients can access information if it is provided in

alternative formats such as Braille, large print, on audiotape, CD, DVD, an electronic format that

is compatible with assistive technology, or read to them by a qualified reader (collectively

referred to as "alternative formats"), but Defendants do not provide written materials to blind and seriously visually impaired Food Stamps and Medicaid applicants and recipients in alternative formats that are effective for them.

4.      Defendants are the agencies and Commissioners of the agencies that administer the Supplemental Nutrition Assistance Program ("Food Stamps"), 7 U.S.C. §§ 2011-36a, and Medicaid, 42 U.S.C. §§ 1396-1396w-5, for residents of New York City.

5.      Defendants all play a role in developing, issuing, mailing, and providing written materials about the New York City Food Stamps and Medicaid programs, but they have no procedures for determining whether Food Stamps and Medicaid applicants and recipients are blind or visually impaired and need written materials in an alternative format; determining the type of alternative formats that are effective for these individuals, or providing materials in alternative formats to blind and visually impaired individuals who need them.

6.      Defendants do not provide adequate notice of the right to obtain written materials in alternative formats to blind and visually impaired individuals.

7.      Plaintiffs and other blind or seriously visually impaired individuals have asked HRA, the agency they interact with directly about their benefits, to provide notices, forms, and other written documents to them in alternative formats that are effective for them, but HRA has failed to do so. One named plaintiff asked OTDA and DOH to provide materials in alternative formats.

8.      In response to requests for written materials in alternative formats by Plaintiffs and others, Defendants have refused to provide materials in formats requested by and effective for them; or failed to respond to the requests. After these requests were made, Defendants continue to send Plaintiffs written materials in formats that are inaccessible to them.

3

Plaintiffs and others have been and are being deprived of equal and meaningful access to information they need to maintain benefits without interruption, understand program rules, understand changes in their benefits and the reasons for these changes, be informed of deadlines for providing information, and other crucial information.

9.      Blind and seriously visually impaired Food Stamps and Medicaid recipients have lost benefits because they cannot read and complete recertification forms, which are not provided in alternative formats.

## THE PARTIES

10.     Plaintiff Diana Gray is Medicaid recipient who resides in New York City. She has received Food Stamps in the past and wants to reapply for Food Stamps.

11.     Plaintiff Diana Gray is seriously visually impaired.

12.     Plaintiff Diana Gray is an "individual with a disability" and a "handicapped person" and a "qualified individual with a disability" and a "qualified handicapped person" as those terms are used and defined in 29 U.S.C. §§ 705(20)(B), 794(a); 42 U.S.C. §§ 12102(1), 12131(2); 7 C.F.R. §§ 15b.3(i), (n), 15b.4; 28 C.F.R. §§ 35.104, 35.130, 35.160; 28 C.F.R. §§ 41.32, 41.51; 45 C.F.R. §§ 84.3(j)(l), 84.4, 84.52; N.Y. EXEC. LAW § 292.21; N.Y.C. ADMIN. CODE § 8-102(16)(a); and 18 N.Y.C.R.R. § 303.1.

13.     Plaintiff Deborah Haynes is a Food Stamps and Medicaid recipient who lives in New York City.

14.     Plaintiff Deborah Haynes is blind.

15.     Plaintiff Deborah Haynes is an "individual with a disability" and a "handicapped person" and a "qualified individual with a disability" and a qualified handicapped person" as those terms are used and defined in 29 U.S.C. §§ 705(20)(B), 794(a); 42 U.S.C. §§

4

12102(1), 12131(2); 7 C.F.R. §§ 15b.3(i), (n), 15b.4; 28 C.F.R. §§ 35.104, 35.130, 35.160; 28

C.F.R. §§ 41.32, 41.51; 45 C.F.R. §§ 84.3(j)(l), 84.4, 84.52; N.Y. EXEC. LAW § 292.21; N.Y.C.

ADMIN. CODE § 8-102(16)(a); and 18 N.Y.C.R.R. § 303.1.

16.     Plaintiff Leason Jacob is a Food Stamps and Medicaid recipient who lives in

New York City.

17.     Plaintiff Leason Jacob is blind.

18.     Plaintiff Leason Jacob is an "individual with a disability" and a "handicapped

person" and a "qualified individual with a disability" and a "qualified handicapped person" as

those terms are used and defined in 29 U.S.C. §§ 705(20)(B), 794(a); 42 U.S.C. §§ 12102(1),

12131(2); 7 C.F.R. §§ 15b.3(i), (n), 15b.4; 28 C.F.R. §§ 35.104, 35.130, 35.160; 28 C.F.R. §§

41.32, 41.51; 45 C.F.R. §§ 84.3(j)(l), 84.4, 84.52; N.Y. EXEC. LAW § 292.21; N.Y.C. ADMIN.

CODE § 8-102(16)(a); and 18 N.Y.C.R.R. § 303.1.

19.     Plaintiff Megan Rafferty is a Food Stamps and Medicaid recipient who resides

in New York, New York.

20.     Plaintiff Megan Rafferty is seriously visually impaired.

21.     Plaintiff Megan Rafferty is an individual with a disability" and a

"handicapped person" and a "qualified individual with a disability" and a "qualified handicapped

person" as those terms are used and defined in 29 U.S.C. §§ 705(20)(B), 794(a); 42 U.S.C. §§

12102(1), 12131(2); 7 C.F.R. §§ 15b.3(i), (n), 15b.4; 28 C.F.R. §§ 35.104, 35.130, 35.160; 28

C.F.R. §§ 41.32, 41.51; 45 C.F.R. §§ 84.3(j)(l), 84.4, 84.52; N.Y. EXEC. LAW § 292.21; N.Y.C.

ADMIN. CODE § 8-102(16)(a); and 18 N.Y.C.R.R. § 303.1.

22.     Defendant Robert Doar is the Commissioner of the New York City Human

Resources Administration, he is sued in his official capacity.

23.     Defendant Kristin Proud is the Acting Commissioner of the New York State Office of Temporary and Disability Assistance, she is sued in her official capacity.

