**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| MEGAN RAFFERTY, DEBORAH HAYNES, LEASON JACOB, and DIANA GRAY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT DOAR, in his capacity as its Commissioner of the New York City Human Resources Administration;<br><br>KRISTIN PROUD, in her capacity as Acting Commissioner of the New York State Office of Temporary and Disability Assistance;<br><br>NIRAV SHAH, M.D., in his capacity as its Commissioner of the New York City Department of Health;<br><br>the NEW YORK CITY HUMAN RESOURCES ADMINISTRATION;<br><br>the NEW YORK STATE OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE; and<br><br>the NEW YORK CITY DEPARTMENT OF HEALTH,<br><br>Defendants. | No. 13 Civ. 1410 (TPG) |

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ...................................................................................................3

ARGUMENT ......................................................................................................................7

    A.    Legal Standard .................................................................................................8

    B.    Plaintiffs Have A Likelihood of Success On the Merits.........................................9

        i.    Defendants' Failure to Provide Benefits-Related Materials
            in Accessible Alternative Formats Violates the ADA and
            Section 504...............................................................................................10

        ii.    Defendants' Failure to Provide Notice of the Right to
            Obtain Written Materials in Alternative Formats Violates
            the ADA and Section 504 ..............................................................16

        iii.  Defendants' Failure to Provide Written Materials in
            Alternative Formats Deprives Plaintiffs of Adequate
            Notice in Violation of the Due Process Clause..............................17

    C.    Plaintiffs Will Suffer Irreparable Harm Absent a
        Preliminary Injunction ....................................................................................21

    D.    The Balance of Harm Weighs in Favor of Issuing a
        Preliminary Injunction ....................................................................................24

    E.    The Court Should Waive the Bond Requirement of Rule 65(c)............................25

CONCLUSION....................................................................................................................25

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Winston v. Verizon Servs. Corp.*, ................................................................................................ 3
    633 F.Supp.2d 42 (S.D.N.Y. 2009)

*Kreisler v. Second Ave Diner Corp* ............................................................................................. 3
    No. 10 Civ. 7592 (RJS), 2012 U.S. Dist. LEXIS 129298 (S.D.N.Y. Sept. 10, 2012)

*MONY Grp., Inc. v. Highfields Capital Mgmt.* ............................................................................ 8
    368 F.3d 138 (2d Cir. 2004)

*Forest City Daly Hous., Inc. v. Town of N. Hempstead* ............................................................... 8
    175 F.3d 144 (2d Cir. 1999)

*M.K.B v. Eggleston* ................................................................................... 8, 17, 18, 20, 22
    445 F.Supp.2d 400 (S.D.N.Y. 2006)

*Becker v. Toia* ............................................................................................................................ 8
    439 F.Supp. 324 (S.D.N.Y. 1977)

*Olson v. Wing* ........................................................................................................................ 8, 24
    281 F. Supp. 2d 476 (E.D.N.Y. 2003), aff'd, 66 F. App's 275 (2d Cir. 2003)

*Catanzano v. Dowling* ............................................................................................................. 8-9
    847 F.Supp. 1070 (W.D.N.Y. 1994)

*Doe v. Perales* ............................................................................................................................ 9
    782 F. Supp. 201 (W.D.N.Y 1991)

*Willis v. Lascaris* .................................................................................................................. 9, 20
    499 F. Supp. 719 (N.D.N.Y. 1980)

*Innovative Health Sys. v. City of White Plains* ........................................................................... 9
    117 F.3d 37 (2d Cir. 1997)

*Lovely H. v. Eggleston* .......................................................................................................... 9, 23
    No. 05 Civ. 6920, 2006 U.S. Dist. LEXIS 21363 (S.D.N.Y. Apr. 19, 2006)

*Henrietta D. v. Giuliani* ........................................................................................................... 10
    331 F.3d 261(2d Cir. 2003)

*Perdue v. Gargano* ................................................................................................................... 11
    96 N.E.2d 825 (Ind. 2012)

*Am. Council of the Blind v. Paulson* ............................................................................ 12, 14, 15
    525 F.3d 1256 (D.C. Cir. 2008)

*Alexander v. Choate* ...................................................................................................... 13
    469 U.S. 287 (1985)

*Am. Council of the Blind v. Astrue* ............................................................................... 13, 15
    No. C 05-04696 (WHA), 2009 U.S. Dist. LEXIS 97599 (N.D. Cal. Oct. 20, 2009)

*Clarkson v. Coughlin* ..................................................................................................... 13, 16
    898 F. Supp. 1019 (S.D.N.Y 1996)

*Hallett v. N.Y. State Dep't of Corr. Servs* ..................................................................... 16
    No. 99 Civ. 5853 (LTS) (AJP), 2006 U.S. Dist. LEXIS 17498 (S.D.N.Y. Apr. 7, 2006)

*Blatch v. Hernandez* ...................................................................................................... 16
    360 F. Supp. 2d 595, 633 (S.D.N.Y. 2005)

*Green v. Bauvi* ............................................................................................................... 17-18
    46 F.3d 189 (2d Cir. 1995)

*Goldberg v. Kelly* .......................................................................................................... 18, 21, 22, 24
    397 U.S. 254 (1970)

*Isaacs v. Bowen* ............................................................................................................. 18
    865 F.2d 468 (2d Cir. 1989)

*Mathews v. Eldridge* ..................................................................................................... 18, 19
    424 U.S. 319 (1975)

*Reynolds v. Giuliani* ...................................................................................................... 18, 19, 20, 22
    35 F. Supp. 2d 331 (S.D.N.Y. 1999)

*Bd. of Regents v. Roth* ................................................................................................... 18
    408 U.S. 564 (1972)

*Atkins v. Parker* ............................................................................................................. 18
    472 U.S. 115 (1985)

*Kapps v. Wing* ................................................................................................................ 19
    404 F.3d 105 (2d Cir. 2005)

*Cleveland Bd. of Educ. v. Loudermill* ........................................................................... 19
    470 U.S. 532 (1985)

*Haskins v. Stanton* ................................................................................................ 21
    794 F.2d 1273 (7th Cir. 1986)

*Jayaraj v. Scappini* ............................................................................................... 21
    66 F.3d 36 (2d Cir. 1995)

*Morel v. Giuliani* .................................................................................................. 22
    927 F. Supp. 622 (S.D.N.Y. 1995)

*Brown v. Giuliani* ................................................................................................. 22
    158 F.R.D. 251 (E.D.N.Y. 1994)

*Jolly v. Coughlin* .................................................................................................. 23
    76 F.3d 468 (2d Cir. 1996)

*Mitchell v. Cuomo* ................................................................................................ 23
    748 F.2d 804 (2d Cir. 1984)

*Disabled Am. Veterans v.U.S. Dep't of Veterans Affairs* ..................................... 23
    783 F. Supp. 187 (S.D.N.Y. 1992), *rev'd on other grounds*, 962 F.2d 3 (2d Cir. 1992)

*Bray v. City of New York* ...................................................................................... 23-24
    346 F. Supp. 2d 480 (S.D.N.Y. 2004)