24.     Defendant Nirav Shah, M.D. is the Commissioner and principal executive of the New York State Department of Health, he is sued in his official capacity.

25.     Defendant HRA is the local department of social services that administers the Food Stamps and Medicaid programs in New York City.

26.     Defendant ODTA is the lead state agency with responsibility for the Food Stamp program in New York, and the State agency that administers the administrative hearing ("fair hearing") process by which individuals can appeal decisions regarding Food Stamps and Medicaid benefits.

27.     Defendant DOH is the lead State agency in New York State responsible for the Medicaid program.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

29.     Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

30.     This court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over pendent state law claims.

31.     Defendants are subject to the personal jurisdiction of this Court because Defendants reside in this district, can otherwise be found in this district, and the actions upon which the allegations in this complaint are based occurred in this district.

32.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because a

Defendant resides in this district and all Defendants are residents of New York State.

33.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because

a substantial part of the events giving rise to the claims in this complaint occurred in this district.

## STATUTORY AND REGULATORY BACKGROUND

*The Americans with Disabilities Act ("ADA")*

34.     The ADA was enacted to "provide a clear and comprehensive national

mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. §

12101(b)(1).

35.     Title II of the ADA prohibits public entities, defined to include state and local

governments and their departments, agencies, and instrumentalities, from excluding qualified

individuals with disabilities from participating in or denying them the benefits of the services,

programs, or activities of the public entity pursuant to 42 U.S.C. §§ 12131(1)(A)-(B), 12132; and

28 C.F.R. §§ 35.104, 35.130(a).

36.     Regulations implementing Title II of the ADA provide that "[a] public entity

shall take appropriate steps to ensure that communications with applicants, participants,

members of the public, and companions with disabilities are as effective as communication with

others." 28 C.F.R. § 35.160(a).

37.     Under the ADA, an "individual with a disability" is defined in pertinent part

as an individual an individual with a "physical or mental impairment that substantially limits one

or more major life activities of such individual; . . . " 42 U.S.C § 12102(1)(A). Under the ADA,

a "qualified individual with a disability" is defined as "an individual with a disability who, with

or without . . . [ ], the removal of . . . [] communication . . . [] barriers, or the provision of

7

auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

38.     Implementing regulations to the ADA provide that "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1); *see also* 42 U.S.C. § 12131(2) (defining "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to the rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.").

39.     "Auxiliary aids and services" are defined in the ADA to include "qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments," 42 U.S.C. § 12103(1)(B), and in implementing regulations to include "[q]ualified readers; taped texts; audio recordings; Brailed materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision," 28 C.F.R § 35.104(2).

40.     Implementing regulations to the ADA provide that "[i]n determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities." 28 C.F.R. § 35.160(b)(2).

41.     Regulations implementing Title II of the ADA provide that "[t]he type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." *Id.*

42.     Regulations implementing Title II of the ADA provide that "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.*

43.     Regulations implementing Title II of the ADA provide that "[a] public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability-

        i.      Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

        ii.     Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

        iii.    Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others . . . ."

9

28 C.F.R. §§ 35.130(b)(1) (i)-(iii).

44.     Regulations implementing Title II of the ADA provide that "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(3)(i).

45.     Regulations implementing Title II of the ADA provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *see also* 42 U.S.C. § 12131(2), defining "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . [ ] meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

46.     Regulations implementing Title II of the ADA require public entities to make available to participants, beneficiaries, and other interested persons information regarding the ADA and its applicability to the programs, services, and activities of the public entity. 28 C.F.R. § 35.106.

47.     The Food Stamp Act and implementing regulations require Food Stamps programs to comply with the ADA. 7 U.S.C. § 2020(C)(2)(c); 7 C.F.R. § 272.6(a).

*Section 504 of the Rehabilitation Act ("Section 504")*

48.     Section 504 prohibits programs and activities receiving federal financial assistance from excluding otherwise qualified individuals with disabilities from participation in,

or denying them the benefits of, or otherwise subjecting them to discrimination solely by reason of disability. 29 U.S.C. § 794(a); *see also* 7 C.F.R. § 15b.4(a); 28 C.F.R. § 41.51(a); and 45 C.F.R. § 84.4(a).

49.     Section 504 regulations applicable to recipients of federal assistance from the U.S. Department of Agriculture, and Department of Justice Section 504 Coordination regulations, provide that "[r]ecipients [of federal financial assistance] shall take appropriate steps to ensure that communications with their applicants, employees, and beneficiaries are available to persons with impaired vision and hearing." 7 C.F.R. § 15b.4(d); 28 C.F.R. § 41.51(c).

50.     Regulations implementing Section 504 provide that a recipient of federal financial assistance "in providing any aid, benefit or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap:

    (i)    Deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit or services;

    (ii)    Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or services that is not equal to that afforded others;

    (iii)    Provide a qualified handicapped person with an aid, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit or to reach the same level of achievement in the most integrated setting appropriate as that provided to others . . . .

    . . . .

    (vii)    Otherwise limit a qualified handicapped person in the enjoyment of any rights, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit or service."

7 C.F.R. §§ 15b.4(b)(1)(i)-(iii), (vii); 45 C.F.R. §§ 84.4(b)(1)(i)-(iii), (vi); 45 C.F.R. §§ 84.52(a)(1)-(3); and 28 C.F.R. §§ 41.51(b)(1)(i)-(iii), (vii).

51.     Section 504 regulations applicable to recipients of Federal financial assistance from the Department of Health and Human Services provide that "[a] recipient to which this subpart applies that employs fifteen or more persons shall provide appropriate auxiliary aids to

persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R. § 84.52(d)(1).

52.     "Auxiliary aids" in the regulations under Section 504 are defined to include "brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision." 45 C.F.R. § 84.52(d)(3).

53.     Regulations under Section 504 provide that a recipient of federal financial assistance that "provides notice concerning benefits or services . . . shall take such steps as are necessary to ensure that qualified handicapped persons, including those with impaired sensory or speaking skills, are not denied effective notice because of their handicap." 45 C.F.R. § 84.52(b).