*Million Youth March, Inc. v. Safir* ....................................................................... 24
    155 F.3d 124 (2d Cir. 1998)

*Pharm. Soc'y v. N.Y. State Dep't of Soc. Servs.* ................................................. 25
    50 F.3d 1168 (2d Cir. 1995)

## UNITED STATES CONSTITUTION

U.S. CONST. amend. XIV § 1 ............................................................................ *passim*

## FEDERAL STATUTES

42 U.S.C. § 12132 ............................................................................................ *passim*

29 U.S.C. § 794 ................................................................................................ *passim*

42 U.S.C. § 12102(2)(1) .................................................................................. 10

29 U.S.C. § 705(20)(B)..................................................................................... 10

42 U.S.C. § 12102(2)(A)..................................................................................... 10

42 U.S.C. § 12131(2) ................................................................................. 10, 12, 13

42 U.S.C. § 12131(1)........................................................................................... 11

29 U.S.C. § 701(b)(1)........................................................................................... 12

42 U.S.C. § 12103(1)(B)...................................................................................... 12

**FEDERAL REGULATIONS**

35 C.F.R. § 28.104.............................................................................................. 10

45 C.F.R. § 84.3(j)(2)(i)-(ii)............................................................................... 10

7 C.F.R. § 15b.3.................................................................................................. 10

28 C.F.R. § 35.104.......................................................................................... 10, 12

7 C.F.R. § 15b.3(n)(4)......................................................................................... 11

45 C.F.R. § 84.3(l).............................................................................................. 11

28 C.F.R. § 35.130(a).......................................................................................... 11

7 C.F.R. § 15b.4(a).............................................................................................. 11

28 C.F.R. § 41.51(a)............................................................................................ 11

45 C.F.R. § 84.4(a).............................................................................................. 11

28 C.F.R. § 35.160(a).......................................................................................... 12

7 C.F.R. § 15b.4(d).............................................................................................. 12

7 C.F.R. § 15b.7(a).............................................................................................. 12

28 C.F.R. § 41.51(e)............................................................................................ 12

45 C.F.R. § 84.4(b).............................................................................................. 12

28 C.F.R. § 35.160(b)(1)...................................................................................... 12

45 C.F.R. § 84.52(d)(1)........................................................................................ 12

45 C.F.R. § 84.52(d)(3)..................................................................................... 12

28 C.F.R. § 35.160(b)(2).................................................................. 12-13, 14

28 C.F.R. § 35.130(b)(7).................................................................................. 13

28 C.F.R. § 35.106............................................................................................. 16

28 C.F.R. § 41.5(b)(1)....................................................................................... 16

45 C.F.R. § 84.8................................................................................................. 16

45 C.F.R. § 84.52(b).......................................................................................... 16

## STATE STATUTES

NEW YORK EXEC. LAW § 291 ......................................................................... 2

NEW YORK ADMIN. CODE § 8-107 ................................................................. 2

## STATE REGULATIONS

18 N.Y.C.R.R. § 303 .......................................................................................... 2

## I.        <u>INTRODUCTION</u>

Megan Rafferty, Deborah Haynes, Leason Jacob, and Diana Gray on behalf of themselves and the putative class ("Plaintiffs") bring this action to compel defendants to provide them written information, documents, and notices in the accessible alternative formats that blind or seriously visually impaired persons need in order to have an equal opportunity to apply for and participate in Medicaid or the Supplemental Nutrition Assistance Program ("Food Stamps").

Plaintiffs are blind or seriously visually impaired New York City residents and either receive Food Stamps and Medicaid benefits or will apply for these benefits in the future. *See* Declaration of Megan Rafferty in Support of Plaintiffs' Motion for Class Certification and a Preliminary Injunction, dated February 21, 2013 ("Rafferty Decl."), ¶¶ 2-5, 8);[1] Declaration of Deborah Haynes in Support of Plaintiffs' Motion for Class Certification and a Preliminary Injunction, dated February 6, 2013 ("Haynes Decl."), ¶¶ 2-4, 6; Declaration of Leason Jacob in Support of Plaintiffs' Motion for Class Certification and a Preliminary Injunction, dated February 21, 2013 ("Jacob Decl."), ¶¶ 2, 4-5; Declaration of Diana Gray in Support of Plaintiffs' Motion for Class Certification and a Preliminary Injunction, dated February 8, 2013 ("Gray Decl."), ¶¶ 2-5, 7-8. They need and are legally entitled to receive information about Food Stamps and Medicaid in accessible alternative formats and have requested materials in alternative formats that are effective for them. Defendants are the New York City Human Resources Administration ("HRA") and its Commissioner, Robert Doar (together, "City defendants"), the New York State Office of Temporary and Disability Assistance ("OTDA") and

---

[1] The declarations of the named Plaintiffs referred to in this Memorandum of Law are jointly submitted in support of Plaintiffs' Motion for Class Certification and Motion for a Preliminary Injunction. The original declarations have already been filed with the Court with the Motion for Class Certification. Copies of the declarations are annexed to this motion.

its Acting Commissioner, Kristin Proud, and the New York City Department of Health ("DOH")

and its Commissioner, Nirav Shah, M.D (together, "State defendants") (collectively,

"Defendants").

Defendants have refused or failed to provide materials and information in alternative

formats.  Rafferty Decl. ¶¶ 15-16, 17, 19; Haynes Decl. ¶¶ 13-16 ; Jacob Decl. ¶¶ 11-14; Gray

Decl. ¶¶ 13-15.  In doing so, Defendants have denied and failed to provide Plaintiffs with access

to critical information about their benefits, including filing deadlines, the application process,

and the prerequisites of participation, among other things.  Plaintiffs have previously lost

benefits for reasons that were related or likely related to Defendants' failure to provide

information in formats that are accessible to them.  *See* Rafferty Decl. ¶ 25; Haynes Decl. ¶ 21;

Jacob Decl. ¶¶ 18-19; Gray Decl. ¶¶ 19-20.

Defendants have refused and failed to:  (1) provide Plaintiffs with information in

accessible alternative formats; (2) inform Plaintiffs of their right to receive information in such

formats; and (3) take necessary steps to identify blind or seriously visually impaired individuals

who need information in such formats.  Defendant's conduct violates the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of

1973 ("Section 504"), 29 U.S.C. § 794; New York State Human Rights Law, NEW YORK EXEC.

LAW § 291 *et seq.*; the New York City Human Rights Law, N.Y. ADMIN. CODE § 8-107; and

New York State Office of Temporary and Disability Assistance regulations, specifically 18

N.Y.C.R.R. § 303.1; and the Due Process Clause of the Fourteenth Amendment to the United

States Constitution, U.S. CONST. amend. XIV § 1 ("Due Process Clause").

Plaintiffs move for a preliminary injunction on their claims under the ADA, Section 504, and the Due Process Clause.[2]  Without a preliminary injunction, Defendants' ongoing violations will continue pending final resolution of this action.  Plaintiffs therefore respectfully request that this Court issue a preliminary order directing Defendants to provide information about Food Stamps and Medicaid in accessible alternative formats and inform applicants and recipients of the right to receive information in such formats.