54.     OTDA regulations provide that to comply with Section 504 regulations, local districts must provide information in a manner that is accessible to blind or deaf applicants or recipients. 18 N.Y.C.R.R. § 355.1(b).

55.     The Food Stamp Act and implementing regulations also prohibit discrimination against individuals with disabilities in the Food Stamps program, and specifically require Food Stamps programs to comply with Section 504 of the Rehabilitation Act. 7 U.S.C. § 2020(C)(2)(B); 7 C.F.R. § 272.6(a).

*New York State Human Rights Law*

56.     The New York State Human Rights Law ("NYSHRL") prohibits agents and employees of any place of public accommodation from engaging in discriminatory practices against individuals with disabilities on the basis of disability in the accommodations, advantages, facilities, or privileges of the place of public accommodation. N.Y. EXEC. LAW § 296.2(a).

57.     "Discriminatory practice" is defined in the NYSHRL to include:

      (i)     a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities,

12

               privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations;

(ii)    a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden;

(iii)   a refusal to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable; and

(iv)   where such person can demonstrate that the removal of a barrier under subparagraph (iii) of this paragraph is not readily achievable, a failure to make such facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

*Id.* §§ 296.2(c)(i)-(iv).

58.      The term "place of public accommodation" in the NYSHRL includes "all places included in the meaning of such terms," except as specified in the statute. *Id.* § 292.9.

59.      Under the NYSHRL, "disability" is defined in part to include a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of normal bodily function. *Id.* § 292.21.

*New York City Human Rights Law*

60.      The New York City Human Rights Law ("NYCHRL") prohibits agents and employees of any place or provider of public accommodation from refusing or denying the accommodations, advantages, privileges, facilities, or privileges of the place or provider of public accommodation because of the disability on the basis of disability. N.Y.C. ADMIN. CODE § 8-107(4)(a).

61.    The NYCHRL defines "place or provider of public accommodation" to include "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold, or otherwise made available." *Id.* § 8-102(9).

62.    A place or provider of public accommodation is required to make reasonable accommodation to enable people with disabilities to enjoy the rights in question provided that the disability is known or should have been known by the entity. *Id.* § 8-107(15)(a).

63.    The NYCHRL defines "disability" to include a physical, medical, mental, or psychological impairment, including an impairment of special sensory organs. *Id.* § 8-102(16)(a).

*New York State OTDA Regulations*

64.    OTDA regulations prohibit local departments of social services from establishing or applying policies that have a discriminatory effect on individuals with disabilities because of handicap.  18 N.Y.C.R.R. §§ 303.1(a)-(b).

65.    The OTDA regulations prohibit local districts from denying aid, care, services, benefits, or privileges on the basis of handicap; restricting enjoyment of advantages or privileges of programs enjoyed by others; denying individuals an opportunity to participate in programs or services; or providing an opportunity to participate that is different from that provided to others in the program. *Id.* §§ 303.1(b)(1), (4), (6).

## FACTUAL BACKGROUND

*The New York City Food Stamps and Medicaid Programs*

66.     Upon information and belief, DOH, OTDA, and HRA all play a role in developing, producing, and distributing written materials about Food Stamps and Medicaid.

67.     Upon information and belief, DOH issues written materials to applicants and recipients of Medicaid in New York City.

68.     Upon information and belief, OTDA issues written material to applicants and recipients of Food Stamps and Medicaid in New York City, and to Food Stamp and Medicaid applicants and recipients including those persons who request fair hearings.

69.     Upon information and belief, HRA issues written material to applicants and recipients of Food Stamps and Medicaid in New York City.

70.     Upon information and belief, OTDA has developed information booklets for Food Stamps and Medicaid applicants and recipients that contain general information about client rights and responsibilities and agency procedures that it requires HRA to distribute or make available in other ways to Food Stamps and Medicaid applicants and recipients recertifying eligibility for benefits.

71.     Upon information and belief, OTDA develops written materials and makes them available to local social service districts, which have the option to distribute the OTDA-developed materials.

72.     Pursuant to OTDA Policy Directive # 12-ADM-07, OTDA develops Food Stamps application forms and notices and requires HRA to use them.

73.     Upon information and belief, OTDA provides the HRA and other local districts with copies of "state printed" forms and publications, and informs local districts that

they can order additional paper copies from Document Services at the OTDA or obtain electronic copies of forms from an OTDA Intranet website.

74.     Upon information and belief, DOH operates a warehouse from which the HRA and other local districts can obtain copies of Medicaid forms and publications, and makes many forms, notices, and other materials available to HRA through a DOH Intranet website.

75.     Upon information and belief, some Food Stamps and Medicaid notices sent to applicants and recipients, such as notices issued by the Client Notification System (CNS) for approvals, denials, changes, recertifications, and closings of Food Stamp and Medicaid benefits, are a joint effort by HRA and OTDA. Upon information and belief, data is entered by HRA and CNS notices are generated and printed by OTDA's data center and mailed directly to Food Stamp and Medicaid applicants and recipients.

### HRA, OTDA, and DOH Do Not Provide Effective Communication with Blind and Seriously Visually Impaired Individuals

76.     Upon information and belief, HRA, OTDA and DOH have no procedure, practice, or custom of providing copies of application forms, instructions, notices, informational materials, fair hearing-related materials, or other written materials to blind or seriously visually impaired individuals in formats that are accessible to them, even if the individual is known to these agencies to be blind or seriously visually impaired.

77.     Upon information and belief, blind and seriously visually impaired individuals cannot read the instructions mailed with Food Stamps recertification forms, so they do not know what documents to bring with them when they go to the HRA for help, often necessitating additional trips to the HRA to complete the recertification process.

78.     Upon information and belief, OTDA does not generally provide fair hearing notices and hearing decisions in alternative formats to blind or seriously visually impaired

individuals, and HRA does not generally provide hearing packets to appellants who are blind or seriously visually impaired in alternative formats.

79.     Upon information and belief, HRA, OTDA, and DOH do not contact blind or seriously visually impaired Food Stamps and Medicaid applicants and recipients by telephone, email, or other means when they mail written materials to them to inform them that the agency has mailed them information about their Food Stamps and Medicaid benefits.