## II.     STATEMENT OF FACTS

The named Plaintiffs are blind or seriously visually impaired, live in New York City, and either receive Food Stamps or Medicaid or will apply to receive them in the future.  *See* Rafferty Decl. ¶¶ 2-5, 8; Haynes Decl. ¶¶ 2-4, 6; Jacob Decl. ¶¶ 2, 4-5; Gray Decl. ¶¶ 2-5, 7-8.  Approximately four thousand other blind or seriously visually impaired individuals reside in New York City and receive Food Stamps and/or Medicaid.  *See* Declaration of Cary LaCheen in Support of Plaintiff's Motion for Class Certification, dated March 8, 2013, ¶ 3.[3]  Plaintiffs rely on these subsistence benefits to obtain food and medical care and services, including home

---

[2]  Although the instant motion is brought on federal law claims under the ADA and section 504.  New York State law, as set forth in New York State Human Rights Law, New York City Human Rights Law, and New York State OTDA regulations provides substantially similar rights to receive Food Stamp and Medicaid information and materials in alternative formats.  *See Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 47 (S.D.N.Y. 2009).  The New York City Human Rights Law was amended to ensure that it shall be construed liberally, "regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed."  *Kreisler v. Second Ave Diner Corp.*, No. 10 Civ. 7592 (RJS), 2012 U.S. Dist. LEXIS 129298, at *40-41 (S.D.N.Y. Sept. 10, 2012).

[3]  This declaration was previously submitted to the Court in conjunction with Plaintiffs' Motion for Class Certification.

attendants.  *See* Rafferty Decl. ¶¶ 8, 13, 24-25; Haynes Decl. ¶¶ 6, 12, 20; Jacob Decl. ¶¶ 5, 10, 25; Gray Decl. ¶ 12.

Although Plaintiffs cannot access information in standard print formats, they can access alternative formats such as Braille, large print, tape recordings, accessible electronic communications, or other formats.  *See* Rafferty Decl. ¶¶ 10-12; Haynes Decl. ¶¶ 8-10; Jacob Decl. ¶¶ 8-9; Gray Decl. ¶¶ 9-10.  Plaintiffs have requested materials from Defendant HRA in formats that are accessible to them, but HRA did not provide it.  *See* Rafferty Decl. ¶¶ 17, 19, 22; Haynes Decl. ¶¶ 15-16, 19; Jacob Decl. ¶¶ 13-14; Gray Decl. ¶¶ 14-15, 17-20.

HRA did not respond at all to the requests of two of the Plaintiffs.  *See* Haynes Decl. ¶ 16; Jacob Decl. ¶ 14.  In addition, HRA incorrectly denied Ms. Gray's request on procedural grounds, but in any event has no policy to actually provide materials in the alternative formats she needs.  *See* Gray Decl. ¶¶ 12, 14-15 & Ex. C; Declaration of Cary LaCheen in Support of Plaintiff's Motion for a Preliminary Injunction, dated March 8, 2013 ("LaCheen Decl."), ¶¶ 21-26, 34-36, 43-48 & Ex. W, Attach. B at 14.  Ms. Gray also requested alternative format materials from the State Defendants, but they did not respond.  *See* Gray Decl. ¶¶ 14, 18.  HRA did respond to Ms. Rafferty's request, but that response did not offer to provide an effective accommodation.  Rafferty Decl. ¶ 19 & Ex. B; LaCheen Decl. ¶¶ 38-40.

Defendants have information that reveals that Plaintiffs are blind or seriously visually impaired, but never offered to provide information in alternative formats or ask which formats were effective for them.  *See* Rafferty Decl. ¶¶ 13-14; Haynes Decl. ¶ 12; Jacob Decl. ¶¶ 10, 12, 20; Gray Decl. ¶¶ 12-13 & Ex. A.  This is because Defendants have no procedures for reviewing information already in their possession to identify applicants and recipients who are blind and

visually impaired and offering them materials in alternative formats.  *See* LaCheen Decl. ¶¶ 29-33.

HRA's ADA policy mentions reading application forms to blind and visually impaired individuals at HRA offices but does not have any requirements for making documents other than applications accessible and does not require HRA to convert documents into formats that clients can access independently.  *See id.* ¶¶ 24-25 & Exs. K-M, W, Attach. B at 11.  HRA issued this policy after some of the named Plaintiffs requested materials in alternative formats and after counsel for plaintiffs notified HRA of the deficiencies in its alternative format policies and procedures.  *See id.* ¶¶ 20, 24, 38 & Ex. W.

State Defendants lack adequate policies and implementation procedures for providing materials in alternative formats to blind and seriously visually impaired individuals and have not required HRA to develop such policies and procedures.   OTDA policy requires HRA to provide materials in alternative formats but does not require OTDA to do so.  *See id.* ¶¶ 27, 29-30, 33 & Exs. N-Q.  DOH has no ADA policy and no procedures for providing materials in alternative formats to blind and visually impaired individuals.  *See id.* ¶¶ 28, 33 & Exs. R-U.  OTDA and DOH do not monitor to ensure that HRA provides materials in alternative formats to blind and visually impaired individuals who need them.  *See id.* ¶ 33 & Exs. N-U.

HRA offered to read Food Stamp documents to one of the named Plaintiffs and other blind and visually impaired individuals up to one to two weeks after they are received if the class member travels to an HRA office.  *See* Rafferty Decl. ¶ 19 & Ex. B; LaCheen Decl. ¶ 38.  The offered procedure would add delay to Plaintiffs' receipt of benefits-related information and add the burden and cost of travel.  *See* Rafferty Decl. ¶ 23 & Ex. B; Haynes Decl. ¶ 18; Jacob Decl. ¶ 17; Gray Decl. ¶ 22.  Of course, other applicants and recipients are not required to endure these

burdens to obtain this information.  HRA also offered to read some, but not all, Medicaid documents over the phone.  *See* Rafferty Decl. ¶ 19 & Ex. B; LaCheen Decl. ¶ 38.

Many of the documents that defendants mail to Food Stamp and Medicaid applicants and recipients contain deadlines by which applicants and recipient must act to preserve their entitlement to benefits.  Delays in responding typically result in application denial or termination of assistance.  *See* LaCheen Decl. ¶¶ 16-17 & Exs. E-I.  In addition, many of the documents Defendants provide to Plaintiffs are lengthy and complex and are difficult to digest if read only once.  *See id.* ¶¶ 8-15 & Exs. A-J.  Some of the documents defendants provide, such as informational booklets, are intended to be retained by the applicant or recipient and referred to from time to time.  *See id.* ¶¶ 11-12 & Ex. D.

The accommodation HRA has offered has other seriously limitations.  It consists of having Plaintiffs rely on others to look at their mail to ascertain whether a letter is from HRA and concerns Food Stamps or Medicaid, Rafferty Decl. ¶ 26; Haynes Decl. ¶ 18; Jacob Decl. ¶ 17, and then calling into a HRA office to have documents read to them over the phone or in person up to two weeks later.  However, this proffered solution does not account for the following problems:

- Plaintiffs would be delayed by up to 14 days in receiving the information on the mailing. *See* Rafferty Decl. ¶ 23; Hayes Decl. ¶ 18; Jacob Decl. ¶ 17.