80.     Upon information and belief, the only notice that blind or seriously visually impaired applicants and recipients possess about the existence and content of mailed Food Stamps and Medicaid written materials is embodied in documents that they cannot read as a result of their blindness and serious visual impairments.

81.     HRA's newly issued ADA policy (Policy Directive # 12-30-OPE) does not require staff to take steps to determine whether Food Stamps and Medicaid applicants and recipients are blind or seriously visually impaired and need information provided in a format other than standard print and use this information to provide materials and information in effective formats to individuals who need them.

82.     The online Medicaid application on DOH's website asks whether the applicant is blind, disabled, or chronically ill, and requires applicants who answer yes to complete another form, but neither form asks about whether the individual needs information in alternative formats or the type of format needed.

83.     HRA's Food Stamps application asks whether anyone in the household is blind, disabled, or pregnant, but does not ask whether anyone in the household needs Food Stamps materials in an alternative format.

84.     Upon information and belief, HRA, OTDA, and DOH do not provide blind or seriously visually impaired Food Stamps and Medicaid recipients with their case numbers, the HRA's telephone number, and other basic information needed to contact the agency and obtain information by phone in formats that are accessible to them.

**HRA, OTDA, and DOH Have Failed to Develop Adequate Policies and Procedures for Communicating Effectively with Blind or Seriously Visually Impaired Recipients of Food Stamps and Medicaid.**

**HRA**

85.     HRA's current ADA policy for Job Centers and Food Stamps-only Centers, issued on October 18, 2012, states that one reasonable accommodation that may be provided to people with disabilities is "necessary auxiliary aids and services to ensure effective communication for individuals with hearing or speech limitations," Policy Directive # 12-30-OPE, p. 7, but it does not say that HRA may or will provide necessary auxiliary aids and services needed to ensure effective communication with individuals who are blind or seriously visually impaired.

86.     HRA's new ADA policy states that HRA will help blind and visually impaired individuals read and complete applications and forms, p. 11, but does not mention any alternative format other than reading documents to clients nor does it require staff to read any documents other than applications and forms to blind and visually impaired individuals.

87.     HRA's ADA policy requires staff to "assist" blind and seriously visually impaired clients "as necessary," but the only examples provided are allowing blind and seriously visually impaired clients to use service animals and accompanying them to and from an elevator.

88.     HRA's reasonable accommodation policy for the Medicaid program, MAP Procedure 09-03 R1 (April 9, 2009), states that individuals with disabilities have a right to equal

18

access to the Medicaid program and services, and defines "reasonable accommodation" to include "removal of communication . . . [barriers]" and "the provision of auxiliary aids and services," but does not define "auxiliary aids and services," require staff to provide blind or seriously visually impaired individuals with written materials in alternative formats or instruct them on how to do so.

89.     Upon information and belief, HRA has no procedures for converting written materials into alternative formats, such as procedures for converting printed documents into Braille or accessible electronic documents, or recording the information on audiocassettes or CDs, procedures identifying the staff responsible for doing this, the timetable in which it must be done, or other implementation procedures.

**OTDA**

90.     OTDA's ADA and Section 504 policy directive, 06-ADM-05 (April 27, 2006), which applies to Food Stamps, requires local districts such as HRA to provide effective communication with individuals with disabilities, as well as auxiliary aids and services when necessary to ensure effective communication, pp. 6-7, 16, but it does not address OTDA's obligation to provide effective communication or written materials in alternative formats to blind or seriously visually impaired applicants and recipients of Foods Stamps.

91.     Upon information and belief, OTDA does not have internal policies or procedures for routinely converting its materials into alternative formats or providing written materials in alternative formats to Food Stamps and Medicaid applicants and recipients who are blind or seriously visually impaired.

**DOH**

92.     Upon information and belief, DOH does not have a policy requiring local districts to provide written materials to blind or seriously visually impaired Medicaid applicants and recipients in alternative formats, nor does it have a policy requiring DOH to convert the materials it issues directly to applicants and recipients into alternative formats for blind or seriously visually impaired individuals who need them.

93.     Upon information and belief, HRA, OTDA, and DOH do not have policies, procedures, or agreements regarding the allocation of responsibility between the agencies for producing and providing written materials in alternative formats to blind or seriously visually impaired Medicaid and Food Stamps applicants and recipients.

### *HRA, OTDA, and DOH Do Not Inform Blind or Seriously Visually Impaired Food Stamps and Medicaid Applicants and Recipients of the Right to Written Materials in Alternative Formats*

94.     Upon information and belief, HRA, OTDA, and DOH do not adequately inform blind or seriously visually impaired Food Stamps and Medicaid applicants and recipients that they have a right to receive written materials regarding these programs in alternative formats.

95.     A brochure attached to HRA's current ADA policy, titled "Are You A Person With A Disability?" states that assistance with reading and completing forms is a reasonable accommodation that is offered by HRA, but the brochure does not mention obtaining materials in Braille, large print, accessible electronic formats or other alternative formats as a reasonable accommodation.

96.     Upon information and belief, HRA does not provide the "Are You A Person With A Disability?" brochure to blind or seriously visually impaired individuals in formats that are accessible to them.

97.     Upon information and belief, the HRA staff members have told blind and seriously visually impaired individuals that the agency does not provide written materials in alternative formats.

98.     Upon information and belief, OTDA and DOH do not inform blind or seriously visually impaired Food Stamps and Medicaid applicants and recipients about the right to receive materials in alternative formats.

*OTDA and DOH Do Not Monitor the HRA's Compliance with the ADA or Section 504 or Monitor Whether HRA Provides Effective Communication With and Alternative Format Materials to Visually Impaired Individuals*

99.     Upon information and belief, neither OTDA nor DOH take adequate steps to determine whether HRA complies with the ADA obligation to provide blind or seriously visually impaired Food Stamps and Medicaid applicants and recipients with written materials in alternative formats that are accessible to them.

100.    Upon information and belief, neither OTDA nor DOH has required HRA to develop procedures for providing blind or seriously visually impaired individuals with written materials in alternative formats.