- Plaintiffs would have to travel considerable distances simply to have the document read. Some blind or seriously visually impaired persons do not travel independently due to their impairments. Consequently, travel for Plaintiffs is often burdensome and costly as a result of their visual impairments.  *See* Rafferty Decl. ¶ 23; Hayes Decl. ¶ 18; Jacob Decl. ¶ 17.

- HRA provides neither the phone number that it wishes Plaintiffs to call into nor the case number to which Plaintiffs must refer when they call in formats that is accessible to them. *See* Haynes Decl. ¶ 18; Jacob Decl. ¶ 17.

- Some Food Stamps and Medicaid documents HRA sends Plaintiffs contains private information, which Plaintiffs must therefore share with other people when they ask those people to read the documents for them. *See* Rafferty Decl. ¶ 26; Haynes Decl. ¶ 18; Jacob Decl. ¶ 17; LaCheen Decl. Exs. A-C, E-I.

- The proposed solution does not cover many Medicaid documents. Rafferty Decl. ¶ 23; LaCheen Decl. ¶ 38.

- HRA's approach requires some Plaintiffs to depend on others to do things they can and would do for themselves if HRA had provided them with the documents in formats accessible to them. *See* Rafferty Decl. ¶ 23; Haynes Decl ¶ 18; Jacob Decl. ¶ 17; Gray Decl. ¶ 22.

Plaintiffs have lost benefits for reasons related or likely related to the failure to receive information in formats accessible to them and are in danger of losing them again if materials about their benefits are not provided in alternative formats. *See* Rafferty Decl. ¶¶ 25, 27; Haynes Decl. ¶¶ 19, 21; Jacob Decl. ¶¶ 18-19; Gray Decl. ¶¶ 19-20. If Plaintiffs lose Food Stamps, they will have difficulty purchasing the food they need. *See* Rafferty Decl. ¶ 25; Haynes Decl. ¶ 20; Jacob Decl. ¶¶ 24-25. One named Plaintiff needs an accessible application to reapply for Food Stamps so she is less likely to run out of food at the end of the month. *See* Gray Decl. ¶ 25.

## III.    <u>ARGUMENT</u>

Preliminary relief is warranted because: (1) Plaintiffs will likely succeed on the merits of their claims; (2) the denial of Plaintiffs' guaranteed statutory and constitutional rights causes

Plaintiffs to face irreparable harm; and (3) Defendants' compliance with their constitutional and statutory obligations will serve the public's interest in ensuring that Plaintiffs receive equal access to government services and subsistence benefits.

### A.      **Legal Standard**

A party seeking a preliminary injunction must show that there will be irreparable harm in the absence of the injunction and that there is either a likelihood of success on the merits, or a sufficiently serious question that is a fair ground for litigation on the merits and that a balance of hardships tips decidedly in favor of an injunction.  *See, e.g.*, *MONY Grp., Inc. v. Highfields Capital Mgmt.*, 368 F.3d 138, 143 (2d Cir. 2004) (quoting *Forest City Daly Hous., Inc. v. Town of N. Hempstead,* 175 F.3d 144, 149 (2d Cir. 1999); *M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 426 (S.D.N.Y. 2006).

In this case, Plaintiffs seek a preliminary injunction to prevent Defendants from violating the ADA, Section 504, and the Due Process Clause by depriving them of accessible critical information about Food Stamps and Medicaid.  Because adequate notice is crucial to the ability to secure and retain subsistence benefits, courts routinely grant preliminary injunctions where such notice is not provided.  *See, e.g.*, *M.K.B.*, 445 F. Supp. 2d at 438-39 (granting preliminary injunction requiring adequate notice to eligible immigrants regarding benefit eligibility determinations); *Becker v. Toia*, 439 F. Supp. 324, 331, 336 (S.D.N.Y. 1977) (granting preliminary injunction requiring adequate notice regarding Medicaid regulation change); *Olson v. Wing*, 281 F. Supp. 2d 476, 489 (E.D.N.Y. 2003), *aff'd,* 66 F. App'x 275 (2d Cir. 2003) (granting preliminary injunction requiring adequate notice of termination of Disaster Relief Medicaid benefits); *Catanzano v. Dowling*, 847 F. Supp. 1070, 1086 (W.D.N.Y. 1994), *aff'd by* 60 F.3d 113 (2d Cir. 1995) (granting preliminary injunction to prevent reduction or termination

of home health care benefits where notices were not adequate); *Doe v. Perales*, 782 F. Supp. 201, 206 (W.D.N.Y. 1991) (granting temporary restraining order regarding inadequate notice of a reduction in Medicaid for elderly residents of nursing homes); *Willis v. Lascaris,* 499 F. Supp. 749, 760 (N.D.N.Y. 1980) (granting a preliminary injunction as to inadequate notice regarding reduction in food stamps benefits).  In addition, courts have granted preliminary injunctions when ADA and Section 504 rights are at stake, *see, e.g., Innovative Health Sys. v. City of White Plains*, 117 F.3d 37, 45 (2d Cir. 1997), including cases involving ADA and Section 504 violations in the administration of public benefits programs.  *See e.g., Lovely H. v. Eggleston*, No. 05 Civ. 6920, 2006 U.S. Dist. LEXIS 21363, at *1-2 (S.D.N.Y. Apr. 19, 2006).

### B.   Plaintiffs Have A Likelihood Of Success On The Merits

Defendants individually and jointly play a role in developing, producing, and distributing written materials about Food Stamps and Medicaid to applicants and recipients.  The Americans with Disabilities Act and Section 504 of the Rehabilitation Act require Defendants to provide effective communication with individuals with disabilities with materials in alternative formats when necessary for effective communication.  Defendants have no policies or procedures for determining whether Food Stamps and Medicaid applicants and/or recipients are blind or seriously visually impaired and/or require information in accessible alternative formats.  Defendants also lack a procedure to determine whether a particular alternative format will be effective for the individual.  Defendants have refused and failed to provide information in accessible alternative formats to Plaintiffs, thereby depriving them of effective communication with Defendants regarding their benefits, notice of eligibility determinations, and changes to their benefits.  For these reasons, Plaintiffs will likely succeed on the merits of their statutory claims under the ADA and Section 504 and their Due Process Clause claim.

**i.   Defendants' Failure To Provide Benefits-Related Materials In Accessible Alternative Formats Violates The ADA And Section 504**

Plaintiffs establish that:  (1) they are qualified individuals with a disability as defined by the ADA and Section 504; (2) Defendants are subject to the ADA and Section 504; and (3) Plaintiffs were discriminated against by Defendants by reason of their disability.  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003), *cert. denied*, *Bloomberg v. Henrietta D.,* 541 U.S. 936 (2004).