## FACTUAL BACKGROUND OF THE CLASS REPRESENTATIVES

### *Megan Rafferty*

101.    Megan Rafferty has been seriously visually impaired since birth and she receives Food Stamps and Medicaid.

102.    Megan Rafferty cannot read standard print materials.

103.     Megan Rafferty has a computer with screen reader software and can read materials in accessible formats on her computer (text emails and audio or data CDs).

104.     On August 3, 2011, Megan Rafferty informed HRA in writing through her lawyer that she is seriously visually impaired and asked HRA to provide her with Food Stamps and Medicaid forms and notices in a format accessible for her, specifically, by email, or on an audio or data CD that she could read on her computer using screen reader software ("Rafferty Request").

105.     On September 23, 2011, HRA issued a joint response to the Rafferty Request and requests from other blind and seriously visually impaired individuals who have sought written materials in alternative formats through Plaintiffs' counsel ("HRA Joint Response"), which stated that Megan Rafferty and other individuals for whom alternative formats were requested could call HRA when they receive Food Stamps notices to make an appointment to come to HRA or another location so HRA could read the notice to them.

106.     The HRA Joint Response stated that scheduling an appointment would take one to two weeks.

107.     The HRA Joint Response did not explain why HRA would not provide documents in the alternative formats requested by Megan Rafferty and the other individuals and did not address the fact that a delay of one to two weeks or more to learn the contents of HRA mailings would significantly reduce the time to respond to deadlines and in some instances could result in missed deadlines, such as the deadline for requesting uninterrupted benefits pending a decision on a fair hearing.

108.     The HRA Joint Response did not explain how Megan Rafferty and others could call the agency to request these appointments when HRA has never provided them with HRA's phone number and their case numbers in alternative formats that are effective for them.

109.     The HRA Joint Response also stated that Megan Rafferty and other individuals who had requested alternative format materials could request home visits from HRA, but the letter did not indicate whether Ms. Rafferty and others qualified for HRA home visits, how long it would take to get them, or whether HRA would provide home visits for the sole purpose of reading documents to clients.

110.     With respect to Medicaid materials, the HRA Joint Response stated that Megan Rafferty and others could call the HRA Medicaid office and ask for someone to read recent Medicaid notices to them, but only if the notice was mailed by the HRA, because HRA would not have a copy of written materials mailed by DOH and therefore could not read them to a client over the telephone.

111.     The HRA Joint Response stated that HRA was exploring longer term solutions to the issues raised in the Rafferty Request, and was contacting OTDA and DOH for further guidance.

112.     To date, HRA has not provided copies of Food Stamps or Medicaid materials to Megan Rafferty in a format that is accessible to her, as described in the Rafferty Request.

113.     As a result of her serious vision impairment, Megan Rafferty needs help completing Food Stamps recertification forms.

114.     In the past an HRA worker at her local center assisted her.

115.     HRA notified Megan Rafferty that her Food Stamps case was transferred to Brooklyn, farther from her home.

116.     Megan Rafferty needs her home attendant to accompany her on the subway, but she has a home health aid for fewer hours than it takes to travel to Brooklyn and back and get help from HRA.

117.     On January 17, 2012, through her lawyer, Megan Rafferty asked HRA to transfer her back to her neighborhood HRA center as an accommodation for her disability.

118.     HRA informed Megan Rafferty's counsel in response that HRA's computer system would not accept this change, and would continue to send her notices requiring her to go to the Brooklyn Center.

119.     To date, Megan Rafferty has not been reassigned to her neighborhood Center.

120.     HRA has also informed Plaintiffs' counsel that Megan Rafferty could recertify Food Stamps by automated telephone system, telephone interview, or in person, but has not provided Megan Rafferty with information about how to do this in a format that is accessible for her.

### *Deborah Haynes*

121.     Deborah Haynes has been blind since shortly after birth.

122.     Deborah Haynes receives Food Stamps and Medicaid.

123.     Deborah Haynes cannot read standard print materials.

124.     Deborah Haynes reads Braille and can access information through audio CDs and audio cassette tapes.

125.     On September 21, 2011, Deborah Haynes informed HRA in writing through her lawyer that she is blind and asked HRA to provide her with Food Stamps and Medicaid forms and notices in Braille, audio CD, or audio cassette tape ("Haynes Request").

126.     HRA did not directly respond to the Haynes Request.

127.     To date, HRA has not provided copies of Food Stamps or Medicaid materials to Ms. Haynes in a format that is accessible to and effective for her.

128.     HRA informed Plaintiffs' counsel that Deborah Haynes could recertify eligibility for Food Stamps by automated telephone system, telephone interview, or in person, but has not provided Deborah Haynes with information about how to do this in a format this is accessible for her.

### Leason Jacob

129.     Leason Jacob has been blind since the mid-1990s.

130.     Leason Jacob receives Food Stamps and Medicaid.

131.     In January 2012, Leason Jacob's home attendant helped him fill out his Food Stamps recertification form and mail it to HRA.

132.     Leason Jacob did not receive Food Stamps in February 2012.

133.     On February 9, 2012, Leason Jacob went with his home attendant to HRA to get help in completing another recertification form.

134.     At no point during Leason Jacob's 2012 recertification process did anyone from the HRA ask Leason Jacob if he needed written materials in an alternative format.

135.     On March 26, 2012, Leason Jacob informed HRA in writing that he is blind and requested written notices, forms and other documents related to his Food Stamps and Medicaid in alternative formats ("Jacob Request").

136.     The alternative format Leason Jacob requested was for HRA to call him at his home within three business days after mailing him written materials to: inform him that HRA had mailed him Food Stamp or Medicaid documents and the date on which they were mailed; describe to him the general nature and purpose of the mailed documents; inform him of any

deadlines, appointment dates, times, and locations contained in the written documents; and read the documents to him and answer his questions about them.

137.     To date, HRA has not responded to the Jacob Request and has not provided copies of Food Stamps or Medicaid materials to him in a format that is accessible to him.