First, Plaintiffs are qualified individuals with disabilities.  The ADA and Section 504 define "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  *See* 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B).  The term "major life activities" is defined as including functions such as "caring for oneself, . . .  seeing, . . . and working."  42 U.S.C. § 12102(2)(A); *see also* 35 C.F.R. § 28.104; 45 C.F.R. § 84.3(j)(2)(i)-(ii); 7 C.F.R. § 15b.3 (using the older term "handicapped person").  As blind or seriously visually impaired individuals, Plaintiffs are substantially limited in a major life activity under the plain language of the ADA and Section 504.

Under the ADA, a "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of  . . . communication . . . barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2); 28 C.F.R. § 35.104. Under Section 504, a "qualified individual with a disability" or "qualified handicapped person"[4]

---

[4] Some Section 504 regulations use the older terminology "qualified handicapped person."

-10-

is defined as an individual who meets the essential eligibility requirements for the receipt of the relevant service.  7 C.F.R. § 15b3(n)(4); 45 C.F.R. § 84.3(l).

All four plaintiffs currently receive Medicaid, and three receive Food Stamps.  *See* Rafferty Decl. ¶ 8; Haynes Decl. ¶ 6; Jacob Decl. ¶ 5; Gray Decl. ¶¶ 7-8.  Ms. Gray seeks to reapply for Food Stamps, which she has received in the past, and needs an accessible application so she can complete it herself.  *See* Gray Decl. ¶¶ 8, 14.  As Ms. Gray is eligible to apply for Food Stamps, she is a "qualified individual with a disability" with respect to the application process.  *See Perdue v. Gargano*, 964 N.E.2d 825, 843 (Ind. 2012).  Thus, Plaintiffs clearly meet the essential eligibility requirements for participation in these programs.

Second, Defendants are subject to the ADA and Section 504.  Defendants are State and local government entities and their chief officials sued in their official capacities.  Complaint ¶¶ 4, 167.  Thus they are public entities under Title II of the ADA.  42 U.S.C. § 12131(1).  Defendants receive federal financial assistance, including federal Food Stamp and Medicaid funding.  *See* Complaint ¶ 174.  Thus they are covered by Section 504.  *See* 29 U.S.C. § 794(a).

Third, Plaintiffs have been subjected to discrimination by Defendants by reason of their disabilities.  Title II of the ADA prohibits public entities – state and local governments and their agencies – from excluding qualified individuals with disabilities from participating in or denying them the benefits of their services, programs, or activities or from otherwise subjecting them to discrimination, by reason of their disabilities.  42 U.S.C. §12132; 28 C.F.R. § 35.130(a).  Similarly, Section 504 prohibits entities that receive federal assistance from excluding qualified individuals with disabilities from participating in or receiving the benefits of their services or programs, or otherwise discriminating against them by reason of their disability.  29 U.S.C. § 794(a); *see also* 7 C.F.R. § 15b.4(a); 28 C.F.R. § 41.51(a); 45 C.F.R. § 84.4(a).  Section 504 is

-11-

intended "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society, through . . . the guarantee of equal opportunity."  29 U.S.C. § 701(b)(1); *see also Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1260 (D.C. Cir. 2008).

Regulations implementing Title II of the ADA and Section 504 require public entities to take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communication with non-disabled individuals. *See, e.g.*, 28 C.F.R. § 35.160(a); 7 C.F.R. §§ 15b.4(d), 15b.7(a); 28 C.F.R. § 41.51(e); 45 C.F.R. § 84.4(b).  The regulations further provide that "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity."  28 C.F.R. § 35.160(b)(1); 45 C.F.R. § 84.52(d)(1); *see also* 42 U.S.C. § 12131(2) (defining "qualified individual with a disability" as "an individual with a disability who, with or without . . . . the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services,[5] meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity").

The ADA requires that "[i]n determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with

---

[5]  "Auxiliary aids and services" are defined in the ADA to include "qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments."  42 U.S.C. §12103(1)(B).  The ADA implementing regulations define "auxiliary aids and services" to include qualified readers, taped texts, audio recordings, Brailled materials, large print materials, or other effective methods of making visually delivered materials available to individuals with visual impairments.  28 C.F.R § 35.104.  Section 504 implementing regulations define "auxiliary aids" to include "brailled and taped material, interpreters, and other aids. . . ."  45 C.F.R. § 84.52(d)(3).

disabilities." 28 C.F.R. § 35.160(b)(2).  In addition, "[i]n order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," and in a timely manner. *Id*.  Finally, the ADA and Section 504 require that public entities make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7); *see also* 42 U.S.C. § 12131(2); *Alexander v. Choate*, 469 U.S. 287, 301 (1985) (Section 504 requires that "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers . . . .  to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made").

The failure to provide effective communication with individuals with disabilities and failure to modify policies and procedures to do so constitutes discrimination under the ADA and Section 504.  *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1049 (S.D.N.Y. 1995) (holding that the failure to provide sign language interpreters for deaf inmates violated the ADA); *Am. Council of the Blind v. Astrue*, No. C 05-04696 (WHA), 2009 U.S. Dist. LEXIS 97599, at *80-81 (N.D. Cal. Oct. 20, 2009) (holding that the Social Security Administration's failure to provide notices in alternative formats to blind recipients violated Section 504).

Defendants have plainly violated these requirements.  Plaintiffs cannot read the written materials mailed and otherwise provided to them because Defendants have failed and refused to provide them in accessible formats.  *See* Rafferty Decl. ¶¶ 10, 15; Haynes Decl. ¶¶ 8, 13; Jacob Decl. ¶¶ 8, 11; Gray Decl. ¶¶ 9, 18, 21.  Plaintiffs have asked Defendant HRA to provide Food Stamps and Medicaid documents in alternative formats.  *See* Rafferty Decl. ¶ 17 & Ex. A;

Haynes Decl. ¶ 15 & Ex. A; Jacob Decl. ¶ 13 & Ex. A; Gray Decl. ¶ 14 & Ex. B; LaCheen Decl. ¶¶ 37, 42-43.  Plaintiff Diana Gray asked all three agency defendants to provide documents in particular alternative formats that are effective for her.  *See* Gray Decl. ¶ 14 & Ex. B.

Rather than take steps to ensure that visually impaired individuals enjoy equal access to services and benefits, Defendants have denied or failed to respond to these requests.  After Plaintiffs made these requests, Defendants continued to send Plaintiffs documents in standard print.  In December, HRA sent one Plaintiff a standard print notice with a print enclosure stating "Important notice enclosed.  If you need help reading this notice, contact your worker," although HRA knows she could not read the enclosure because it was not in an accessible format.  *See* Haynes Decl. ¶ 19.

Moreover, City defendants' proffered an inadequate alternative accommodation than the ones sought.  The alternative would not provide timely or effective access to information, would require plaintiffs to travel to access information, and fails to address certain documents altogether.  The alternative would also require plaintiffs to rely on agency staff to provide them with information plaintiffs want and are able to access directly on their own if it is provided in appropriate formats.  Plaintiffs have a right to access to information about their benefits independently and should not be forced to rely on others to do something that – with reasonable accommodations – they can do themselves.  *See* 28 C.F.R. § 35.160(b)(2); *Paulson*, 525 F.3d at 1269-70 (holding that Section 504's "emphasis on independent living and self-sufficiency ensures that, for the disabled, the enjoyment of a public benefit is not contingent upon the cooperation of third persons").