**Diana Gray**

138.     Diana Gray has been seriously visually impaired since birth.

139.     Diana Gray is completely blind in one eye and has very limited vision in her other eye.

140.     Diana Gray receives Medicaid benefits and wants to apply for Food Stamps, which she has received in the past and which her income qualifies her for.

141.     Diana Gray cannot read standard print materials.

142.     Diana Gray can read large print materials if she wears glasses with a special magnifying lens over her regular glasses.

143.     Diana Gray can access email through her smart phone, which has a program that converts the text on the screen into speech, and she also has an audiotape player to access information on audiocassettes.

144.     On October 18, 2012, Diana Gray informed HRA, OTDA and DOH in writing through her lawyer that she is legally blind and asked all three agencies to provide her with: (1) an application for Food Stamps in large print that she can fill it out herself so she can reapply for Food Stamps; (2) Medicaid and Food Stamps forms in the future in large print; and (3) Medicaid and Food Stamps notices and other printed documents and information in either large print, attached to an email that she can access with her smart phone, or on audiotape.

145.     In that October 18, 2012 communication Ms. Gray enclosed a certificate of legal blindness from the Commission for the Blind and Visually Handicapped, a State agency that provides services to the blind.

146.     In December 2012, HRA sent Diana Gray a notice denying her request "because HRA has determined that the medical documentation we received does not support your request for the Reasonable Accommodation" and provided no explanation of why the documentation was inadequate.

147.     OTDA and DOH did not respond to Diana Gray's accommodation request.

## CLASS ALLEGATIONS

148.     Pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action individually and on behalf of themselves and a class of similarly situated individuals who:  (1) are residents of New York City; (2) are substantially limited in seeing; (3) are current or former applicants for or recipients of Food Stamps and/or Medicaid; (4) need written materials in alternative formats for effective communication regarding Food Stamps and/or Medicaid (the "class").

149.     Members of the class are so numerous that joinder of all members is impracticable.

150.     Upon information and belief, Defendants do not maintain and publish data on the number of Medicaid and Food Stamps recipients in New York City who are blind or seriously visually impaired.

151.     Extrapolating from data posted on Defendants' websites, federal agency websites, and other sources, upon information and belief, there are approximately at least 4,000

Food Stamp and Medicaid recipients in New York City who are blind or seriously visually impaired.

152.    The class is comprised of: (1) approximately 1,640 individuals who receive Medicaid benefits because they qualify for Supplement Security Income ("SSI") benefits on the basis of blindness; (2) approximately 1,558 Medicaid recipients who are blind or seriously visually impaired who qualify for SSI based on either age or another type of disability; (3) approximately 620 Medicaid recipients who are blind or seriously visually impaired but qualify for SSI on the basis of age; (4) approximately 365 blind and seriously visually impaired Medicaid recipients who do not qualify for SSI; (5) an undetermined number of blind and seriously visually impaired Food Stamps recipients who do not qualify for SSI (and therefore have not already been accounted for in groups above); and (6) an undetermined number of current and future applicants for and recipients of Food Stamps and Medicaid who are blind or seriously visually impaired.

153.    Upon information and belief, a significant percentage of these individuals need and want materials regarding their benefits and the Food Stamps and Medicaid programs to be in accessible formats.

154.    Individual litigation by each member of the class would burden the judicial system and would be impracticable because individual class members lack the knowledge, sophistication, and financial means to maintain individual actions.

155.    The prosecution of individual actions by Plaintiffs and other similarly situated individuals would create a risk of inconsistent adjudications and incompatible rules of law.

156.    This case raises common questions of law and fact, including but not limited to the following:

a.  Whether Defendants have a process for determining whether named
    Plaintiffs and other similarly situated applicants for and recipients of Food
    Stamps and Medicaid need written materials in alternative formats that are
    accessible to them;

b.  Whether Defendants have adequate policies and procedures in place for
    providing named Plaintiffs and other similarly situated applicants for and
    recipients of Foods Stamps and Medicaid with written materials in
    alternative formats that are accessible to them;

c.  Whether Defendants have failed to take the necessary steps to allocate
    responsibility between and among them to coordinate the provision of
    materials to named Plaintiffs and other similarly situated applicants for
    and recipients of Food Stamps and Medicaid in alternative formats that are
    accessible to them;

d.  Whether Defendants have taken adequate steps to inform named Plaintiffs
    and other similarly situated applicants for and recipients of Food Stamps
    and Medicaid of their right to written materials in alternative formats and
    the process for obtaining them; and

e.  Whether the failure of Defendants Doar, Proud, Shah, and HRA to provide
    named Plaintiffs and other similarly situated applicants for and recipients
    of Food Stamps and Medicaid with written materials in alternative formats
    violates the Americans with Disabilities Act, and the Due Process Clause
    of the United States, Constitution;

f.   Whether the failure of Defendants to provide named Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid with written materials in alternative formats violates Section 504 of the Rehabilitation Act;

g.   Whether the failure of Defendants Doar and HRA to provide named Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid with written materials in alternative formats violates the New York State Human Rights Law;

h.   Whether the failure of Defendants Doar and HRA to provide named Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid with written materials in alternative formats violates the New York City Human Rights Law; and

i.   Whether the failure of Defendants Doar and HRA to provide named Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid with written materials in alternative formats violates the OTDA regulations.

157.   The claims of the named Plaintiffs are typical of the class in that Plaintiffs and each member of the class: (a) resides in New York City; (b) is substantially limited in seeing (c) is a current of future applicant for or recipient of Food Stamps and/or Medicaid benefits; and (d) needs written materials about Food Stamps and/or Medicaid in alternative formats for effective communication regarding Food Stamps and/or Medicaid.

158.    The named Plaintiffs will fairly and adequately represent interests of the class because their interests do not conflict with the interests of other class members they seek to represent.

159.    Plaintiffs intend to prosecute this action vigorously.

160.    The attorneys representing Plaintiffs are experienced and capable litigators with significant experience in class action litigation in federal and state courts, including matters relating to Food Stamps, Medicaid, the ADA, Section 504 of the Rehabilitation Act, and Due Process protections.