Defendants' refusal and failure to provide written materials in alternative formats severely impedes Plaintiffs' ability to maintain their Food Stamps and Medicaid without

interruption, understand benefit program rules, comprehend the nature of and reasons for changes in benefits, and learn of important deadlines.  *See* Rafferty Decl. ¶¶ 10-12, 23-27; Haynes Decl. ¶¶ 8-10, 18-19; Jacob Decl. ¶¶ 8-9, 18-19, 24; Gray Decl. ¶ 9-10, 19-23; *see also Paulson*, 525 F.3d at 1257 ("[w]here the plaintiffs identify an obstacle that impedes their access to a government program or benefit, they likely have established that they lack meaningful access to the program or benefit" pursuant to Section 504); *Am. Council of the Blind*, 2009 U.S. Dist. LEXIS 97599 at *55-56  (holding that defendant agency's use of standard print materials only was an obstacle impeding blind and seriously visually impaired social security recipients' access to a government program or benefit).

Requiring Plaintiffs to rely on others, including agency staff, to read documents to them does not provide effective or comparable access to information.  Some documents provided to Food Stamp and Medicaid applicants and recipients are lengthy and are designed to be used as a resource, not read through once from beginning to end.  Many Food Stamps and Medicaid forms and instructions are lengthy and detailed, and thus a single reading may be inadequate.  *See* LaCheen Decl. ¶¶ 8-15, 28 & Exs. A-J.  The joint application for benefits is 16 pages of small print; the Food Stamps Application/Recertification form is eight pages of small print.  *See id.* ¶ 9 & Exs. A-B.  The DOH Medicaid application is 16 dense pages, consists mostly of less than twelve point type, and resembles a personal income tax return.  *See id.* ¶ 10 & Ex. C.

Ms. Rafferty needs applications in an accessible format so she can review them and bring the correct documents with her when she goes to HRA for help in filling them out.  She also needs an accessible completed application so she can review them to make sure the information is correct.  *See* Rafferty Decl. ¶ 23.  Ms. Gray needs a Food Stamp application in an accessible format so she can complete it herself and review it before submitting it.  *See* Gray Decl. ¶¶ 14,

22.  Individuals who read long, complex documents aloud to others sometimes summarize instead of reading every word.  *See* Rafferty Decl. ¶ 23.  Food Stamp and Medicaid documents contain critical information regarding deadlines and the legal consequences of failing to comply with program rules, among other things.  *See* LaCheen Decl. ¶¶ 9-11, 13-15, 16-19 & Exs. E-I. Plaintiffs can easily miss important information when forced to rely upon others to read their benefits materials to them, thus jeopardizing their receipt of subsistence benefits.  *See* Rafferty Decl. ¶ 23.  Plaintiffs have a right to access this information independently without being at the mercy of other people.

        In short, Defendants' failure to provide qualified disabled individuals information related to government benefits in accessible formats denies Plaintiffs an equal opportunity to participate into Food Stamp and Medicaid programs, and thereby violates the ADA and Section 504.

> **ii.    Defendants' Failure to Provide Notice of the Right to Obtain Written Materials in Alternative Formats Violates the ADA and Section 504**

        Regulations implementing the ADA and Section 504 require Defendants to provide notice to applicants, recipients, and others about their rights under these laws and their application to Defendants' programs and services.  28 C.F.R. §§ 35.106, 41.5(b)(1); 45 C.F.R. §§ 84.8, 84.52(b).  Failure to comply with these requirements violates the ADA and Section 504. *Hallett v. N.Y. State Dep't of Corr. Servs.*, No. 99 Civ. 5853 (LTS) (AJP), 2006 U.S. Dist. LEXIS 17498, at *21-22 (S.D.N.Y. Apr. 7, 2006); *Blatch v. Hernandez*, 360 F. Supp. 2d 595, 633 (S.D.N.Y. 2005); *Clarkson*, 898 F. Supp. at 1044.  The notice of rights requirement is integral to the ADA and Section 504, as individuals who have not been provided with notice of their ADA and Section 504 rights are unlikely to request reasonable accommodations and auxiliary aids and services necessary for effective communication.

Defendants have failed to provide plaintiffs and the plaintiff class with notice of their rights to materials and information in alternative formats. HRA's recently revised ADA client brochure for Food Stamps states that HRA will help with reading and completing forms, but does not mention documents other than forms or mention converting documents into alternative formats. *See* LaCheen Decl. ¶¶ 24-25 & Ex. W. HRA's ADA policy does not say that the brochure is available in alternative formats. *Id.* ¶ 34 & Ex. W. Thus, if the brochure itself is not in an alternative format, even if it contains information about the right to receive written information in alternative formats, it would not be accessible to Plaintiffs. HRA's previous ADA brochure did not mention the right to alternative formats either. *See id.* ¶¶ 21-23 & Ex. V. HRA's ADA Medicaid policy does not require staff to inform people of their ADA or Section 504 rights in the Medicaid Program. *See id.* ¶¶ 26, 35 & Ex. X. OTDA requires local districts to provide notice of ADA rights, but does not indicate that OTDA will provide notice of rights to applicants and recipients, and no notice of rights materials are attached to the policy. *See id.* ¶¶ 29, 36 & Exs. N-Q. DOH does not have an ADA policy, much less procedures for notifying Medicaid applicants and recipients of their ADA and Section 504 rights in the Medicaid program. *See id.* ¶¶ 28, 33 & Exs. R-U.

   iii. **Defendants' Failure to Provide Written Materials in Alternative Formats Deprives Plaintiffs of Adequate Notice in Violation of The Due Process Clause**

The Due Process Clause prohibits the deprivation of a protected property interest without adequate notice or an opportunity to be heard. In evaluating a procedural due process claim, the Court must evaluate "'whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes,' and, if so, 'what process was due before the plaintiff could be deprived of that interest.'" *M.K.B.*, 445 F. Supp. 2d at 431-32 (quoting *Green*

*v. Bauvi,* 46 F.3d 189, 194 (2d Cir. 1995).  Here, Plaintiffs have a protected property interest in the receipt of their Food Stamps and Medicaid and Defendants' failure to provide materials in accessible alternative formats denies Plaintiffs the process they are due by depriving them of effective notice regarding their subsistence benefits.

As recognized by the United States Supreme Court, the denial of subsistence benefits to those entitled to them may deprive recipients of the "very means by which to live." *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970).  Because the Plaintiffs' Food Stamps and Medicaid "are conditioned upon financial need due process concerns are of correspondingly greater weight" than in the case of other entitlements. *Isaacs v. Bowen*, 865 F.2d 468, 476 (2d Cir. 1989) (citing *Mathews v. Eldridge*, 424 U.S. 319, 342 (1975)).