161.    Class counsel will prosecute this action vigorously and competently.

162.    Defendants have acted on grounds generally applicable to the class, by:

    a.    Failing to provide written materials about the Food Stamps and Medicaid programs and benefits to the class in alternative formats accessible to them;

    b.    Failing to develop, implement, and comply with policies and procedures regarding the provision of written materials to the class in alternative formats that are accessible to them;

    c.    Failing to provide Food Stamps and Medicaid applicants and recipients adequate notice of the right to obtain written materials in alternative in alternative formats; and

    d.    Failing to take the necessary steps to identify visually impaired individuals that need written materials in alternative formats.

163.    Declaratory and injunctive relief is appropriate with respect to the class as a whole.

164.     A class action is the exclusive method by which the interests of all affected persons can be adequately protected.

## CLAIMS

### Count I - Violation of the Americans With Disabilities Act
### (Against Defendants Doar, Proud , Shah, and HRA)

165.     Plaintiffs incorporate the preceding paragraphs of this complaint by reference as though set forth fully herein.

166.     Each of the named Plaintiffs and class members is an individual with a disability as defined by 42 U.S.C. § 12102(1)(A), because each has a physical impairment that substantially limits one or more "major life activities" as defined by 42 U.S.C. § 12102(2)(A), including the major life activity of "seeing."

167.     Each of the named Plaintiffs and class members is a "qualified individual with a disability" as defined by 42 U.S.C. § 12131(2) because each is an "individual with a disability" who meets the essential eligibility requirements for Food Stamps and/or Medicaid benefits and/or the essential eligibility requirements for applying for Food Stamp and/or Medicaid benefits and for obtaining information about these programs.

168.     HRA, OTDA, and DOH are "public entities" as defined in the ADA, and Defendants are the principal executives of those respective public entities.

169.     Defendants' failure to provide written materials to Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid in alternative formats that are accessible to them violates the ADA, 42 U.S.C. § 12132, and implementing regulations, 28 C.F.R. §§ 35.130(a), 35.130(b)(1)(ii), 35.130(b)(3)(i), 35.130(b)(7), 35.160(a), 35.160(b)(1), and 35.160(b)(2).

170.     Defendants' failure to provide information to Plaintiffs and other similarly situated individuals about their right to obtain written materials in alternative formats that are accessible to them, violates the ADA, 42 U.S.C. § 12132, and implementing regulations, 28 C.F.R. § 35.106.

### Count II - Violation of Section 504 of the Rehabilitation Act
### (Against All Defendants)

171.     Plaintiffs incorporate the preceding paragraphs of this complaint by reference as though set forth fully herein.

172.     Each of the Plaintiffs and class members is an "individual with a disability" as defined by 29 U.S.C. § 705(20)(B) because each "has a disability as defined in Section 12102 of Title 42."

173.     Each of the Plaintiffs and class members is a "handicapped person" as defined by 7 C.F.R. § 15b.3(i) and 45 C.F.R. § 84.3(j)(1)(i), because each has a physical impairment that substantially limits one or more major life activities as defined by 7 C.F.R. §§ 15b.3(j)-(k) and 45 C.F.R. §§ 84.3(j)(2)(i)-(ii), including the physical impairment of a "special sense organs" and the major life activity of "seeing."

174.     Each of the Plaintiffs and class members is a "qualified individual with a disability" and "qualified handicapped person" as defined by 7 C.F.R. § 15b.3(n); 28 C.F.R. § 41.32(b); and 45 C.F.R. § 84.3(l),  because each is an "individual with a disability" and a "handicapped person[]" who meets the essential eligibility requirements for Food Stamps and/or Medicaid benefits and/or the essential eligibility requirements for applying for Food Stamp and/or Medicaid benefits and for obtaining information about these programs.

175.     The New York City Food Stamps and Medicaid programs are "program[s] or activit[ies] receiving Federal financial assistance" as referred to in 29 U.S.C. § 794(a); 7 C.F.R. §

15b.3(g); 28 C.F.R. § 41.3(e); and 45 C.F.R. § 84.3(h), because they are operations of the HRA,

OTDA and DOH, which receive Federal financial assistance for Food Stamps, Medicaid, and

other programs, and because Defendants are "a department, agency, special purpose district, or

other instrumentality of a State or of a local government" and/or "the entity of such State or local

government that distributes such assistance" or a "department or agency (and each other State or

local government entity) to which the assistance is extended, in the case of assistance to a State

or local government." 29 U.S.C. § 794(b)(1).

176.    Defendants' failure to provide written materials to Plaintiffs and other

similarly situated persons in alternative formats effective for them violates Section 504 of the

Rehabilitation Act, 29 U.S.C. § 794(a), and implementing regulations, 7 C.F.R. §§ 15b.4(a),

15b.4(b)(1)(i)-(iv), 15b.4(d); 28 C.F.R. §§ 41.5(b)(1), 41.51(b)(1)(ii)-(iii), 41.51(e); and 45

C.F.R. §§ 84.8(a), 84.8(b), 84.52(a)(1)-(3), 84.52(b), 84.52(d)(1).

177.    Defendants' failure to provide information to Plaintiffs and other similarly

situated persons about their right to obtain written materials in alternative formats that are

effective for them, violates Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and

implementing regulations, 7 C.F.R. § 15b.7(a); 28 C.F.R. § 41.5(b)(1); and 45 C.F.R. §§ 84.8,

84.52(b).

### Count III - Violation of Procedural Due Process Under the Fourteenth Amendment to the United States Constitution (Against Defendants Doar, Proud, Shah, and HRA)

178.    Plaintiffs incorporate the preceding paragraphs of this complaint by reference

as though set forth fully herein.

179.    The Due Process Clause of the Fourteenth Amendment to the United States

Constitution prohibits Defendants from depriving Plaintiffs and other similarly situated

individuals of a protected property interest without adequate notice and an opportunity to be heard.

180.     Plaintiffs and similarly situated individuals have a protected property interest in receiving Food Stamps and Medicaid benefits.

181.     Defendants' failure to provide written materials in accessible formats to Plaintiffs and other similarly situated persons in alternative formats that are effective for them denies Plaintiffs and similarly situated individuals of adequate notice and an opportunity to be heard regarding the deprivation of their property, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### Count IV - Violation of the New York State Human Rights Law
### (Against Defendants Doar and HRA )

182.     Plaintiffs hereby incorporate the preceding paragraphs of this complaint by reference as though set forth fully herein.