Public assistance recipients have a property interest in maintaining and accessing their public benefits. *See Goldberg*, 397 U.S. at 263, n.8 ("It may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity.'"); *Reynolds v. Giuliani*, 35 F. Supp. 2d 331, 341(S.D.N.Y. 1999) (recognizing that plaintiffs had an "overarching property interest" in continued receipt of food stamps and Medicaid).  In order "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . .  He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Individuals who are qualified to receive benefits such as Food Stamps and Medicaid have a legitimate claim of entitlement to such benefits. *M.K.B*, 445 F. Supp. 2d at 432; *see also Atkins v. Parker*, 472 U.S. 115, 128 (1985) ("Food-stamp benefits . . . 'are a matter of statutory entitlement for persons qualified to receive them.'") (quoting *Goldberg,* 397 U.S. at 262).  Here, because the Plaintiffs are qualified to receive Food Stamps and Medicaid benefits, they have a legitimate claim of entitlement to them.

-18-

In addition, there is no question that Plaintiffs, as applicants for Food Stamps and Medicaid, have a property interest in the benefits and are entitled to due process. *Kapps v. Wing*, 404 F.3d 105, 115-17 (2d Cir. 2005). As the Second Circuit observed, "[t]he rationale for recognizing applicants' due process rights in these cases is apparent. Statutory language may so specifically mandate benefits awards upon demonstration of certain qualifications that an applicant must fairly be recognized to have a limited property interest entitling him, at least, to process sufficient to permit a demonstration of eligibility." *Id.* at 116. Here, applicants for Food Stamps and Medicaid easily meet this test because, if they qualify under published eligibility standards, they are entitled to receive assistance. *See, e.g.*, *Reynolds,* 35 F. Supp. 2d at 341 ("Plaintiffs' allegations concerning various practices at job centers, such as providing false or misleading information to applicants about their eligibility, arbitrarily denying benefits to eligible individuals, and failing to provide notice of hearing rights, state a viable due process claim under § 1983.").

Once a plaintiff has established a protected property interest, the question becomes what process is due before the plaintiff can be deprived of that property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Courts answer that question by balancing: (1) the private interest that will be affected; (2) the risk of erroneous deprivation of that property interest through the procedures used, and the probable value of additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 342. Here, those factors all weigh in favor of issuing an injunction.

First, the private interest affected by Defendants' conduct could not be more significant. Defendants' actions have deprived – and will continue to deprive – Plaintiffs of the information

-19-

needed to obtain and maintain the benefits they need for food and medical care and treatment. Defendants have failed – and in some instances refused – to provide Plaintiffs with anything other than standard print Food Stamps and Medicaid materials.  The limited alternatives HRA has offered to some Plaintiffs do not provide access to all of the documents defendants provide to Plaintiffs, would create significant delays in accessing information, and require onerous travel and expenses not required of others.

Second, Defendants' refusal to provide Food Stamps and Medicaid benefits materials in accessible formats denies Plaintiffs effective notice regarding their benefits and has caused – and will continue to cause – the erroneous denial of an opportunity to apply for and maintain subsistence benefits to those entitled to them.  This Court has recognized that a government agency violates the Due Process Clause by providing misleading or inaccurate information about Medicaid and Food Stamp eligibility.  *See, e.g.*, *M.K.B.*, 445 F. Supp. 2d at 432 (holding that inaccurate notices related to Medicaid and Food Stamp eligibility determinations do not satisfy due process); *Reynolds*, 35 F. Supp. 2d at 341 (holding that providing false or misleading information to Medicaid and Food Stamp applicants violates due process).  Defendants are aware that Plaintiffs cannot access Food Stamps and Medicaid materials provided in standard written format.  By providing information in formats they know the Plaintiffs cannot read, Defendants have, for all intents and purposes, provided no notice at all.

Third, any burden imposed by requiring Defendants to provide information in accessible alternative formats is outweighed by the significant public interest in providing subsistence benefits to welfare recipients.  An individual's ability to survive above the poverty level "is not an isolated concern, but is an important concern of our society as a whole."  *Willis*, 499 F. Supp. at 756.  When survival at the edge of poverty is at issue – as it is here – financial and

administrative burdens do not carry significant weight.  *See, e.g.*, *Goldberg*, 397 U.S. at 266

(holding that government's additional administrative costs are not overriding in the welfare

context).  Indeed, to the extent that the obligation to provide materials to applicants in accessible

formats is required by law, Defendants can claim no harm.  As the Seventh Circuit observed in

*Haskins v. Stanton* when ordering the State of Indiana to timely process applications for Food

Stamps:

> Because the defendants are required to comply with the Food Stamp Act under
> the terms of the Act, we do not see how enforcing compliance imposes any
> burden on them.  The Act itself imposes the burden; this injunction merely seeks
> to prevent the defendants from shirking their responsibilities under it.  We also
> fail to see how enforcing a statute designed to promote the public welfare
> disserves the public.

794 F.2d 1273, 1277 (7th Cir. 1986).

**C.      Plaintiffs Will Suffer Irreparable Harm Absent A Preliminary Injunction**

Plaintiffs will suffer irreparable harm if the Court does not grant the relief requested.

Injury is considered irreparable if it is not speculative and is not compensable by money alone.

*See Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995).  In this case, Plaintiffs will be irreparably

harmed if they do not receive information in accessible alternative formats because this failure

denies Plaintiffs equal access to benefits materials and jeopardizes their receipt of subsistence

benefits.  This failure denies them adequate notice regarding a protected property interest, thus

constituting *per se* irreparable harm.

Defendants' failure to provide effective communication with Plaintiffs denies them an

equal opportunity to participate in and benefit from the Food Stamp and Medicaid programs and

places them at serious risk of losing their benefits.  Food Stamps are approved for finite time

periods and recipients must reapply for benefits to continue.  *See* LaCheen Decl. ¶ 8.  Some

Medicaid recipients must renew their eligibility for their benefits periodically.  All four named

plaintiffs have lost Food Stamp benefits in the past for reasons directly or likely related to the fact that Defendants did not provide them with notices and recertification packets in alternative formats.  *See* Rafferty Decl. ¶¶ 25, 27; Haynes Decl. ¶¶ 19, 21; Jacob Decl. ¶¶ 18-19; Gray Decl. ¶¶ 19-20.

The named Plaintiffs currently receiving Food Stamps would be irreparably harmed if they are unable to recertify eligibility effectively and lose benefits as a result.  *See* Rafferty Decl. ¶ 24; Haynes Decl. ¶ 20; Jacob Decl. ¶¶ 23, 25.  As Defendants have not agreed to provide recertification packets in alternative formats and have no policies requiring them to do so, the named Plaintiffs face a serious risk of losing these benefits again.

The harm is irreparable because the benefits involved are subsistence benefits.  Given the economic circumstances of people receiving Medicaid and Food Stamps, "the denial of public benefits to such individuals unquestionably constitutes irreparable harm." *M.K.B.*, 445 F. Supp. 2d at 437.  The financial hardships facing recipients of Medicaid and Food Stamps are such that the termination or interruption of benefits constitutes irreparable injury as a matter of law.  *See Goldberg*, 397 U.S. at 264 (observing that denial of subsistence benefits to eligible applicants may deprive such applicants of the "very means by which to live."); *Reynolds,* 35 F. Supp. 2d at 339 ("To indigent persons, the loss of even a portion of subsistence benefits constitutes irreparable injury."); *Morel v. Giuliani*, 927 F. Supp. 622, 635 (S.D.N.Y. 1995); *Brown v. Giuliani*, 158 F.R.D. 251, 264 (E.D.N.Y. 1994).