183.     Each of the Plaintiffs and class members are a person with a disability under the New York State Human Rights Law because each has a physical impairment resulting from a condition that prevents the exercise of normal bodily function. N.Y. EXEC. LAW § 292.21.

184.     Defendant Doar operates a place of public accommodation under the New York State Human Rights Law. *Id.* § 292.9.

185.     Defendant Doar's failure to provide written materials to Plaintiffs and other similarly situated persons in alternative formats effective for them violates the New York State Human Rights Law. *Id.* §§ 296.2(a), 296.2(c)(i)-(iv).

### Count V - Violation of the New York City Human Rights Law
### (Against Defendants Doar and HRA)

186.     Plaintiffs hereby incorporate the preceding paragraphs of this complaint by reference as though set forth fully herein.

187.     Each of the Plaintiffs and class members is a person with a disability under the New York City Human Rights Law because they have impaired sensory organs.  N.Y.C. ADMIN. CODE § 8-102(16)(a).

188.     Defendant Robert Doar is an agent and principal executive of a place or provider of public accommodation.  *Id.* § 8-102(9).

189.     City Defendants' failure to provide written materials to Plaintiffs and other similarly situated persons in alternative formats effective for them violates the New York City Human Rights Law.  *Id.* §§ 8-107(4)(a); 8-107(15).

### Count VI - Violation of New York State OTDA Regulations
### (Against Defendants Doar and HRA)

190.     Plaintiffs hereby incorporate the preceding paragraphs of this Complaint by reference as though set forth fully herein.

191.     Plaintiffs and class members are individuals with disabilities under the New York State Social Services regulations.  18 N.Y.C.R.R. §§ 303.1(a); (b)(1), (4),(6).

192.     City Defendants' failure to provide written materials to Plaintiffs and other similarly situated persons in alternative formats effective for them violates OTDA regulations prohibiting discrimination on the basis of disability.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court:

a.  Certify that this lawsuit may be maintained as a class action under Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.

b.  Declare that the failure of:

(i)  Defendants Doar, Proud, Shah, and HRA to provide written materials in alternative formats to Plaintiffs and other similarly situated blind and seriously visually impaired Food Stamps and Medicaid applicants and recipients who need them violates the Americans with Disabilities Act and implementing regulations;

(ii)  Defendants Doar, Proud, Shah, HRA, OTDA, and DOH to provide written materials in alternative formats to Plaintiffs and other similarly situated blind and seriously visually impaired Food Stamps and Medicaid applicants and recipients who need them violates Section 504 of the Rehabilitation Act and implementing regulations;

(iii)  Defendants Doar, Proud, Shah, and HRA to provide written materials in alternative formats to Plaintiffs and other similarly situated blind and seriously visually impaired Food Stamps and Medicaid applicants and recipients who need them violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

(iv)  Defendants Doar and HRA to provide written materials in alternative formats to Plaintiffs and other similarly situated individuals who need them violates the New York State Human Rights Law, the New York City Human Rights Law, and OTDA regulations;

c.  Declare that Defendants have a duty to:

(i)  provide written materials in alternative formats to Plaintiffs and other similarly situated visually impaired Food Stamps and Medicaid applicants and recipients who need them;

(ii)  develop and implement policies and procedures to determine who needs materials in alternative formats and the alternative formats that are effective for them; and

(iii)  inform Food Stamps and Medicaid applicants and recipients of the right to receive written materials in alternative formats.

d.  Issue a preliminary and permanent injunction requiring Defendants to:

(i)  provide written materials in alternative formats to Plaintiffs and other similarly situated visually impaired Food Stamps and Medicaid applicants and recipients who need them;

    (ii)     develop and implement policies and procedures to determine who needs materials in alternative formats and the alternative formats that are effective for them;

    (iii)    inform Food Stamps and Medicaid applicants and recipients of the right to receive written materials in alternative formats; and

    (iv)    involve individuals with vision impairments and their advocates in the process of developing and implementing the alternative format materials, policies, and procedures referenced in (i) and (ii) above.

    e.    Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133; 29 U.S.C. § 794a(b); and 28 C.F.R. § 35.175.

    f.    Appoint a monitor to ensure that Defendants comply with the referenced injunctions and declarations of Defendants' duties until such time that the monitor certifies to this Court in writing that Defendants have been in compliance with the relief sought in this case for one year.

    g.    Require Defendants to file a written report every six months with the monitor who has been appointed with respect to sub-paragraph (f.) above, setting forth Defendants' progress and status in complying with the relief requested in subparagraphs (b)-(d) of the Request for Relief section in this complaint.

    h.    Grant any further relief this Court deems just and proper.

Dated: March 5, 2013

Gerald S. Hartman
Maureen Donahue Hardwick
Drinker Biddle & Reath LLP
1500 K Street, N.W.
Washington, DC 20005-1209
Phone: (202) 842-8800
Fax: (202) 842-8465
jerry.hartman@dbr.com
maureen.hardwick@dbr.com

*Of Counsel for Plaintiffs*

Michael P. Daly
Nicholas S. Feltham
Joshua M. Link
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6999
Phone: (215) 988-2700
Fax: (215) 988-2757
michael.daly@dbr.com
nicholas.feltham@dbr.com
joshua.link@dbr.com

*Of Counsel for Plaintiffs*

Cary LaCheen (N.Y. Bar No. CL 7687)
Marc Cohan (N.Y. Bar  No. MC 2612)
Mary R. Mannix (N.Y. Bar No. MM 2508)
Jenny R. A. Pelaez (N.Y. Bar No. JP 1364)
National Center for Law & Economic Justice
275 Seventh Avenue, Suite 1506
New York, New York 10001-6708
Phone: (212) 633-6967
Fax: (212) 633-6371
cohan@nclej.org
lacheen@nclej.org
mannix@nclej.org
pelaez@nclej.org

*Counsel for Plaintiffs*