In this case, the loss of Food Stamps and Medicaid s has threatened and will continue to threaten Plaintiffs' ability to obtain food, medical treatment, and other necessities.  *See* Rafferty Decl. ¶¶ 25, 27; Haynes Decl. ¶¶ 20-22; Jacob Decl. ¶¶ 8-9, 23-25, 22.  Ms. Gray's inability to apply for and thus receive Food Stamps makes it more likely that she will run out of food by the

end of the month.  *See* Gray Decl. ¶¶ 24-26.  Plaintiffs subsist on limited incomes and their

benefits are a significant portion of their income.  *See* Rafferty Decl. ¶¶ 8-9, 24; Haynes Decl. ¶¶

6-7, 20; Jacob Decl. ¶¶ 5-6, 25; Gray Decl. ¶ 8.

Moreover, Defendants' failure to provide benefits information in accessible formats has

caused or likely caused the Plaintiffs to miss important deadlines and resulted in the loss of their

benefits.  *See* Rafferty Decl. ¶ 35; Haynes Decl. ¶ 21; Jacob Decl. ¶¶ 18-22; Gray Decl. ¶¶ 19-20;

*see also Lovely H.*, 2006 U.S. Dist. LEXIS 21363, at *43-44 (holding that "[t]he risk of

irreparable harm in the form of loss of vital subsistence benefits is high because failure to appear

for recertification appointments or to respond to requests for additional information could result

in discontinuation of benefits for class members").

Defendants' failure to provide proper notice of a protected property interest (here, Food

Stamps and Medicaid) violates Plaintiffs' Due Process rights and therefore also constitutes *per se*

irreparable harm.  *See, e.g.*, *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (stating that the

alleged violation of a constitutional right triggers a finding of irreparable harm); *Mitchell v.

Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right

is involved, most courts hold that no further showing of irreparable injury is necessary.");

*Disabled Am. Veterans v. U.S. Dep't of Veterans Affairs*, 783 F. Supp. 187, 196 (S.D.N.Y. 1992),

("Where possible deprivation of a constitutional right is implicated, most courts, including the

Court of Appeals for this Circuit, hold that no further showing of irreparable injury is

necessary."), *rev'd on other grounds*, 962 F.2d 3 (2d Cir. 1992).  When a constitutional claim

concerning inadequate notice is asserted, irreparable harm is established.  *See Bray v. City of

New York*, 346 F. Supp. 2d 480, 489 (S.D.N.Y. 2004) (holding that the allegation of a Fourteenth

Amendment Due Process violation satisfied the irreparable harm prong of the preliminary injunction analysis).  It follows that Plaintiffs satisfy this requirement.

> **D.**      **The Balance Of Harms Weighs In Favor Of Issuing A Preliminary Injunction**

The Court should require Defendants to comply with their legal obligations because the balance of harms favors Plaintiffs and granting a preliminary injunction will not harm the public. Because a preliminary injunction is an exercise of equitable authority, a court considering such a motion should consider the balance of equities, including the public interests involved.  *See, e.g.*, *Olson*, 281 F. Supp. 2d at 489 (citing *Million Youth March, Inc. v. Safir,* 155 F.3d 124, 125 (2d Cir. 1998)).  Here, Defendants' conduct imposes significant hardships upon Plaintiffs because it impedes Plaintiffs' ability to access information about Food Stamps and Medicaid, denies them equal access to government agencies, and jeopardizes their receipt of subsistence benefits.

On the other hand, Plaintiffs seek preliminary relief that only requires Defendants to fulfill their legal obligations under the ADA, Section 504, and the Due Process Clause.  The risk of denying eligible Food Stamp and Medicaid recipients "the very means by which [they] live" far outweighs any inconvenience that complying with federal and state law may impose. *Goldberg,* 397 U.S. at 264.  As the United States Supreme Court has observed, "[p]ublic assistance . . . is not mere charity, but a means to promote the general Welfare." *Id.* at 265.  It follows that issuing an injunction here would "promote the general welfare," as any administrative burden on Defendants is far outweighed by the harm they are inflicting on the Plaintiffs.

E.      **The Court Should Waive The Bond Requirement Of Rule 65(c)**

The Court should waive the requirement that a bond be posted.  Courts generally cannot issue injunctions unless the movant provides security in an amount sufficient to compensate damages sustained by the non-movant if the Court later determines that the non-movant was wrongfully enjoined.  Fed. R. Civ. P. 65(c).  Courts have discretion to waive that requirement, however, in cases involving "public interests" arising out of "comprehensive federal health and welfare statutes."  *Pharm. Soc'y v. N.Y. State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995) (holding that a lawsuit brought to ensure pharmacies received full payment for Medicare services sought to "enforce 'public interests' arising out of a comprehensive health and welfare statute" for purposes of the bond requirement).

Here, Plaintiffs are four private citizens with limited financial resources.  They are seeking a preliminary injunction requiring Defendants to provide them and other blind and seriously visually impaired New Yorkers with information, and notice of their right to receive information, in accessible formats.  In doing so, they are seeking to enforce public interests – *i.e.*, ensuring access to and receipt of benefits by blind and seriously visually impaired individuals – arising out of federal health and welfare statutes.  The Court should therefore waive the bond requirement imposed by Rule 65(c).

IV.   **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court grant their Motion for Preliminary Injunction.

Respectfully submitted,

Dated:  March 8, 2013                            */s/ Cary LaCheen*_____
                                                         Cary LaCheen (N.Y. Bar No. CL 7687)
                                                         Marc Cohan (N.Y. Bar No. MC 2612)

-25-

Gerald S. Hartman
Maureen Donahue Hardwick
Drinker Biddle & Reath LLP
1500 K Street, N.W.
Washington, DC 20005-1209
Phone: (202) 842-8800
Fax: (202) 842-8465
jerry.hartman@dbr.com
maureen.hardwick@dbr.com

*Of Counsel for Plaintiffs*

Michael P. Daly
Nicholas S. Feltham
Joshua M. Link
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6999
Phone: (215) 988-2700
Fax: (215) 988-2757
michael.daly@dbr.com
nicholas.feltham@dbr.com
joshua.link@dbr.com

*Of Counsel for Plaintiffs*

Mary R. Mannix (N.Y. Bar No. MM 2508)
Jenny R. A. Pelaez (N.Y. Bar No. JP 1364)
National Center for Law & Economic
Justice
275 Seventh Avenue, Suite 1506
New York, New York 10001-6708
Phone: (212) 633-6967
Fax: (212) 633-6371
cohan@nclej.org
lacheen@nclej.org
mannix@nclej.org
pelaez@nclej.org

*Counsel for Plaintiffs*