UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEGAN RAFFERTY, DEBRA HAYNES,
LEASON JACOB, and DIANA GRAY, on behalf of
themselves and all others similarly situated,

NO. 13 CIV. 1410 (TPG)

Plaintiffs,

v.

ROBERT DOAR, in his capacity as Commissioner of
the New York City Human Resources
Administration;

KRISTIN PROUD, in her capacity as Acting
Commissioner of the New York State Office of
Temporary and Disability Assistance;

NIRAV SHAH, M.D., in his capacity as
Commissioner of the New York City Department of
Health;

the NEW YORK CITY HUMAN RESOURCES
ADMINISTRATION;

the NEW YORK STATE OFFICE OF
TEMPORARY AND DISABILITY ASSISTANCE;
and

the NEW YORK CITY DEPARTMENT OF
HEALTH,

Defendants.

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT UNDER 28 U.S.C. § 1715

**PLEASE TAKE NOTICE** that Defendants hereby provide the notice required by the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1715(b), regarding the above-captioned certified class action in the Southern District of New York.

Pursuant to that provision, please find the following exhibits enclosed:

Exhibit A: Complaint dated March 1, 2013, attached pursuant to 28 U.S.C. § 1715(b)(1).

Exhibit B: Order Pursuant to Federal Rule of Civil Procedure 23(e) so-ordered on July 14, 2015, scheduling a fairness hearing in this matter for October 1, 2015 at 2 p.m. before the Hon. Thomas P. Griesa at the United States District Courthouse for the Southern District of New York, 500 Pearl Street, Courtroom 26B, New York, New York 10007, attached pursuant to 28 U.S.C. § 1715(b)(2).

Exhibit C: The Fed. R. Civ. P. 23(e)(1) notice to class members, attached pursuant to 28 U.S.C. § 1715(b)(3).

Exhibit D: The proposed Stipulation and Order of Settlement for this class action, executed by the parties on May 12, 2015 and filed on the Court's docket on May 21, 2015, attached pursuant to 28 U.S.C. § 1715(b)(4).

Please take further notice, pursuant to 28 U.S.C. § 1715(b)(3)(A)(ii), that no class member has the right to request exclusion from the class under the terms of the proposed settlement.

Finally, please take notice, pursuant to 28 U.S.C. § 1715(b)(7)(B), that HRA estimates that most of the eligible class members reside in New York State, and cannot estimate the number of class members who reside outside of New York State. However, Defendants note that the proposed settlement only entails injunctive relief and, therefore, there is no "proportionate share" of the settlement payable to class members who may reside in different states.

Dated:  New York, New York
        July 22, 2015

Carolyn Kruk
Assistant Corporation Counsel
New York City Law Department
100 Church Street, Room 2-192
New York, New York 10007
(212) 356-0893
ckruk@law.nyc.gov


By: _____
     Carolyn E. Kruk
     Assistant Corporation Counsel

William H. Bristow III
Assistant Attorney General
New York State Attorney General's Office
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8648
william.bristow@ag.ny.gov


By: _____
     William H. Bristow III

2

TO:   **By regular mail** (except where otherwise noted)

Kathleen M. Kelleher, Esq.          Attorney General of the United States
Susan E. Welber, Esq.              U.S. Department of Justice
Kenneth R. Stephens, Esq.        950 Pennsylvania Avenue, NW
The Legal Aid Society              Washington, DC 20530-0001
Attorneys for Plaintiffs
**(By ECF)**

Office of the Attorney General of Alabama     Office of the Attorney General of Arizona
501 Washington Avenue              1275 W. Washington St.
P.O. Box 300152                  Phoenix, AZ 85007
Montgomery, AL 36130-0152

Office of the Attorney General of California    Office of the Attorney General of Colorado
1300 I St., Ste. 1740               1300 Broadway, 10th Floor
Sacramento, CA 95814             Denver, CO 80203

Office of the Attorney General of Connecticut   Office of the Attorney General of Delaware
55 Elm St.                      Carvel State Office Bldg.
Hartford, CT 06106              820 N. French St.
                              Wilmington, DE 19801

Office of the Attorney General of Florida      Office of the Attorney General of Georgia
The Capitol, PL 01               40 Capitol Square, SW
Tallahassee, FL 32399-1050       Atlanta, GA 30334-1300

Office of the Attorney General of Illinois      Office of the Attorney General of Indiana
James R. Thompson Ctr.            Indiana Government Center South, 5th Floor
100 W. Randolph St.              302 West Washington Street
Chicago, IL 60601               Indianapolis, IN 46204

Office of the Attorney General of Kentucky
700 Capitol Avenue
Capitol Building, Suite 118
Frankfort, KY 40601

Office of the Attorney General of Louisiana
P.O. Box 94095
Baton Rouge, LA 70804-4095

Office of the Attorney General of Massachusetts
1 Ashburton Place
Boston, MA 02108-1698

Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202-2202

Office of the Attorney General of Michigan
P.O. Box 30212
525 W. Ottawa St.
Lansing, MI 48909-0212

Office of the Attorney General of Minnesota
State Capitol, Ste. 102
St. Paul, MN 55155

Mississippi Attorney General's Office
Department of Justice
P.O. Box 220
Jackson, MS 39205

Missouri Attorney General's Office
Supreme Court Building
207 W. High St.
Jefferson City, MO 65101

North Carolina Attorney General's Office
Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629

Office of the Attorney General of
New Jersey
Richard J. Hughes Justice Complex
25 Market St., P.O. Box 080
Trenton, NJ 08625

Office of the Attorney General of Nevada
Old Supreme Ct. Bldg.
100 N. Carson St.
Carson City, NV 89701

Office of the Attorney General of Ohio
State Office Tower
30 E. Broad St.
Columbus, OH 43266-0410

Office of the Attorney General of Oklahoma
313 NE 21st Street
Oklahoma City, OK 73105

Office of the Attorney General of
Pennsylvania
1600 Strawberry Square
Harrisburg, PA 17120

Office of the Attorney General of Rhode Island
150 S. Main St.
Providence, RI 02903

Office of the Attorney General of
South Carolina
Rembert C. Dennis Office Bldg.
P.O. Box 11549
Columbia, SC 29211-1549

Office of the Attorney General of Tennessee
425 5th Avenue North
Nashville, TN 37243

Office of the Attorney General of Texas
Capital Station
PO Box 12548
Austin, TX 78711-2548

Office of the Attorney General of Virginia
900 East Main Street
Richmond, VA 23219

Office of the Attorney General of Vermont
109 State Street
Montpelier, VT 05609-1001

Wisconsin Department of Justice
Office of the Attorney General
State Capitol, Room 114 East
P.O. Box 7857
Madison, WI 53707-7857

Office of the Attorney General of
West Virginia
State Capitol
1900 Kanawha Blvd. E.
Charleston, WV 25305

Office of the Attorney General of Alaska
P.O. Box 110300
Juneau, AK 99811-0300

Office of the Attorney General of Arkansas
323 Center St., Suite 200
Little Rock, AR 72201-2610

Office of the Attorney General of the District of
Columbia
441 4th Street, NW, Suite 1100S
Washington, DC 20001

Office of the Attorney General of Hawaii
425 Queen St.
Honolulu, HI 96813

Office of the Attorney General of Idaho
Statehouse
Boise, ID 83720-1000

Office of the Attorney General of Iowa
Hoover State Office Bldg.
1305 E. Walnut
Des Moines, IA 50319

Office of the Attorney General of Kansas
120 S.W. 10th Ave., 2nd Fl.
Topeka, KS 66612-1597

Office of the Attorney General of Maine
State House Station 6
Augusta, ME 04333

Office of the Attorney General of Montana
Justice Bldg.
215 N. Sanders
Helena, MT 59620-1401

Office of the Attorney General of Nebraska
State Capitol
P.O. Box 98920
Lincoln, NE 68509-8920

Office of the Attorney General of New Hampshire
33 Capitol St.
Concord, NH 03301

Office of the Attorney General of New Mexico
P.O. Drawer 1508
Sante Fe, NM 87504-1508

Office of the Attorney General of New York
Dept. of Law – The Capitol, 2nd fl.
Albany, NY 12224

Office of the Attorney General of North Dakota
State Capitol
600 E. Boulevard Ave.
Bismarck, ND 58505-0040

Office of the Attorney General of Oregon
Justice Bldg.
1162 Court St., NE
Salem, OR 97301

Office of the Attorney General of South Dakota
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501

Office of the Attorney General of Utah
State Capitol, Rm. 236
Salt Lake City, UT 84114-0810

Office of the Attorney General of Washington
1125 Washington St. SE
PO Box 40100
Olympia, WA 98504-0100

Office of the Attorney General of Wyoming
State Capitol Bldg.
Cheyenne, WY 82002

Office of the Attorney General of Puerto Rico
PO Box 902192
San Juan, PR, 00902-0192

Office of the Attorney General of American
Samoa
American Samoa Gov't, Exec. Ofc. Bldg,
Utulei, Territory of American Samoa,
Pago Pago, AS 96799

Office of the Attorney General of Guam
ITC Building
590 S. Marine Corps Dr, Ste. 706
Tamuning, Guam 96913

Office of the Attorney General of the Northern
Mariana Islands
Administration Building, P.O. Box 10007
Saipan, MP 96950-8907

Office of the Attorney General of the Virgin Isla
34-38 Kronprindsens Gade
GERS Building, 2nd Floor
St. Thomas, Virgin Islands 00802

# Exhibit A



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

MEGAN RAFFERTY, DEBORAH
HAYNES, LEASON JACOB, and DIANA
GRAY, on behalf of themselves and all others
similarly situated,

                Plaintiffs,

        v.

ROBERT DOAR, in his capacity as its
Commissioner of the New York City Human
Resources Administration;

KRISTIN PROUD, in her capacity as Acting
Commissioner of the New York State Office
of Temporary and Disability Assistance;

NIRAV SHAH, M.D., in his capacity as its
Commissioner of the New York State
Department of Health;

the NEW YORK CITY HUMAN
RESOURCES ADMINISTRATION;

the NEW YORK STATE OFFICE OF
TEMPORARY AND DISABILITY
ASSISTANCE; and,

the NEW YORK STATE DEPARTMENT
OF HEALTH,

           Defendants.

</td><td>

**13 CV 1410**

No. _____ (S.D.N.Y.)

RECEIVED
MAR 0 1 2013
U.S.D.C. S.D. N.Y.
CASHIERS

</td></tr>
</table>

## COMPLAINT

Megan Rafferty, Deborah Haynes, Leason Jacob and Diana Gray ( "Class

Representatives" or "Plaintiffs"), on behalf of themselves and all others similarly situated,

hereby commence this civil action against Robert Doar, in his capacity as Commissioner of the

New York City Human Resources Administration, Kristin Proud, in her capacity as Acting

Commissioner of the New York State Department of Health, Nirav Shah, M.D., in his capacity

as Commissioner of the New York State Department of Health, the New York City Human

Resources Administration ("HRA"), the New York State Office of Temporary and Disability

Assistance ("OTDA"), and the New York State Department of Health ("DOH") (collectively,

"Defendants") and allege as follows:

## PRELIMINARY STATEMENT

1.          This is a class action for declaratory relief, preliminary injunctive relief, and

permanent injunctive relief to compel Defendants to comply with the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; Section 504 of the Rehabilitation

Act of 1973 ("Section 504"), 29 U.S.C. §§ 701-797b; the Due Process Clause of the Fourteenth

Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1; the New York

State Human Rights Law, N.Y EXEC. LAW § 291 *et seq.*; the New York City Human Rights Law,

N.Y.C. ADMIN. CODE § 8-107; and regulations of the New York State Office of Temporary and

Disability Assistance, 18 N.Y.C.R.R. §303.1.

2.          The ADA, as stated in 42 U.S.C. § 12101(b)(1), was enacted in 1990 to

"provide a clear and comprehensive national mandate for the elimination of discrimination

against individuals with disabilities."

3.          Plaintiffs and other similarly situated blind and seriously visually impaired

Food Stamps and Medicaid applicants and recipients can access information if it is provided in

alternative formats such as Braille, large print, on audiotape, CD, DVD, an electronic format that

is compatible with assistive technology, or read to them by a qualified reader (collectively

2

referred to as "alternative formats"), but Defendants do not provide written materials to blind and seriously visually impaired Food Stamps and Medicaid applicants and recipients in alternative formats that are effective for them.

4.      Defendants are the agencies and Commissioners of the agencies that administer the Supplemental Nutrition Assistance Program ("Food Stamps"), 7 U.S.C. §§ 2011-36a, and Medicaid, 42 U.S.C. §§ 1396-1396w-5, for residents of New York City.

5.      Defendants all play a role in developing, issuing, mailing, and providing written materials about the New York City Food Stamps and Medicaid programs, but they have no procedures for determining whether Food Stamps and Medicaid applicants and recipients are blind or visually impaired and need written materials in an alternative format; determining the type of alternative formats that are effective for these individuals, or providing materials in alternative formats to blind and visually impaired individuals who need them.

6.      Defendants do not provide adequate notice of the right to obtain written materials in alternative formats to blind and visually impaired individuals.

7.      Plaintiffs and other blind or seriously visually impaired individuals have asked HRA, the agency they interact with directly about their benefits, to provide notices, forms, and other written documents to them in alternative formats that are effective for them, but HRA has failed to do so. One named plaintiff asked OTDA and DOH to provide materials in alternative formats.

8.      In response to requests for written materials in alternative formats by Plaintiffs and others, Defendants have refused to provide materials in formats requested by and effective for them; or failed to respond to the requests. After these requests were made, Defendants continue to send Plaintiffs written materials in formats that are inaccessible to them.

Plaintiffs and others have been and are being deprived of equal and meaningful access to information they need to maintain benefits without interruption, understand program rules, understand changes in their benefits and the reasons for these changes, be informed of deadlines for providing information, and other crucial information.

9.      Blind and seriously visually impaired Food Stamps and Medicaid recipients have lost benefits because they cannot read and complete recertification forms, which are not provided in alternative formats.

## THE PARTIES

10.     Plaintiff Diana Gray is Medicaid recipient who resides in New York City. She has received Food Stamps in the past and wants to reapply for Food Stamps.

11.     Plaintiff Diana Gray is seriously visually impaired.

12.     Plaintiff Diana Gray is an "individual with a disability" and a "handicapped person" and a "qualified individual with a disability" and a "qualified handicapped person" as those terms are used and defined in 29 U.S.C. §§ 705(20)(B), 794(a); 42 U.S.C. §§ 12102(1), 12131(2); 7 C.F.R. §§ 15b.3(i), (n), 15b.4; 28 C.F.R. §§ 35.104, 35.130, 35.160; 28 C.F.R. §§ 41.32, 41.51; 45 C.F.R. §§ 84.3(j)(l), 84.4, 84.52; N.Y. EXEC. LAW § 292.21; N.Y.C. ADMIN. CODE § 8-102(16)(a); and 18 N.Y.C.R.R. § 303.1.

13.     Plaintiff Deborah Haynes is a Food Stamps and Medicaid recipient who lives in New York City.

14.     Plaintiff Deborah Haynes is blind.

15.     Plaintiff Deborah Haynes is an "individual with a disability" and a "handicapped person" and a "qualified individual with a disability" and a qualified handicapped person" as those terms are used and defined in 29 U.S.C. §§ 705(20)(B), 794(a); 42 U.S.C. §§

4

12102(1), 12131(2); 7 C.F.R. §§ 15b.3(i), (n), 15b.4; 28 C.F.R. §§ 35.104, 35.130, 35.160; 28 C.F.R. §§ 41.32, 41.51; 45 C.F.R. §§ 84.3(j)(l), 84.4, 84.52; N.Y. EXEC. LAW § 292.21; N.Y.C. ADMIN. CODE § 8-102(16)(a); and 18 N.Y.C.R.R. § 303.1.

16.     Plaintiff Leason Jacob is a Food Stamps and Medicaid recipient who lives in New York City.

17.     Plaintiff Leason Jacob is blind.

18.     Plaintiff Leason Jacob is an "individual with a disability" and a "handicapped person" and a "qualified individual with a disability" and a "qualified handicapped person" as those terms are used and defined in 29 U.S.C. §§ 705(20)(B), 794(a); 42 U.S.C. §§ 12102(1), 12131(2); 7 C.F.R. §§ 15b.3(i), (n), 15b.4; 28 C.F.R. §§ 35.104, 35.130, 35.160; 28 C.F.R. §§ 41.32, 41.51; 45 C.F.R. §§ 84.3(j)(l), 84.4, 84.52; N.Y. EXEC. LAW § 292.21; N.Y.C. ADMIN. CODE § 8-102(16)(a); and 18 N.Y.C.R.R. § 303.1.

19.     Plaintiff Megan Rafferty is a Food Stamps and Medicaid recipient who resides in New York, New York.

20.     Plaintiff Megan Rafferty is seriously visually impaired.

21.     Plaintiff Megan Rafferty is an individual with a disability" and a "handicapped person" and a "qualified individual with a disability" and a "qualified handicapped person" as those terms are used and defined in 29 U.S.C. §§ 705(20)(B), 794(a); 42 U.S.C. §§ 12102(1), 12131(2); 7 C.F.R. §§ 15b.3(i), (n), 15b.4; 28 C.F.R. §§ 35.104, 35.130, 35.160; 28 C.F.R. §§ 41.32, 41.51; 45 C.F.R. §§ 84.3(j)(l), 84.4, 84.52; N.Y. EXEC. LAW § 292.21; N.Y.C. ADMIN. CODE § 8-102(16)(a); and 18 N.Y.C.R.R. § 303.1.

22.     Defendant Robert Doar is the Commissioner of the New York City Human Resources Administration, he is sued in his official capacity.

23.     Defendant Kristin Proud is the Acting Commissioner of the New York State Office of Temporary and Disability Assistance, she is sued in her official capacity.

24.     Defendant Nirav Shah, M.D. is the Commissioner and principal executive of the New York State Department of Health, he is sued in his official capacity.

25.     Defendant HRA is the local department of social services that administers the Food Stamps and Medicaid programs in New York City.

26.     Defendant ODTA is the lead state agency with responsibility for the Food Stamp program in New York, and the State agency that administers the administrative hearing ("fair hearing") process by which individuals can appeal decisions regarding Food Stamps and Medicaid benefits.

27.     Defendant DOH is the lead State agency in New York State responsible for the Medicaid program.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

29.     Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

30.     This court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over pendent state law claims.

31.     Defendants are subject to the personal jurisdiction of this Court because Defendants reside in this district, can otherwise be found in this district, and the actions upon which the allegations in this complaint are based occurred in this district.

32.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because a Defendant resides in this district and all Defendants are residents of New York State.

33.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims in this complaint occurred in this district.

## STATUTORY AND REGULATORY BACKGROUND

### *The Americans with Disabilities Act ("ADA")*

34.     The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

35.     Title II of the ADA prohibits public entities, defined to include state and local governments and their departments, agencies, and instrumentalities, from excluding qualified individuals with disabilities from participating in or denying them the benefits of the services, programs, or activities of the public entity pursuant to 42 U.S.C. §§ 12131(1)(A)-(B), 12132; and 28 C.F.R. §§ 35.104, 35.130(a).

36.     Regulations implementing Title II of the ADA provide that "[a] public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communication with others." 28 C.F.R. § 35.160(a).

37.     Under the ADA, an "individual with a disability" is defined in pertinent part as an individual an individual with a "physical or mental impairment that substantially limits one or more major life activities of such individual; . . . " 42 U.S.C § 12102(1)(A). Under the ADA, a "qualified individual with a disability" is defined as "an individual with a disability who, with or without . . . [ ], the removal of . . . [] communication . . . [] barriers, or the provision of

7

auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

38.     Implementing regulations to the ADA provide that "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1); *see also* 42 U.S.C. § 12131(2) (defining "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to the rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.").

39.     "Auxiliary aids and services" are defined in the ADA to include "qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments," 42 U.S.C. § 12103(1)(B), and in implementing regulations to include "[q]ualified readers; taped texts; audio recordings; Brailed materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision," 28 C.F.R § 35.104(2).

8

40.     Implementing regulations to the ADA provide that "[i]n determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities." 28 C.F.R. § 35.160(b)(2).

41.     Regulations implementing Title II of the ADA provide that "[t]he type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." *Id.*

42.     Regulations implementing Title II of the ADA provide that "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.*

43.     Regulations implementing Title II of the ADA provide that "[a] public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability-

       i.     Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

      ii.     Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

     iii.     Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others . . . ."

9

28 C.F.R. §§ 35.130(b)(1) (i)-(iii).

44.     Regulations implementing Title II of the ADA provide that "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(3)(i).

45.     Regulations implementing Title II of the ADA provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *see also* 42 U.S.C. § 12131(2), defining "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . [ ] meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

46.     Regulations implementing Title II of the ADA require public entities to make available to participants, beneficiaries, and other interested persons information regarding the ADA and its applicability to the programs, services, and activities of the public entity. 28 C.F.R. § 35.106.

47.     The Food Stamp Act and implementing regulations require Food Stamps programs to comply with the ADA. 7 U.S.C. § 2020(C)(2)(c); 7 C.F.R. § 272.6(a).

*Section 504 of the Rehabilitation Act ("Section 504")*

48.     Section 504 prohibits programs and activities receiving federal financial assistance from excluding otherwise qualified individuals with disabilities from participation in,

or denying them the benefits of, or otherwise subjecting them to discrimination solely by reason of disability. 29 U.S.C. § 794(a); *see also* 7 C.F.R. § 15b.4(a); 28 C.F.R. § 41.51(a); and 45 C.F.R. § 84.4(a).

49.     Section 504 regulations applicable to recipients of federal assistance from the U.S. Department of Agriculture, and Department of Justice Section 504 Coordination regulations, provide that "[r]ecipients [of federal financial assistance] shall take appropriate steps to ensure that communications with their applicants, employees, and beneficiaries are available to persons with impaired vision and hearing." 7 C.F.R. § 15b.4(d); 28 C.F.R. § 41.51(c).

50.     Regulations implementing Section 504 provide that a recipient of federal financial assistance "in providing any aid, benefit or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap:

> (i)    Deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit or services;
> (ii)   Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or services that is not equal to that afforded others;
> (iii)  Provide a qualified handicapped person with an aid, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit or to reach the same level of achievement in the most integrated setting appropriate as that provided to others . . . .
>
> . . . .
>
> (vii)  Otherwise limit a qualified handicapped person in the enjoyment of any rights, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit or service."

7 C.F.R. §§ 15b.4(b)(1)(i)-(iii), (vii); 45 C.F.R. §§ 84.4(b)(1)(i)-(iii), (vi); 45 C.F.R. §§ 84.52(a)(1)-(3); and 28 C.F.R. §§ 41.51(b)(1)(i)-(iii), (vii).

51.     Section 504 regulations applicable to recipients of Federal financial assistance from the Department of Health and Human Services provide that "[a] recipient to which this subpart applies that employs fifteen or more persons shall provide appropriate auxiliary aids to

persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R. § 84.52(d)(1).

52.     "Auxiliary aids" in the regulations under Section 504 are defined to include "brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision." 45 C.F.R. § 84.52(d)(3).

53.     Regulations under Section 504 provide that a recipient of federal financial assistance that "provides notice concerning benefits or services . . . shall take such steps as are necessary to ensure that qualified handicapped persons, including those with impaired sensory or speaking skills, are not denied effective notice because of their handicap." 45 C.F.R. § 84.52(b).

54.     OTDA regulations provide that to comply with Section 504 regulations, local districts must provide information in a manner that is accessible to blind or deaf applicants or recipients. 18 N.Y.C.R.R. § 355.1(b).

55.     The Food Stamp Act and implementing regulations also prohibit discrimination against individuals with disabilities in the Food Stamps program, and specifically require Food Stamps programs to comply with Section 504 of the Rehabilitation Act. 7 U.S.C. § 2020(C)(2)(B); 7 C.F.R. § 272.6(a).

*New York State Human Rights Law*

56.     The New York State Human Rights Law ("NYSHRL") prohibits agents and employees of any place of public accommodation from engaging in discriminatory practices against individuals with disabilities on the basis of disability in the accommodations, advantages, facilities, or privileges of the place of public accommodation. N.Y. EXEC. LAW § 296.2(a).

57.     "Discriminatory practice" is defined in the NYSHRL to include:

> (i)     a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities,

12

privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations;

(ii)    a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden;

(iii)    a refusal to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable; and

(iv)    where such person can demonstrate that the removal of a barrier under subparagraph (iii) of this paragraph is not readily achievable, a failure to make such facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

*Id.* §§ 296.2(c)(i)-(iv).

58.        The term "place of public accommodation" in the NYSHRL includes "all places included in the meaning of such terms," except as specified in the statute. *Id.* § 292.9.

59.        Under the NYSHRL, "disability" is defined in part to include a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of normal bodily function. *Id.* § 292.21.

### *New York City Human Rights Law*

60.        The New York City Human Rights Law ("NYCHRL") prohibits agents and employees of any place or provider of public accommodation from refusing or denying the accommodations, advantages, privileges, facilities, or privileges of the place or provider of public accommodation because of the disability on the basis of disability. N.Y.C. ADMIN. CODE § 8-107(4)(a).

61. The NYCHRL defines "place or provider of public accommodation" to include "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold, or otherwise made available." *Id.* § 8-102(9).

62. A place or provider of public accommodation is required to make reasonable accommodation to enable people with disabilities to enjoy the rights in question provided that the disability is known or should have been known by the entity. *Id.* § 8-107(15)(a).

63. The NYCHRL defines "disability" to include a physical, medical, mental, or psychological impairment, including an impairment of special sensory organs. *Id.* § 8-102(16)(a).

*New York State OTDA Regulations*

64. OTDA regulations prohibit local departments of social services from establishing or applying policies that have a discriminatory effect on individuals with disabilities because of handicap. 18 N.Y.C.R.R. §§ 303.1(a)-(b).

65. The OTDA regulations prohibit local districts from denying aid, care, services, benefits, or privileges on the basis of handicap; restricting enjoyment of advantages or privileges of programs enjoyed by others; denying individuals an opportunity to participate in programs or services; or providing an opportunity to participate that is different from that provided to others in the program. *Id.* §§ 303.1(b)(1), (4), (6).

# FACTUAL BACKGROUND

*The New York City Food Stamps and Medicaid Programs*

66.　　Upon information and belief, DOH, OTDA, and HRA all play a role in developing, producing, and distributing written materials about Food Stamps and Medicaid.

67.　　Upon information and belief, DOH issues written materials to applicants and recipients of Medicaid in New York City.

68.　　Upon information and belief, OTDA issues written material to applicants and recipients of Food Stamps and Medicaid in New York City, and to Food Stamp and Medicaid applicants and recipients including those persons who request fair hearings.

69.　　Upon information and belief, HRA issues written material to applicants and recipients of Food Stamps and Medicaid in New York City.

70.　　Upon information and belief, OTDA has developed information booklets for Food Stamps and Medicaid applicants and recipients that contain general information about client rights and responsibilities and agency procedures that it requires HRA to distribute or make available in other ways to Food Stamps and Medicaid applicants and recipients recertifying eligibility for benefits.

71.　　Upon information and belief, OTDA develops written materials and makes them available to local social service districts, which have the option to distribute the OTDA-developed materials.

72.　　Pursuant to OTDA Policy Directive # 12-ADM-07, OTDA develops Food Stamps application forms and notices and requires HRA to use them.

73.　　Upon information and belief, OTDA provides the HRA and other local districts with copies of "state printed" forms and publications, and informs local districts that

15

they can order additional paper copies from Document Services at the OTDA or obtain electronic copies of forms from an OTDA Intranet website.

74.    Upon information and belief, DOH operates a warehouse from which the HRA and other local districts can obtain copies of Medicaid forms and publications, and makes many forms, notices, and other materials available to HRA through a DOH Intranet website.

75.    Upon information and belief, some Food Stamps and Medicaid notices sent to applicants and recipients, such as notices issued by the Client Notification System (CNS) for approvals, denials, changes, recertifications, and closings of Food Stamp and Medicaid benefits, are a joint effort by HRA and OTDA. Upon information and belief, data is entered by HRA and CNS notices are generated and printed by OTDA's data center and mailed directly to Food Stamp and Medicaid applicants and recipients.

### HRA, OTDA, and DOH Do Not Provide Effective Communication with Blind and Seriously Visually Impaired Individuals

76.    Upon information and belief, HRA, OTDA and DOH have no procedure, practice, or custom of providing copies of application forms, instructions, notices, informational materials, fair hearing-related materials, or other written materials to blind or seriously visually impaired individuals in formats that are accessible to them, even if the individual is known to these agencies to be blind or seriously visually impaired.

77.    Upon information and belief, blind and seriously visually impaired individuals cannot read the instructions mailed with Food Stamps recertification forms, so they do not know what documents to bring with them when they go to the HRA for help, often necessitating additional trips to the HRA to complete the recertification process.

78.    Upon information and belief, OTDA does not generally provide fair hearing notices and hearing decisions in alternative formats to blind or seriously visually impaired

individuals, and HRA does not generally provide hearing packets to appellants who are blind or seriously visually impaired in alternative formats.

79.    Upon information and belief, HRA, OTDA, and DOH do not contact blind or seriously visually impaired Food Stamps and Medicaid applicants and recipients by telephone, email, or other means when they mail written materials to them to inform them that the agency has mailed them information about their Food Stamps and Medicaid benefits.

80.    Upon information and belief, the only notice that blind or seriously visually impaired applicants and recipients possess about the existence and content of mailed Food Stamps and Medicaid written materials is embodied in documents that they cannot read as a result of their blindness and serious visual impairments.

81.    HRA's newly issued ADA policy (Policy Directive # 12-30-OPE) does not require staff to take steps to determine whether Food Stamps and Medicaid applicants and recipients are blind or seriously visually impaired and need information provided in a format other than standard print and use this information to provide materials and information in effective formats to individuals who need them.

82.    The online Medicaid application on DOH's website asks whether the applicant is blind, disabled, or chronically ill, and requires applicants who answer yes to complete another form, but neither form asks about whether the individual needs information in alternative formats or the type of format needed.

83.    HRA's Food Stamps application asks whether anyone in the household is blind, disabled, or pregnant, but does not ask whether anyone in the household needs Food Stamps materials in an alternative format.

84.     Upon information and belief, HRA, OTDA, and DOH do not provide blind or seriously visually impaired Food Stamps and Medicaid recipients with their case numbers, the HRA's telephone number, and other basic information needed to contact the agency and obtain information by phone in formats that are accessible to them.

***HRA, OTDA, and DOH Have Failed to Develop Adequate Policies and Procedures for Communicating Effectively with Blind or Seriously Visually Impaired Recipients of Food Stamps and Medicaid.***

**HRA**

85.     HRA's current ADA policy for Job Centers and Food Stamps-only Centers, issued on October 18, 2012, states that one reasonable accommodation that may be provided to people with disabilities is "necessary auxiliary aids and services to ensure effective communication for individuals with hearing or speech limitations," Policy Directive # 12-30-OPE, p. 7, but it does not say that HRA may or will provide necessary auxiliary aids and services needed to ensure effective communication with individuals who are blind or seriously visually impaired.

86.     HRA's new ADA policy states that HRA will help blind and visually impaired individuals read and complete applications and forms, p. 11, but does not mention any alternative format other than reading documents to clients nor does it require staff to read any documents other than applications and forms to blind and visually impaired individuals.

87.     HRA's ADA policy requires staff to "assist" blind and seriously visually impaired clients "as necessary," but the only examples provided are allowing blind and seriously visually impaired clients to use service animals and accompanying them to and from an elevator.

88.     HRA's reasonable accommodation policy for the Medicaid program, MAP Procedure 09-03 R1 (April 9, 2009), states that individuals with disabilities have a right to equal

access to the Medicaid program and services, and defines "reasonable accommodation" to include "removal of communication . . . [barriers]" and "the provision of auxiliary aids and services," but does not define "auxiliary aids and services," require staff to provide blind or seriously visually impaired individuals with written materials in alternative formats or instruct them on how to do so.

89.     Upon information and belief, HRA has no procedures for converting written materials into alternative formats, such as procedures for converting printed documents into Braille or accessible electronic documents, or recording the information on audiocassettes or CDs, procedures identifying the staff responsible for doing this, the timetable in which it must be done, or other implementation procedures.

**OTDA**

90.     OTDA's ADA and Section 504 policy directive, 06-ADM-05 (April 27, 2006), which applies to Food Stamps, requires local districts such as HRA to provide effective communication with individuals with disabilities, as well as auxiliary aids and services when necessary to ensure effective communication, pp. 6-7, 16, but it does not address OTDA's obligation to provide effective communication or written materials in alternative formats to blind or seriously visually impaired applicants and recipients of Foods Stamps.

91.     Upon information and belief, OTDA does not have internal policies or procedures for routinely converting its materials into alternative formats or providing written materials in alternative formats to Food Stamps and Medicaid applicants and recipients who are blind or seriously visually impaired.

**DOH**

92.     Upon information and belief, DOH does not have a policy requiring local districts to provide written materials to blind or seriously visually impaired Medicaid applicants and recipients in alternative formats, nor does it have a policy requiring DOH to convert the materials it issues directly to applicants and recipients into alternative formats for blind or seriously visually impaired individuals who need them.

93.     Upon information and belief, HRA, OTDA, and DOH do not have policies, procedures, or agreements regarding the allocation of responsibility between the agencies for producing and providing written materials in alternative formats to blind or seriously visually impaired Medicaid and Food Stamps applicants and recipients.

***HRA, OTDA, and DOH Do Not Inform Blind or Seriously Visually Impaired Food Stamps and Medicaid Applicants and Recipients of the Right to Written Materials in Alternative Formats***

94.     Upon information and belief, HRA, OTDA, and DOH do not adequately inform blind or seriously visually impaired Food Stamps and Medicaid applicants and recipients that they have a right to receive written materials regarding these programs in alternative formats.

95.     A brochure attached to HRA's current ADA policy, titled "Are You A Person With A Disability?" states that assistance with reading and completing forms is a reasonable accommodation that is offered by HRA, but the brochure does not mention obtaining materials in Braille, large print, accessible electronic formats or other alternative formats as a reasonable accommodation.

96.     Upon information and belief, HRA does not provide the "Are You A Person With A Disability?" brochure to blind or seriously visually impaired individuals in formats that are accessible to them.

97.     Upon information and belief, the HRA staff members have told blind and seriously visually impaired individuals that the agency does not provide written materials in alternative formats.

98.     Upon information and belief, OTDA and DOH do not inform blind or seriously visually impaired Food Stamps and Medicaid applicants and recipients about the right to receive materials in alternative formats.

*OTDA and DOH Do Not Monitor the HRA's Compliance with the ADA or Section 504 or Monitor Whether HRA Provides Effective Communication With and Alternative Format Materials to Visually Impaired Individuals*

99.     Upon information and belief, neither OTDA nor DOH take adequate steps to determine whether HRA complies with the ADA obligation to provide blind or seriously visually impaired Food Stamps and Medicaid applicants and recipients with written materials in alternative formats that are accessible to them.

100.     Upon information and belief, neither OTDA nor DOH has required HRA to develop procedures for providing blind or seriously visually impaired individuals with written materials in alternative formats.

## FACTUAL BACKGROUND OF THE CLASS REPRESENTATIVES

### Megan Rafferty

101.     Megan Rafferty has been seriously visually impaired since birth and she receives Food Stamps and Medicaid.

102.     Megan Rafferty cannot read standard print materials.

103.     Megan Rafferty has a computer with screen reader software and can read materials in accessible formats on her computer (text emails and audio or data CDs).

104.     On August 3, 2011, Megan Rafferty informed HRA in writing through her lawyer that she is seriously visually impaired and asked HRA to provide her with Food Stamps and Medicaid forms and notices in a format accessible for her, specifically, by email, or on an audio or data CD that she could read on her computer using screen reader software ("Rafferty Request").

105.     On September 23, 2011, HRA issued a joint response to the Rafferty Request and requests from other blind and seriously visually impaired individuals who have sought written materials in alternative formats through Plaintiffs' counsel ("HRA Joint Response"), which stated that Megan Rafferty and other individuals for whom alternative formats were requested could call HRA when they receive Food Stamps notices to make an appointment to come to HRA or another location so HRA could read the notice to them.

106.     The HRA Joint Response stated that scheduling an appointment would take one to two weeks.

107.     The HRA Joint Response did not explain why HRA would not provide documents in the alternative formats requested by Megan Rafferty and the other individuals and did not address the fact that a delay of one to two weeks or more to learn the contents of HRA mailings would significantly reduce the time to respond to deadlines and in some instances could result in missed deadlines, such as the deadline for requesting uninterrupted benefits pending a decision on a fair hearing.

108.     The HRA Joint Response did not explain how Megan Rafferty and others could call the agency to request these appointments when HRA has never provided them with HRA's phone number and their case numbers in alternative formats that are effective for them.

109.     The HRA Joint Response also stated that Megan Rafferty and other individuals who had requested alternative format materials could request home visits from HRA, but the letter did not indicate whether Ms. Rafferty and others qualified for HRA home visits, how long it would take to get them, or whether HRA would provide home visits for the sole purpose of reading documents to clients.

110.     With respect to Medicaid materials, the HRA Joint Response stated that Megan Rafferty and others could call the HRA Medicaid office and ask for someone to read recent Medicaid notices to them, but only if the notice was mailed by the HRA, because HRA would not have a copy of written materials mailed by DOH and therefore could not read them to a client over the telephone.

111.     The HRA Joint Response stated that HRA was exploring longer term solutions to the issues raised in the Rafferty Request, and was contacting OTDA and DOH for further guidance.

112.     To date, HRA has not provided copies of Food Stamps or Medicaid materials to Megan Rafferty in a format that is accessible to her, as described in the Rafferty Request.

113.     As a result of her serious vision impairment, Megan Rafferty needs help completing Food Stamps recertification forms.

114.     In the past an HRA worker at her local center assisted her.

115.     HRA notified Megan Rafferty that her Food Stamps case was transferred to Brooklyn, farther from her home.

116.     Megan Rafferty needs her home attendant to accompany her on the subway, but she has a home health aid for fewer hours than it takes to travel to Brooklyn and back and get help from HRA.

117.     On January 17, 2012, through her lawyer, Megan Rafferty asked HRA to transfer her back to her neighborhood HRA center as an accommodation for her disability.

118.     HRA informed Megan Rafferty's counsel in response that HRA's computer system would not accept this change, and would continue to send her notices requiring her to go to the Brooklyn Center.

119.     To date, Megan Rafferty has not been reassigned to her neighborhood Center.

120.     HRA has also informed Plaintiffs' counsel that Megan Rafferty could recertify Food Stamps by automated telephone system, telephone interview, or in person, but has not provided Megan Rafferty with information about how to do this in a format that is accessible for her.

### *Deborah Haynes*

121.     Deborah Haynes has been blind since shortly after birth.

122.     Deborah Haynes receives Food Stamps and Medicaid.

123.     Deborah Haynes cannot read standard print materials.

124.     Deborah Haynes reads Braille and can access information through audio CDs and audio cassette tapes.

125.     On September 21, 2011, Deborah Haynes informed HRA in writing through her lawyer that she is blind and asked HRA to provide her with Food Stamps and Medicaid forms and notices in Braille, audio CD, or audio cassette tape ("Haynes Request").

126.     HRA did not directly respond to the Haynes Request.

24

127.     To date, HRA has not provided copies of Food Stamps or Medicaid materials to Ms. Haynes in a format that is accessible to and effective for her.

128.     HRA informed Plaintiffs' counsel that Deborah Haynes could recertify eligibility for Food Stamps by automated telephone system, telephone interview, or in person, but has not provided Deborah Haynes with information about how to do this in a format this is accessible for her.

### Leason Jacob

129.     Leason Jacob has been blind since the mid-1990s.

130.     Leason Jacob receives Food Stamps and Medicaid.

131.     In January 2012, Leason Jacob's home attendant helped him fill out his Food Stamps recertification form and mail it to HRA.

132.     Leason Jacob did not receive Food Stamps in February 2012.

133.     On February 9, 2012, Leason Jacob went with his home attendant to HRA to get help in completing another recertification form.

134.     At no point during Leason Jacob's 2012 recertification process did anyone from the HRA ask Leason Jacob if he needed written materials in an alternative format.

135.     On March 26, 2012, Leason Jacob informed HRA in writing that he is blind and requested written notices, forms and other documents related to his Food Stamps and Medicaid in alternative formats ("Jacob Request").

136.     The alternative format Leason Jacob requested was for HRA to call him at his home within three business days after mailing him written materials to: inform him that HRA had mailed him Food Stamp or Medicaid documents and the date on which they were mailed; describe to him the general nature and purpose of the mailed documents; inform him of any

deadlines, appointment dates, times, and locations contained in the written documents; and read the documents to him and answer his questions about them.

137.    To date, HRA has not responded to the Jacob Request and has not provided copies of Food Stamps or Medicaid materials to him in a format that is accessible to him.

***Diana Gray***

138.    Diana Gray has been seriously visually impaired since birth.

139.    Diana Gray is completely blind in one eye and has very limited vision in her other eye.

140.    Diana Gray receives Medicaid benefits and wants to apply for Food Stamps, which she has received in the past and which her income qualifies her for.

141.    Diana Gray cannot read standard print materials.

142.    Diana Gray can read large print materials if she wears glasses with a special magnifying lens over her regular glasses.

143.    Diana Gray can access email through her smart phone, which has a program that converts the text on the screen into speech, and she also has an audiotape player to access information on audiocassettes.

144.    On October 18, 2012, Diana Gray informed HRA, OTDA and DOH in writing through her lawyer that she is legally blind and asked all three agencies to provide her with: (1) an application for Food Stamps in large print that she can fill it out herself so she can reapply for Food Stamps; (2) Medicaid and Food Stamps forms in the future in large print; and (3) Medicaid and Food Stamps notices and other printed documents and information in either large print, attached to an email that she can access with her smart phone, or on audiotape.

145.    In that October 18, 2012 communication Ms. Gray enclosed a certificate of legal blindness from the Commission for the Blind and Visually Handicapped, a State agency that provides services to the blind.

146.    In December 2012, HRA sent Diana Gray a notice denying her request "because HRA has determined that the medical documentation we received does not support your request for the Reasonable Accommodation" and provided no explanation of why the documentation was inadequate.

147.    OTDA and DOH did not respond to Diana Gray's accommodation request.

## CLASS ALLEGATIONS

148.    Pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action individually and on behalf of themselves and a class of similarly situated individuals who: (1) are residents of New York City; (2) are substantially limited in seeing; (3) are current or former applicants for or recipients of Food Stamps and/or Medicaid; (4) need written materials in alternative formats for effective communication regarding Food Stamps and/or Medicaid (the "class").

149.    Members of the class are so numerous that joinder of all members is impracticable.

150.    Upon information and belief, Defendants do not maintain and publish data on the number of Medicaid and Food Stamps recipients in New York City who are blind or seriously visually impaired.

151.    Extrapolating from data posted on Defendants' websites, federal agency websites, and other sources, upon information and belief, there are approximately at least 4,000

Food Stamp and Medicaid recipients in New York City who are blind or seriously visually impaired.

152.     The class is comprised of:  (1) approximately 1,640 individuals who receive Medicaid benefits because they qualify for Supplement Security Income ("SSI") benefits on the basis of blindness; (2) approximately 1,558 Medicaid recipients who are blind or seriously visually impaired who qualify for SSI based on either age or another type of disability; (3) approximately 620 Medicaid recipients who are blind or seriously visually impaired but qualify for SSI on the basis of age; (4) approximately 365 blind and seriously visually impaired Medicaid recipients who do not qualify for SSI; (5) an undetermined number of blind and seriously visually impaired Food Stamps recipients who do not qualify for SSI (and therefore have not already been accounted for in groups above); and (6) an undetermined number of current and future applicants for and recipients of Food Stamps and Medicaid who are blind or seriously visually impaired.

153.     Upon information and belief, a significant percentage of these individuals need and want materials regarding their benefits and the Food Stamps and Medicaid programs to be in accessible formats.

154.     Individual litigation by each member of the class would burden the judicial system and would be impracticable because individual class members lack the knowledge, sophistication, and financial means to maintain individual actions.

155.     The prosecution of individual actions by Plaintiffs and other similarly situated individuals would create a risk of inconsistent adjudications and incompatible rules of law.

156.     This case raises common questions of law and fact, including but not limited to the following:

a.  Whether Defendants have a process for determining whether named Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid need written materials in alternative formats that are accessible to them;

b.  Whether Defendants have adequate policies and procedures in place for providing named Plaintiffs and other similarly situated applicants for and recipients of Foods Stamps and Medicaid with written materials in alternative formats that are accessible to them;

c.  Whether Defendants have failed to take the necessary steps to allocate responsibility between and among them to coordinate the provision of materials to named Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid in alternative formats that are accessible to them;

d.  Whether Defendants have taken adequate steps to inform named Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid of their right to written materials in alternative formats and the process for obtaining them; and

e.  Whether the failure of Defendants Doar, Proud, Shah, and HRA to provide named Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid with written materials in alternative formats violates the Americans with Disabilities Act, and the Due Process Clause of the United States, Constitution;

f.    Whether the failure of Defendants to provide named Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid with written materials in alternative formats violates Section 504 of the Rehabilitation Act;

g.    Whether the failure of Defendants Doar and HRA to provide named Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid with written materials in alternative formats violates the New York State Human Rights Law;

h.    Whether the failure of Defendants Doar and HRA to provide named Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid with written materials in alternative formats violates the New York City Human Rights Law; and

i.    Whether the failure of Defendants Doar and HRA to provide named Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid with written materials in alternative formats violates the OTDA regulations.

157.    The claims of the named Plaintiffs are typical of the class in that Plaintiffs and each member of the class: (a) resides in New York City; (b) is substantially limited in seeing (c) is a current of future applicant for or recipient of Food Stamps and/or Medicaid benefits; and (d) needs written materials about Food Stamps and/or Medicaid in alternative formats for effective communication regarding Food Stamps and/or Medicaid.

158.     The named Plaintiffs will fairly and adequately represent interests of the class because their interests do not conflict with the interests of other class members they seek to represent.

159.     Plaintiffs intend to prosecute this action vigorously.

160.     The attorneys representing Plaintiffs are experienced and capable litigators with significant experience in class action litigation in federal and state courts, including matters relating to Food Stamps, Medicaid, the ADA, Section 504 of the Rehabilitation Act, and Due Process protections.

161.     Class counsel will prosecute this action vigorously and competently.

162.     Defendants have acted on grounds generally applicable to the class, by:

   a.     Failing to provide written materials about the Food Stamps and Medicaid programs and benefits to the class in alternative formats accessible to them;

   b.     Failing to develop, implement, and comply with policies and procedures regarding the provision of written materials to the class in alternative formats that are accessible to them;

   c.     Failing to provide Food Stamps and Medicaid applicants and recipients adequate notice of the right to obtain written materials in alternative in alternative formats; and

   d.     Failing to take the necessary steps to identify visually impaired individuals that need written materials in alternative formats.

163.     Declaratory and injunctive relief is appropriate with respect to the class as a whole.

164.     A class action is the exclusive method by which the interests of all affected persons can be adequately protected.

## CLAIMS

### Count I - Violation of the Americans With Disabilities Act
### (Against Defendants Doar, Proud , Shah, and HRA)

165.     Plaintiffs incorporate the preceding paragraphs of this complaint by reference as though set forth fully herein.

166.     Each of the named Plaintiffs and class members is an individual with a disability as defined by 42 U.S.C. § 12102(1)(A), because each has a physical impairment that substantially limits one or more "major life activities" as defined by 42 U.S.C. § 12102(2)(A), including the major life activity of "seeing."

167.     Each of the named Plaintiffs and class members is a "qualified individual with a disability" as defined by 42 U.S.C. § 12131(2) because each is an "individual with a disability" who meets the essential eligibility requirements for Food Stamps and/or Medicaid benefits and/or the essential eligibility requirements for applying for Food Stamp and/or Medicaid benefits and for obtaining information about these programs.

168.     HRA, OTDA, and DOH are "public entities" as defined in the ADA, and Defendants are the principal executives of those respective public entities.

169.     Defendants' failure to provide written materials to Plaintiffs and other similarly situated applicants for and recipients of Food Stamps and Medicaid in alternative formats that are accessible to them violates the ADA, 42 U.S.C. § 12132, and implementing regulations, 28 C.F.R. §§ 35.130(a), 35.130(b)(1)(ii), 35.130(b)(3)(i), 35.130(b)(7), 35.160(a), 35.160(b)(1), and 35.160(b)(2).

170.     Defendants' failure to provide information to Plaintiffs and other similarly situated individuals about their right to obtain written materials in alternative formats that are accessible to them, violates the ADA, 42 U.S.C. § 12132, and implementing regulations, 28 C.F.R. § 35.106.

### Count II - Violation of Section 504 of the Rehabilitation Act
### (Against All Defendants)

171.     Plaintiffs incorporate the preceding paragraphs of this complaint by reference as though set forth fully herein.

172.     Each of the Plaintiffs and class members is an "individual with a disability" as defined by 29 U.S.C. § 705(20)(B) because each "has a disability as defined in Section 12102 of Title 42."

173.     Each of the Plaintiffs and class members is a "handicapped person" as defined by 7 C.F.R. § 15b.3(i) and 45 C.F.R. § 84.3(j)(1)(i), because each has a physical impairment that substantially limits one or more major life activities as defined by 7 C.F.R. §§ 15b.3(j)-(k) and 45 C.F.R. §§ 84.3(j)(2)(i)-(ii), including the physical impairment of a "special sense organs" and the major life activity of "seeing."

174.     Each of the Plaintiffs and class members is a "qualified individual with a disability" and "qualified handicapped person" as defined by 7 C.F.R. § 15b.3(n); 28 C.F.R. § 41.32(b); and 45 C.F.R. § 84.3(l),  because each is an "individual with a disability" and a "handicapped person[]" who meets the essential eligibility requirements for Food Stamps and/or Medicaid benefits and/or the essential eligibility requirements for applying for Food Stamp and/or Medicaid benefits and for obtaining information about these programs.

175.     The New York City Food Stamps and Medicaid programs are "program[s] or activit[ies] receiving Federal financial assistance" as referred to in 29 U.S.C. § 794(a); 7 C.F.R. §

33

15b.3(g); 28 C.F.R. § 41.3(e); and 45 C.F.R. § 84.3(h), because they are operations of the HRA,

OTDA and DOH, which receive Federal financial assistance for Food Stamps, Medicaid, and

other programs, and because Defendants are "a department, agency, special purpose district, or

other instrumentality of a State or of a local government" and/or "the entity of such State or local

government that distributes such assistance" or a "department or agency (and each other State or

local government entity) to which the assistance is extended, in the case of assistance to a State

or local government." 29 U.S.C. § 794(b)(1).

176.     Defendants' failure to provide written materials to Plaintiffs and other

similarly situated persons in alternative formats effective for them violates Section 504 of the

Rehabilitation Act, 29 U.S.C. § 794(a), and implementing regulations, 7 C.F.R. §§ 15b.4(a),

15b.4(b)(1)(i)-(iv), 15b.4(d); 28 C.F.R. §§ 41.5(b)(1), 41.51(b)(1)(ii)-(iii), 41.51(e); and 45

C.F.R. §§ 84.8(a), 84.8(b), 84.52(a)(1)-(3), 84.52(b), 84.52(d)(1).

177.     Defendants' failure to provide information to Plaintiffs and other similarly

situated persons about their right to obtain written materials in alternative formats that are

effective for them, violates Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and

implementing regulations, 7 C.F.R. § 15b.7(a); 28 C.F.R. § 41.5(b)(1); and 45 C.F.R. §§ 84.8,

84.52(b).

### Count III - Violation of Procedural Due Process Under the Fourteenth Amendment to the United States Constitution (Against Defendants Doar, Proud, Shah, and HRA)

178.     Plaintiffs incorporate the preceding paragraphs of this complaint by reference

as though set forth fully herein.

179.     The Due Process Clause of the Fourteenth Amendment to the United States

Constitution prohibits Defendants from depriving Plaintiffs and other similarly situated

individuals of a protected property interest without adequate notice and an opportunity to be heard.

180.     Plaintiffs and similarly situated individuals have a protected property interest in receiving Food Stamps and Medicaid benefits.

181.     Defendants' failure to provide written materials in accessible formats to Plaintiffs and other similarly situated persons in alternative formats that are effective for them denies Plaintiffs and similarly situated individuals of adequate notice and an opportunity to be heard regarding the deprivation of their property, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## Count IV – Violation of the New York State Human Rights Law
## (Against Defendants Doar and HRA )

182.     Plaintiffs hereby incorporate the preceding paragraphs of this complaint by reference as though set forth fully herein.

183.     Each of the Plaintiffs and class members are a person with a disability under the New York State Human Rights Law because each has a physical impairment resulting from a condition that prevents the exercise of normal bodily function. N.Y. EXEC. LAW § 292.21.

184.     Defendant Doar operates a place of public accommodation under the New York State Human Rights Law. *Id.* § 292.9.

185.     Defendant Doar's failure to provide written materials to Plaintiffs and other similarly situated persons in alternative formats effective for them violates the New York State Human Rights Law. *Id.* §§ 296.2(a), 296.2(c)(i)-(iv).

## Count V - Violation of the New York City Human Rights Law
### (Against Defendants Doar and HRA)

186.     Plaintiffs hereby incorporate the preceding paragraphs of this complaint by reference as though set forth fully herein.

187.     Each of the Plaintiffs and class members is a person with a disability under the New York City Human Rights Law because they have impaired sensory organs. N.Y.C. ADMIN. CODE § 8-102(16)(a).

188.     Defendant Robert Doar is an agent and principal executive of a place or provider of public accommodation. *Id.* § 8-102(9).

189.     City Defendants' failure to provide written materials to Plaintiffs and other similarly situated persons in alternative formats effective for them violates the New York City Human Rights Law. *Id.* §§ 8-107(4)(a); 8-107(15).

## Count VI - Violation of New York State OTDA Regulations
### (Against Defendants Doar and HRA)

190.     Plaintiffs hereby incorporate the preceding paragraphs of this Complaint by reference as though set forth fully herein.

191.     Plaintiffs and class members are individuals with disabilities under the New York State Social Services regulations. 18 N.Y.C.R.R. §§ 303.1(a); (b)(1), (4),(6).

192.     City Defendants' failure to provide written materials to Plaintiffs and other similarly situated persons in alternative formats effective for them violates OTDA regulations prohibiting discrimination on the basis of disability.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

a. Certify that this lawsuit may be maintained as a class action under Rule 23(a) and

23(b)(2) of the Federal Rules of Civil Procedure.

b. Declare that the failure of:

(i) Defendants Doar, Proud, Shah, and HRA to provide written materials in alternative formats to Plaintiffs and other similarly situated blind and seriously visually impaired Food Stamps and Medicaid applicants and recipients who need them violates the Americans with Disabilities Act and implementing regulations;

(ii) Defendants Doar, Proud, Shah, HRA, OTDA, and DOH to provide written materials in alternative formats to Plaintiffs and other similarly situated blind and seriously visually impaired Food Stamps and Medicaid applicants and recipients who need them violates Section 504 of the Rehabilitation Act and implementing regulations;

(iii) Defendants Doar, Proud, Shah, and HRA to provide written materials in alternative formats to Plaintiffs and other similarly situated blind and seriously visually impaired Food Stamps and Medicaid applicants and recipients who need them violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

(iv) Defendants Doar and HRA to provide written materials in alternative formats to Plaintiffs and other similarly situated individuals who need them violates the New York State Human Rights Law, the New York City Human Rights Law, and OTDA regulations;

c. Declare that Defendants have a duty to:

(i) provide written materials in alternative formats to Plaintiffs and other similarly situated visually impaired Food Stamps and Medicaid applicants and recipients who need them;

(ii) develop and implement policies and procedures to determine who needs materials in alternative formats and the alternative formats that are effective for them; and

(iii) inform Food Stamps and Medicaid applicants and recipients of the right to receive written materials in alternative formats.

d. Issue a preliminary and permanent injunction requiring Defendants to:

(i) provide written materials in alternative formats to Plaintiffs and other similarly situated visually impaired Food Stamps and Medicaid applicants and recipients who need them;

      (ii)     develop and implement policies and procedures to determine who needs materials in alternative formats and the alternative formats that are effective for them;

      (iii)    inform Food Stamps and Medicaid applicants and recipients of the right to receive written materials in alternative formats; and

      (iv)    involve individuals with vision impairments and their advocates in the process of developing and implementing the alternative format materials, policies, and procedures referenced in (i) and (ii) above.

e.      Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133; 29 U.S.C. § 794a(b); and 28 C.F.R. § 35.175.

f.      Appoint a monitor to ensure that Defendants comply with the referenced injunctions and declarations of Defendants' duties until such time that the monitor certifies to this Court in writing that Defendants have been in compliance with the relief sought in this case for one year.

g.      Require Defendants to file a written report every six months with the monitor who has been appointed with respect to sub-paragraph (f.) above, setting forth Defendants' progress and status in complying with the relief requested in subparagraphs (b)-(d) of the Request for Relief section in this complaint.

h.      Grant any further relief this Court deems just and proper.

Dated: March 1, 2013

Gerald S. Hartman
Maureen Donahue Hardwick
Drinker Biddle & Reath LLP
1500 K Street, N.W.
Washington, DC 20005-1209
Phone: (202) 842-8800
Fax: (202) 842-8465
jerry.hartman@dbr.com
maureen.hardwick@dbr.com

*Of Counsel for Plaintiffs*

Michael P. Daly
Nicholas S. Feltham
Joshua M. Link
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6999
Phone: (215) 988-2700
Fax: (215) 988-2757
michael.daly@dbr.com
nicholas.feltham@dbr.com
joshua.link@dbr.com

*Of Counsel for Plaintiffs*

Cary LaCheen (N.Y. Bar No. CL 7687)
Marc Cohan (N.Y. Bar No. MC 2612)
Mary R. Mannix (N.Y. Bar No. MM 2508)
Jenny R. A. Pelaez (N.Y. Bar No. JP 1364)
National Center for Law & Economic Justice
275 Seventh Avenue, Suite 1506
New York, New York 10001-6708
Phone: (212) 633-6967
Fax: (212) 633-6371
cohan@nclej.org
lacheen@nclej.org
mannix@nclej.org
pelaez@nclej.org

*Counsel for Plaintiffs*

# Exhibit B

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/14/15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| MEGAN RAFFERTY, DEBORAH HAYNES, LEASON JACOB, and DIANA GRAY, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | No. 13-CV-1410 (TPG) |
| v. | |
| ROBERT DOAR, in his capacity as its Commissioner of the New York City Human Resources Administration; | |
| KRISTIN PROUD, in her capacity as Commissioner of the New York State Office of Temporary and Disability Assistance; | **ORDER PURSUANT TO FED. R. CIV. P. 23(e)** |
| NIRAV SHAH, M.D., in his capacity as its Commissioner of the New York State Department of Health; | |
| the NEW YORK CITY HUMAN RESOURCES ADMINISTRATION; | |
| the NEW YORK STATE OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE; and | |
| the NEW YORK STATE DEPARTMENT OF HEALTH, | |
| Defendants. | |

---

WHEREAS, this action was brought as a class action pursuant to Federal Rule of Civil Procedure 23;

1

WHEREAS, on August 7, 2013, this Court certified a class pursuant to Federal Rule of Civil Procedure 23 and appointed the National Center for Law and Economic Justice and Drinker Biddle & Reath LLP as class counsel;

WHEREAS, counsel for Plaintiffs and counsel for Defendants have entered into a Stipulation and Order of Settlement ("Settlement") that, if approved by the Court, would resolve Plaintiffs' claims; and

WHEREAS, counsel for the parties have jointly moved the Court, pursuant to Federal Rule of Civil Procedure 23(e)(1), for preliminary approval of the proposed Settlement, for a hearing thereon, and for authorization of notice of the hearing to be provided to members of the Plaintiff class;

NOW, THEREFORE, IT IS ORDERED THAT:

1.     A hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure shall be held before the undersigned on _10/1/2015_, for purposes of determining whether the proposed Settlement is fair, reasonable, and adequate, and should be approved by the Court. The hearing shall take place before the Honorable Thomas P. Griesa, U. S. District Court, Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Courtroom 26B, New York, NY 10007-1312, and will begin at 2:00pm. The hearing may be adjourned or continued from time to time without further notice.

2.     The Notice of Proposed Class Action Settlement ("Notice") attached hereto as Exhibit "1" is hereby approved.

3.     At least thirty (30) days prior to the hearing, Defendant Proud, as succeeded by Defendant Sam Roberts, shall cause the New York State Office of Temporary and Disability Assistance ("OTDA") to:  (a) post the Notice in English and Spanish in the client waiting areas at

2

OTDA's Boerum Place, Brooklyn, New York fair hearing center, with the Notice posted in these locations being 8.5" x 11" or larger in size, using 18-point font; and (b) publish the Notice in English and Spanish on its web site, in 18-point font and audio format, at http://otda.ny.gov/.

4. At least thirty (30) days prior to the hearing, Defendant Shah, as succeeded by Defendant Howard Zucker, shall cause the New York State Department of Health ("DOH") to: publish the Notice in English and Spanish on its web site, in 18-point font and audio format, at https://www.health.ny.gov/.

5. At least thirty (30) days prior to the hearing, Defendant Doar, as succeeded by Defendant Steven Banks, shall cause the New York City Human Resources Administration ("HRA") to: (a) post the Notice in English and Spanish in the public client waiting areas at all SNAP and Medicaid offices, with the Notice posted in these locations being 8.5" x 11" or larger in size, using 18-point font; (b) publish the Notice on its web site, at http://www.nyc.gov/html/hra/html/home/home.shtml, in English and Spanish in 18-point font, and in audio format (accessible through a link and/or by downloading an audio file); and (c) mail the Notice in English and Spanish, as appropriate, to all Class Members it has individually identified.

6. At least forty (40) days prior to the hearing, HRA will provide Plaintiffs' counsel with:

(a) a PDF of the Notice in English and in Spanish in 18-point font;

(b) ten (10) copies of the Notice in Audio Format (in English); and

(c) twenty (20) copies of the Notice in Braille (in English),

which Plaintiffs' counsel National Center for Law and Economic Justice and Drinker Biddle & Reath LLP will make available to members of the class upon request.

3

7.      At least thirty (30) days prior to the hearing, Plaintiffs' counsel National Center for Law and Economic Justice and Drinker Biddle & Reath LLP will: (a) include a link to the Notice in English and Spanish on their respective web sites, in 18-point font and in audio format (accessible through a link and/or by downloading an audio file).at, respectively, http://nclej.org/ and http://www.drinkerbiddle.com/rafferty; (b) mail or email the Notice to the disability rights and legal aid organizations identified in Exhibits 2 and 3 respectively, asking these entities to post the Notice on their websites and distribute the Notice to their members; and (c) furnish the Notice to the disability rights and legal aid organizations identified in Exhibits 2 and 3 respectively, in 18-point font, Audio Format and Braille, upon request.

8.      The disability rights organizations identified in Exhibit 2, attached hereto, are focused, in whole or in part, on advocacy issues on behalf of persons in New York City who are blind and seriously visually impaired.

9.      The legal aid organizations identified in Exhibit 3, attached hereto, provide legal representation to low-income individuals, including persons in New York City who are blind and seriously visually impaired.

10.     Any member of the Plaintiff class may appear at the aforesaid hearing on _10/1/15_ at _2pm_, in person or by counsel, and object to the Settlement or give reasons why they believe that the proposed settlement should not be approved as fair, reasonable, and adequate.

11.     Any member of the Plaintiff class may also object to or comment on the Settlement by submitting objections in writing. Objections or comments must be received by the Court at the address listed above, no later than five (5) days before the date of the scheduled hearing.

4

Case 1:13-cv-01410-TPG Document 55 Filed 07/24/15 Page 54 of 103
Case 1:13-cv-01410-TPG Document 55 Filed 07/14/15 Page 5 of 5
Case 1:13-cv-01410-TPG   Document 54-1   Filed 07/08/15   Page 6 of 6

Dated: _7/14/15_
New York, New York

_Thomas P. Griesa_
_____
Thomas P. Griesa
United States District Court Judge

5

# EXHIBIT 1

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

## ATTENTION:

## If You Are Blind or Seriously Visually Impaired And Need Information About Medicaid or SNAP (Food Stamps) Benefits In Accessible Alternate Formats, A Proposed Federal Court Settlement May Affect You.

### What Is The Case About?

A settlement has been reached in a class action lawsuit against the New York City Human Resources Administration (HRA), the New York State Office of Temporary and Disability Assistance (OTDA), and the New York State Department of Health (DOH).  The lawsuit alleges that these agencies violated the Americans with Disabilities Act and related federal and local civil rights laws by failing to make applications, notices, publications, and other documents available in alternate formats for individuals who are blind or seriously visually impaired and who are attempting to access Medicaid and SNAP (Food Stamps) benefits.  The lawsuit is called *Rafferty v. Doar*, No. 13-cv-1410 (TPG) and is pending in the United States District Court for the Southern District of New York.  The parties have submitted the settlement agreement to the Court for its approval.

### Who Is Affected By The Settlement?

The Court certified a class of "All New York City residents who (1) have visual impairments that substantially limit the major activity of seeing or otherwise have a visual disability as 'disability' is  defined under the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973; (2) are current or future applicants for or recipients of SNAP and/or Medicaid benefits; and (3) need written materials in alternative formats for effective communication regarding SNAP and Medicaid."

In this notice, people who fit this description are referred to as **"Class Members."**

### What Are The Basic Terms Of The Settlement?

1.  **Conversion of Documents into Alternative Formats:**  No later than July 1, 2016, OTDA, DOH, and HRA will provide certain written materials such as publications, applications, and notices in alternate formats to persons who are blind or seriously visually impaired.  These formats include: (a) large print in 18-point font; (b) audio format (recordings for use with computers and digital audio players); and (c) data format (electronic versions of text documents compatible with assistive screen reading software).  If you are a Class Member, you will also be able to request that these types of written materials be provided in Braille, if other formats are not equally effective for you.

1

2. **Website Access:** HRA will phase in, starting August 1, 2015, and concluding by December 1, 2017, the provision of a portal on its website that will, over that time period, make the web content accessible to clients on personal computers and allow them to receive, complete, and submit applications and recertifications, access certain notices, get account balances, and upload supporting documents for SNAP benefits.

3. **Recording Alternative Format Requests:** No later than July 1, 2016, OTDA will record in their computer systems the alternative format accommodations requested by Class Members.

4. **Reporting:** OTDA and DOH will provide quarterly reports to Plaintiffs' attorneys that show the number of Class Members asking for written materials provided in alternative formats and which formats they have requested.

5. **Training:** OTDA and HRA will train their staff on their obligations to provide access to written SNAP and Medicaid materials in alternative formats, for persons who are blind or seriously visually impaired.

6. **Enforcement:** The Court will retain jurisdiction to enforce this settlement for at least 12 months after the Defendants have fully implemented the terms of the settlement.

### Where Can I Find The Settlement Agreement?

The settlement agreement is available on the websites for Plaintiffs' counsel, the National Center for Law and Economic Justice, http://nclej.org/ and Drinker Biddle & Reath LLP, http://www.drinkerbiddle.com/rafferty. It is also posted on the websites of HRA, http://www.nyc.gov/html/hra/html/news/news.shtml, OTDA, https://otda.ny.gov/, and DOH, https://www.health.ny.gov/.

### When Will The Court Review The Settlement?

The Court will hold a fairness hearing on _____, 2015 at _____. The hearing will take place before the Honorable Thomas P. Griesa, at the following address:

**United States District Court for the Southern District of New York**
**Daniel Patrick Moynihan United States Courthouse**
**500 Pearl Street, Courtroom 26B**
**New York, NY 10007-1312**

### Who Can Object To The Settlement?

Class Members can object to the proposed settlement if they feel that it is not fair, reasonable, and adequate. To object to the settlement, you may appear at the fairness hearing in person or through counsel to state your objections. You may also object to the settlement by

2

sending a letter marked "Rafferty v. Doar Class Settlement" and postmarked by ____, to the Court at the address identified above.

## Who Represents The Plaintiff Class?

The Court has appointed attorneys to represent the Class Members. They are:

Greg Bass
 National Center for Law
 and Economic Justice
 275 Seventh Avenue, Suite 1506
 New York, NY 10001-6708
 Tel. (212) 633-6967

Joshua M. Link, Michael P. Daly
 Drinker Biddle & Reath LLP
 One Logan Square, Ste. 2000
 Philadelphia, PA 19103-6999
 Tel. (215) 988-2700

## Who Do I Call If I Have Questions About the Notice or Settlement?

If you have any questions about this settlement, please call the attorneys for the Class Members: the National Center for Law and Economic Justice at (212) 633-6967, or Drinker Biddle & Reath LLP at (215) 988-2700. PLEASE DO NOT CALL THE COURT.

## Is The Notice Available In Alternative Formats?

Yes. The Notice can be viewed in English and Spanish, in large print (18-point font) and can be downloaded in audio format at the following websites:

- HRA, http://www.nyc.gov/html/hra/html/home/home.shtml
- OTDA, http://otda.ny.gov/
- DOH, https://www.health.ny.gov/
- National Center for Law and Economic Justice, http://nclej.org/
- Drinker Biddle & Reath LLP, http://www.drinkerbiddle.com/rafferty

If you would like a copy of the Notice in Braille, audio format (on CD), or large print (18-point font), please contact the National Center for Law and Economic Justice, or Drinker Biddle & Reath LLP.

# EXHIBIT 2

Advocates for Services for the Blind Multihandicapped
*Administrative Office*
3106 Coney Island Avenue
Brooklyn, NY 11235
Tel:  (718) 934-2592
Fax:  (718) 934-2669


American Council of the Blind of New York
Lori Scharff, President
Tel: (516) 695-6370
lorischarff@gmail.com


American Foundation for the Blind
2 Penn Plaza, Suite 1102
New York, NY  10121
Tel: (212) 502-7600
Fax: (888) 545-8331
afbinfo@afb.net


Andrew Heiskell Braille and Talking Book Library,
New York Public Library
40 West 20th Street
New York, NY  10011
Tel:  (212) 206-5400
Fax:  (212) 206-5418
talkingbooks@nypl.org


Association for Macular Diseases
210 East 64th Street
New York, NY 10021
Tel:  (212) 605-3719
Fax:  (212) 606-3795
association@retinal-research.org


Baruch College, Computer Center for Visually Impaired People
151 East 25th Street, 6th floor
New York, NY 10010
Tel:  (646) 312-1420
Fax;  (646) 312-1421
judith.gerber@baruch.cuny.edu

Brooklyn Center for Independence of the Disabled (BCID)
27 Smith Street/Suite 200
Brooklyn, NY 11201
Tel: (718) 998-3000


Bronx Independent Living Services
4419 3rd Ave, Suite 2C
Bronx, NY 10457
Tel: (718) 515-2800
Fax: (718) 515-2844


Catholic Guild for the Blind
1011 First Avenue
New York, NY 10022
Tel: (212) 371-2097
Fax: (212) 421-0021
judith.katzen@archny.org


Center for Independence of the Disabled in New York (CIDNY)
841 Broadway, Suite 301
New York, NY 10003
Tel: (212) 674-2300
Fax: (212) 254-5953


Center for Independence of the Disabled in New York (CIDNY Queens)
80-02 Kew Gardens Road, Suite 107
Kew Gardens, NY 11415
Tel: (646) 442-1520
Fax: (347) 561-4883


Disability Rights New York
25 Chapel Street, Suite 1005
Brooklyn, NY 11201
Tel: (518) 432-7861
Fax: (518) 427-6561
mail@DisabilityRightsNY.org

Gatewave
244 5th Avenue
Suite G201
New York, NY 10001
Tel: (646) 202-1049
info@gatewave.org


Harlem Independent Living Center
289 Saint Nicholas Avenue Suite 21,
Lower Level Between 124 and 125 street
New York, NY 10027
Tel: (212) 222-7122
Fax: (212) 222-7199


Helen Keller International
352 Park Avenue South
12th Floor
New York, NY 10010
Tel: (212) 532-0544
Fax; (212) 532-6014
info@hki.org


Helen Keller Services for the Blind
57 Willoughby Street
Brooklyn, NY 11201
Tel: (718) 522-2122


JBI International (est. as The Jewish Braille Institute)
110 East 30th Street
New York, NY 10016
Tel: (212) 889-2525
Fax: (212) 689-3692
(800) 433-1531 (Toll-Free)
library@jbilibrary.org


Lavelle School for the Blind
3830 Paulding Avenue
Bronx, NY 10469
Tel: (718) 882-1212)
Fax: (718) 882-0005

Learning Ally: New York
545 Fifth Avenue
Suite 1005
New York, NY 10017
Tel:  (212) 557-5720
custserv@learningally.org


Lighthouse Guild
15 West 65th Street
New York, NY 10023-6601
Tel:  (212) 769-6200
info@lighthouseguild.org


National Association of Parents of Children with Visual Impairments
15 West 65th Street
New York, NY 10023
(212) 769-7819 (Local)


National Federation of the Blind of New York
Carl Jacobsen, President
Post Office Box 205666
Sunset Station
Brooklyn, New York 11220
Tel:  (718) 567-7821
office@nfbny.org


National Federation of the Blind Parents of Blind Children
Marcia Garcia, President
New York Parents of Blind Children
Tel:  (212) 222-1705
pobcny@verizon.net


New York City Affiliate of the National Association for Parents of Children with Visual Impairments
999 Pelham Parkway North
Bronx, NY 10469
Tel:  (718) 519-7000 127
Fax:  (718) 655-0230
Christiej@lighthouseguild.org

4

NYC Coalition on Aging & Vision
2 Lafayette Street, 11th Floor
New York, NY 10007
Tel: (212) 602-4465
Fax: (212) 442-4058
nycvisioncoalition@anyf.org


New York Deaf-Blind Collaborative
Queens College - CUNY
65-30 Kissena Blvd., PH 200
Flushing, NY 11367
Tel: (718) 997-4856
Fax: (718) 997-4883
NYDBC@qc.cuny.edu


Staten Island Center for Independent Living
470 Castleton Avenue
Staten Island, NY 10301
Tel: (718) 720-9016
Fax: (718) 720-9664


VISIONS at Selis Manor

135 West 23rd Street
New York, NY 10011


VISIONS/Services for the Blind and Visually Impaired
500 Greenwich Street
Third Floor
New York, NY 10013-1354
Tel: (212) 625-1616
Fax: (212) 219-4078
info@visionsvcb.org

# EXHIBIT 3

*Legal Services NYC-Bronx*
*579 Courtlandt Avenue*
*Bronx, New York 10451*
*Tel:     718-928-3700*
*Fax:     718-402-7566*
*www.legalservicesnyc.org*

*Legal Services NYC-Bronx*
*(Courthouse Office)*
*1118 Grand Concourse, Suite 370*
*Bronx, New York 10456*
*Tel:     718-928-3700*
Fax:     718-590-1129
www.legalservicesnyc.org

**The Bronx Defenders**
860 Courtlandt Avenue
Bronx, New York 10451
Tel:     800-597-7980 or 718-838-7878
www.bronxdefenders.org
www.legal-aid.org

**The Legal Aid Society**
953 Southern Boulevard
Bronx, New York 10459
Tel:     718-991-4600
Fax:     718-842-2867

**Legal Services NYC - Brooklyn**
**Brooklyn Family Defense Project**
177 Livingston Street, 7th Floor
Brooklyn, New York 11201
Tel:     347-592-2500
Fax:     718-596-4704
www.legalservicesnyc.org
**Brooklyn Legal Services Corp A.**
**(East Brooklyn)**
80 Jamaica Avenue
Brooklyn, New York 11207
Tel:     718-487-1300
Fax:     718-342-1780

**Brooklyn Legal Services Corp.**
**A. (Bushwick)**
1455 Myrtle Avenue
Brooklyn, New York 11237
Tel:     718-487-0800
Fax:     718-326-2944

**Brooklyn Legal Services Corp. A**
**(Williamsburg)**
256-260 Broadway
Brooklyn, New York 11211
Tel:     718-487-2300
Fax:     718-782-6790

**CAMBA Legal Services**
1720 Church Avenue, 2nd & 3rd Floors
Brooklyn, New York 11226
Tel:     718-287-2600
www.camba.org

**LSNY Brooklyn (Brighton)**
3049 Brighton 6th Street
Brooklyn, New York 11235
Tel:     347-592-2100
Fax:     718-858-1786
www.lsnybb.org

1

**LSNY Brooklyn (Williamsburg)**
32 Penn Street
Brooklyn, New York 11211
Tel: 718-643-9700
Fax: 718-643-6581
www.lsnybb.org

**South Brooklyn Legal Services**
105 Court Street, 3rd Floor
Brooklyn, New York 11201
Tel: 718-237-5500
Fax: 718-855-0733
www.sbls.org

**Manhattan Legal Services**
90 John Street, Suite 301
New York, New York 10038
Tel: 646-442-3100
Fax: 212-227-9798
www.legalservicesnyc.org

**Legal Aid Society**
199 Water Street, 3rd Floor
New York, New York 10038
Tel: 212-577-3300
www.legal-aid.org
http://www.legal-aid.org

**Manhattan Legal Services**
1 West 125th Street, 2nd Floor
New York, New York 10027
Tel: 212-348-7449
Fax: 212-348-4093
www.legalservicesnyc.org

**New York Legal Assistance Group**
7 Hanover Square, 18th Floor
New York, NY 10004
Tel: 212-613-5000
Fax: 212-750-0820
www.nylag.org

**MFY Legal Services**
299 Broadway
New York, NY 10007
Tel: 212-417-3700
Fax: 212-417-3891
www.mfy.org

**The Door - A Center of Alternatives**
121 Avenue of the Americas
New York, NY 10013
Tel: 212-941-9090
www.door.org

**Urban Justice Center**
40 Rector Street, 9th Floor
New York, NY 10006
Tel: 646-602-5600
Fax: 212-750-0820
www.urbanjustice.org

**Make the Road by Walking**
301 Grove Street
Brooklyn, NY 11237
Tel: 718-418-7690
Fax: 718-418-9635
www.maketheroad.org

**The Legal Aid Society**
120-46 Queens Boulevard
Kew Gardens, New York 11415
Tel:    718-286-2450
Fax:    718-263-4234
www.legal-aid.org
www.legal-aid.org

**The Legal Aid Society (Mobile Unit)**
**Rockaway Neighborhood**
**Office**
1600 Central Avenue, Suite 1
Far Rockaway, New York 11691
Tel:    718-337-4900

**Make the Road by Walking**
92-10 Roosevelt Avenue
Jackson Heights, New York 11372
Tel:    718-565-8500
Fax:    718-565-0646
www.maketheroad.org

**Queens Legal Services**
89-00 Sutphin Boulevard
Jamaica, New York 11435
Tel:    347-592-2200
Fax:    718-526-5051
http://www.legalservicesnyc.org/

**Legal Aid Society**
60 Bay Street
Staten Island, New York 10301
Tel:    718-422-5333
www.legal-aid.org
www.maketheroad.org

**Make the Road by Walking**
479 Port Richmond Avenue
Staten Island, New York 10302
Tel:    718-727-1222
Fax:    718-981-8077

**Staten Island Legal Services**
36 Richmond Terrace, Suite 205
Staten Island, New York 10301
Tel:    718-233-6480
Fax:    718-448-2264
www.legalservicesnyc.org

**Community Service Society**
Public Benefits Resource Center
102 East 22nd Street
New York, New York 10010
Tel:    212-614-5552
www.cssny.org

# Exhibit C

# ATTENTION:

# If You Are Blind or Seriously Visually Impaired And Need Information About Medicaid or SNAP (Food Stamps) Benefits In Accessible Alternate Formats, A Proposed Federal Court Settlement May Affect You.

### What Is The Case About?

A settlement has been reached in a class action lawsuit against the New York City Human Resources Administration (HRA), the New York State Office of Temporary and Disability Assistance (OTDA), and the New York State Department of Health (DOH).  The lawsuit alleges that these agencies violated the Americans with Disabilities Act and related federal and local civil rights laws by failing to make applications, notices, publications, and other documents available in alternate formats for individuals who are blind or seriously visually impaired and who are attempting to access Medicaid and SNAP (Food Stamps) benefits.  The lawsuit is called *Rafferty v. Doar*, No. 13-cv-1410 (TPG) and is pending in the United States District Court for the Southern District of New York.  The parties have submitted the settlement agreement to the Court for its approval.

### Who Is Affected By The Settlement?

The Court certified a class of "All New York City residents who (1) have visual impairments that substantially limit the major activity of seeing or otherwise have a visual disability as 'disability' is defined under the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973; (2) are current or future applicants for or recipients of SNAP and/or Medicaid benefits; and (3) need written materials in alternative formats for effective communication regarding SNAP and Medicaid."

In this notice, people who fit this description are referred to as **"Class Members."**

### What Are The Basic Terms Of The Settlement?

1. **Conversion of Documents into Alternative Formats:**  No later than July 1, 2016, OTDA, DOH, and HRA will provide certain written materials such as publications, applications, and notices in alternate formats to persons who are blind or seriously visually impaired.  These formats include: (a) large print in 18-point font; (b) audio format (recordings for use with computers and digital audio players); and (c) data format (electronic versions of text documents compatible with assistive screen reading software).  If you are a Class Member, you will also be able to request that these types of written materials be provided in Braille, if other formats are not equally effective for you.

2. **Website Access:** HRA will phase in, starting August 1, 2015, and concluding by December 1, 2017, the provision of a portal on its website that will, over that time period, make the web content accessible to clients on personal computers and allow them to receive, complete, and submit applications and recertifications, access certain notices, get account balances, and upload supporting documents for SNAP benefits.

3. **Recording Alternative Format Requests:** No later than July 1, 2016, OTDA will record in their computer systems the alternative format accommodations requested by Class Members.

4. **Reporting:** OTDA and DOH will provide quarterly reports to Plaintiffs' attorneys that show the number of Class Members asking for written materials provided in alternative formats and which formats they have requested.

5. **Training:** OTDA and HRA will train their staff on their obligations to provide access to written SNAP and Medicaid materials in alternative formats, for persons who are blind or seriously visually impaired.

6. **Enforcement:** The Court will retain jurisdiction to enforce this settlement for at least 12 months after the Defendants have fully implemented the terms of the settlement.

### Where Can I Find The Settlement Agreement?

The settlement agreement is available on the websites for Plaintiffs' counsel, the National Center for Law and Economic Justice, http://nclej.org/ and Drinker Biddle & Reath LLP, http://www.drinkerbiddle.com/rafferty.   It is also posted on the websites of HRA, http://www.nyc.gov/html/hra/html/news/news.shtml, OTDA, https://otda.ny.gov/, and DOH, https://www.health.ny.gov/.

### When Will The Court Review The Settlement?

The Court will hold a fairness hearing on October 1, 2015 at 2 p.m. The hearing will take place before the Honorable Thomas P. Griesa, at the following address:

**United States District Court for the Southern District of New York**
**Daniel Patrick Moynihan United States Courthouse**
**500 Pearl Street, Courtroom 26B**
**New York, NY 10007-1312**

### Who Can Object To The Settlement?

Class Members can object to the proposed settlement if they feel that it is not fair, reasonable, and adequate.  To object to the settlement, you may appear at the fairness hearing in person or through counsel to state your objections. You may also object to the settlement by sending a letter marked "Rafferty v. Doar Class Settlement" and postmarked by September 26, 2015, to the Court at the address identified above.

## Who Represents The Plaintiff Class?

The Court has appointed attorneys to represent the Class Members. They are:

Greg Bass
National Center for Law
and Economic Justice
275 Seventh Avenue, Suite 1506
New York, NY 10001-6708
Tel. (212) 633-6967

Joshua M. Link, Michael P. Daly
Drinker Biddle & Reath LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6999
Tel. (215) 988-2700

## Who Do I Call If I Have Questions About the Notice or Settlement?

If you have any questions about this settlement, please call the attorneys for the Class Members:  the National Center for Law and Economic Justice at (212) 633-6967, or Drinker Biddle & Reath LLP at (215) 988-2700. PLEASE DO NOT CALL THE COURT.

## Is The Notice Available In Alternative Formats?

Yes. The Notice can be viewed in English and Spanish, in large print (18-point font) and can be downloaded in audio format at the following websites:

- HRA, http://www1.nyc.gov/site/hra/news/legal-notices-rules.page
- OTDA, http://otda.ny.gov/
- DOH, https://www.health.ny.gov/
- National Center for Law and Economic Justice, http://nclej.org/
- Drinker Biddle & Reath LLP, http://www.drinkerbiddle.com/rafferty

If you would like a copy of the Notice in Braille, audio format (on CD), or large print (18-point font), please contact the National Center for Law and Economic Justice, or Drinker Biddle & Reath LLP.

للاطلاع على هذا الإخطار باللغة العربية، يُرجى الذهاب إلى موقعنا الإلكتروني على:

Pou wè avi sa a nan lang Kreyòl Ayisyen, tanpri ale sou sitwèb nou nan

한국어 통지서를 확인하시려면 다음 주소의 당사 웹사이트를 방문하십시오:

Для просмотра этого уведомления на русском языке посетите наш сайт

若要檢閱本通知的 中文 版本，請瀏覽我們的網站，網址：

http://www1.nyc.gov/site/hra/news/legal-notices-rules.page

# Exhibit D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

MEGAN RAFFERTY, DEBORAH
HAYNES, LEASON JACOB, and DIANA
GRAY, on behalf of themselves and all others
similarly situated,

Plaintiffs,

v.

ROBERT DOAR, in his capacity as its
Commissioner of the New York City Human
Resources Administration;

KRISTIN PROUD, in her capacity as
Commissioner of the New York State Office
of Temporary and Disability Assistance;

NIRAV SHAH, M.D., in his capacity as its
Commissioner of the New York State
Department of Health;

the NEW YORK CITY HUMAN
RESOURCES ADMINISTRATION;

the NEW YORK STATE OFFICE OF
TEMPORARY AND DISABILITY
ASSISTANCE; and

the NEW YORK STATE DEPARTMENT
OF HEALTH,

Defendants.

</td><td>

No. 13-CV-1410 (TPG)

**STIPULATION AND ORDER
OF SETTLEMENT**

</td></tr>
</table>

### RECITALS

**WHEREAS**, on March 5, 2013, Plaintiffs Megan Rafferty, Deborah Haynes, Leason

Jacob, and Diana Gray (collectively "Plaintiffs") filed a complaint on behalf of themselves and

of a class of similarly situated individuals who are blind or seriously visually impaired, who are

1

applicants for and recipients of Supplemental Nutrition Assistance Program ("SNAP") and

Medical Assistance ("Medicaid") benefits, and who reside in New York City (the "Complaint");

    **WHEREAS** Plaintiffs asserted claims against the New York City Human Resources

Administration ("HRA"); Steven Banks, as the Commissioner of HRA ("Commissioner Banks");

the New York State Office of Temporary and Disability Assistance ("OTDA"); Sharon Devine,

as Executive Deputy Commissioner of OTDA ("Executive Deputy Commissioner Devine"); the

New York State Department of Health ("DOH"); and Howard Zucker, as Acting Commissioner

of DOH ("Acting Commissioner Zucker")[1] (collectively "Defendants");

    **WHEREAS** Plaintiffs alleged that Defendants failed to provide written materials and

information about SNAP and Medicaid eligibility in accessible and effective alternative formats

to applicants and recipients who are blind or seriously visually impaired;

    **WHEREAS** Plaintiffs alleged that Defendants' conduct violates the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*.; Section 504 of the Rehabilitation

Act of 1973 ("Section 504"), 29 U.S.C. §§ 701-797(b); the Due Process Clause of the Fourteenth

Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1; the New York

State Human Rights Law, N.Y EXEC. LAW §§ 291 *et seq*.; the New York City Human Rights

Law, N.Y.C. ADMIN. CODE § 8-107; and state regulations, 18 N.Y.C.R.R. § 303.1;

    **WHEREAS**, on August 7, 2013, upon a joint request of the parties, the Court certified a

class of plaintiffs pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2); and

    **WHEREAS** the parties are entering into this Stipulation and Order of Settlement (the

"Stipulation and Order") solely for the purpose of settling the disputes between them and to

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), HRA Commissioner Steven Banks, DOH's Acting Commissioner Howard Zucker, and OTDA's Executive Deputy Commissioner Sharon Devine are automatically substituted as parties for former HRA Commissioner Robert Doar, former DOH Commissioner Nirav Shah, M.D., and former OTDA Commissioner Kristin Proud, respectively.

avoid further litigation, and without the City and State Defendants admitting any fault or liability;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by the undersigned, that this action is settled, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, on the following terms and conditions:

## SECTION I:  DEFINITIONS

1.     "Applications" refers to the documents made available by the State and City Defendants to individuals for the purpose of applying to receive or to continue to receive SNAP and/or Medicaid benefits, as identified herein in the respective Sections I of Appendices A, B, and C, including all successors to such documents, if any.

2.     "Audio Format" refers to audio files containing audio transcriptions of text documents for use with computers and digital audio players, whether provided through electronic transmission over the internet or on physical media such as compact discs, or other successor technology that Defendants may adopt, pursuant to paragraph 45.

3.     "City Defendants" refers to HRA, and to Commissioner Banks and his successors.

4.     "Class" refers to the plaintiff class certified by the Court on August 7, 2013, and defined as follows:

> All New York City residents who: (1) have visual impairments that substantially limit the major life activity of seeing or otherwise have a visual disability as "disability" is defined under the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973; (2) are current or future applicants for or recipients of SNAP and/or Medicaid benefits; and (3) need written materials in alternative formats for effective communication regarding SNAP and Medicaid.

5.     "Class Counsel" refers to the National Center for Law and Economic Justice, and Drinker Biddle & Reath LLP.

6. "CNS" refers to the State Defendants' Client Notice System, or any successors thereto.

7. "Communications" refers to any personalized and individualized written notice that is issued to a Class member by either the State or City Defendants concerning the Class member's SNAP and/or Medicaid benefits or application for SNAP and/or Medicaid benefits.   As used herein, a Communication is "issued" by a party when it is published and mailed by the party's employees or contractors in the name of the party.

8. "DAI" refers to the Disability Accommodation Indicator for WMS and FHIS created by OTDA on June 23, 2014.

9. "DAI Implementation Date" refers to July 1, 2016, or the date on which the DAI is made operational, whichever is earlier.

10. "Data Format" refers to electronic versions of text documents accessible to Class members through the use of assistive screen reading software, whether provided through electronic transmission over the internet or on physical media such as compact discs, or other successor technology that Defendants may adopt, pursuant to paragraph 45.

11. "Decision After Fair Hearing" refers to any written administrative decision issued by OTDA's Office of Administrative Hearings on behalf of OTDA or DOH.

12. "Effective Date" refers to the date on which this Stipulation and Order is approved and "so-ordered" by the Court.

13. "eMedNY" is the electronic Medicaid Management System of New York State operated by Computer Sciences Corporation, or by any successor vendors, on behalf of DOH.

14. "FHIS" refers to OTDA's Office of Administrative Hearings' Fair Hearings Information System, or any successors thereto.

15.     "Full Implementation Date" refers to the latest of any specific date-certain deadlines set

        forth in this Stipulation and Order pertaining to any Defendant, or the date on which the

        obligation corresponding to any such deadline is actually implemented or effectuated by

        the appropriate Defendant, whichever is earlier.

16.     "IVRS" refers to HRA's Interactive Voice Response System.

17.     "Large Print" refers to hard copy text documents formatted in 18-point font.

18.     "Primary Alternative Formats" refers to the following: (a) Large Print; (b) Audio Format;

        and (c) Data Format.

19.     "Publications" refers to the non-personalized and non-individualized documents that are

        made available to the general public concerning SNAP and/or Medicaid benefits by the

        State and City Defendants, including instructions to Applications and related

        informational materials, as identified herein in the respective Sections II of Appendices

        A, B, and C, and all successors to such documents, if any.

20.     "Public-Facing Employees" refers to all employees of any Defendant whose job duties

        include regularly interacting with Class members and the general public concerning

        applying for or receiving SNAP and/or Medicaid benefits, and/or fair hearings relating to

        SNAP and/or Medicaid benefits.

21.     "SNAP" refers to the United States Department of Agriculture's Supplemental Nutrition

        Assistance Program.

22.     "SSA" refers to the United States Social Security Administration.

23.     "State Defendants" refers to OTDA, Executive Deputy Commissioner Devine and her

        successors, DOH, and Acting Commissioner Zucker and his successors.

24.     "USDA" refers to the United States Department of Agriculture.

25.     "WMS" refers to the OTDA's Welfare Management System, or any successors thereto.

## SECTION II:  INJUNCTIVE RELIEF

A.     <u>Revising Applications and Publications</u>

26.     **OTDA.**

    a.  No later than July 1, 2016, OTDA shall make all Applications available in Large Print and Data Format to local social services districts, and available for download from OTDA's website in Large Print and Data Formats.  No later than July 1, 2016, OTDA shall further convert all documents identified in Section I of Appendix A into Audio Format and Braille, and will make such documents available to local social services districts, and available for download from OTDA's website in Audio Format; provided that such converted documents will include appropriate language making clear that the documents are being provided in Audio Format and Braille solely for informational purposes, and that applications must be completed and returned in written, non-alternative format.  If OTDA later identifies a document that should have been included as an Application listed in Section I of Appendix A for purposes of this Stipulation and Order, but was not so identified, it shall notify Class Counsel as soon as practicable thereafter, and make the additional Application available in the formats and in the manner set forth above in this subparagraph no later than ninety (90) days following the notification.

    b.  No later than July 1, 2016, OTDA shall make all Publications available in the Primary Alternative Formats to local social services districts, and available for download from OTDA's website in the Primary Alternative Formats.

c. No later than July 1, 2016, OTDA shall add language substantially similar to: "If you are blind or seriously visually impaired and need this application in an alternative format, you may request one from your social services district.  **For additional information regarding the types of formats available and how you can request an application in an alternative format, see the "How to Complete" instruction book (PUB-1301) or www.otda.ny.gov"** on or as an addendum to the following: (i) LDSS 4826 (SNAP Recertification and Application); (ii) LDSS 2921(Common Application for SNAP, Medicaid and other benefits); and (iii) LDSS 3174 (Recertification Form for SNAP, Medicaid and other benefits).  OTDA shall additionally add similar language to all successors to the foregoing documents, if any.

d. No later than July 1, 2016, OTDA shall add language substantially similar to: "If you are blind or seriously visually impaired, would you like to receive written notices in an alternative format? ____ Yes ____ No.  If yes, check the type of format you would like:  ____ Large Print; ____ Data CD; ____ Audio CD; ____ Braille, if you assert that none of the other alternative formats will be equally effective for you.  If you require another accommodation, please contact your social services district." on or as an addendum to the following: (i) LDSS 4826 (SNAP Recertification and Application); (ii) LDSS 2921(Common Application for SNAP, Medicaid and other benefits); and (iii) LDSS 3174 (Recertification Form for SNAP, Medicaid and other benefits).  OTDA shall additionally add similar language to all successors to the foregoing documents, if any.

e. No later than July 1, 2016, OTDA shall add language to the MyBenefits online application for SNAP substantially similar to: "If you are blind or seriously visually

impaired, would you like to receive written notices in an alternative format? ____ Yes ____ No.  If yes, check the type of format you would like:  ____ Large Print; ____ Data CD; ____ Audio CD; ____ Braille, if you assert that none of the other alternative formats will be equally effective for you.  If you require another accommodation, please contact your social services district."

27. **DOH.**

    a.  No later than July 1, 2016, DOH shall make all Applications available in the Primary Alternative Formats to local social services districts, and available for download from DOH's website in Large Print and Data Format.  No later than July 1, 2016, DOH shall further convert all documents identified in Section I of Appendix B into Audio Format and Braille, and will make such documents available to local social services districts, and available for download from DOH's website in Audio Format; provided that such converted documents will include appropriate language making clear that the documents are being provided in Audio Format and Braille solely for informational purposes, and that applications must be completed and returned in written, non-alternative format.  If DOH later identifies that a document that should have been included as an Application listed in Section I of Appendix B for purposes of this Stipulation and Order, but was not so identified, it shall notify Class Counsel as soon as practicable thereafter, and make the additional Application available in the formats and in the manner set forth above in this subparagraph no later than ninety (90) days following the notification.

b. No later than July 1, 2016, DOH shall make all Publications available in the Primary Alternative Formats to local social services districts, and available for download from DOH's website in the Primary Alternative Formats.

c. No later than July 1, 2016, DOH shall add language substantially similar to: "If you are blind or seriously visually impaired and need written information in an alternative format, check the type of notice you want to receive from us: ___ Standard notice & large print notice; ___ Standard notice & data CD notice; ___ Standard notice & audio CD notice; ___ Standard notice & Braille notice, if you assert that none of the other alternative formats will be equally effective for you.  If you require another accommodation, please contact your social services district." as an addendum to the following: (i) DOH 4220 (Access NY application for Medicaid); and (ii) DOH 4282 (Family Planning Benefit Program for Medicaid).  DOH shall additionally add similar language to all successors to the foregoing documents, if any.

28. **HRA.**

a. **SNAP Applications**.  If, after the Effective Date, HRA identifies or develops an HRA-specific document that qualifies as an Application utilized in SNAP, it shall notify Class Counsel as soon as practicable and make the Application available in the Primary Alternative Formats, including by download from HRA's website, no later than ninety (90) days following the notification.

b. **Publications.**  No later than one-hundred and eighty (180) days after the Effective Date, HRA will make available, including by download from HRA's website, in the Primary Alternative Formats the HRA Publications that pertain to the SNAP and/or Medicaid programs that are identified in Section II of Appendix C.  HRA

9

Publications concerning instructional materials corresponding to Applications and concerning clients' rights and responsibilities that are developed after the Effective Date will be made available in the Primary Alternative Formats.

c.  **Internet-Based Accessible SNAP Applications – Reengineering Phase I.**  No later than August 1, 2015, HRA will provide a portal on its website that adheres to the Web Content Accessibility Guidelines 2.0, accessible to clients on personal computers, through which all clients can receive, complete, and submit an application or recertification for SNAP benefits.

d.  **Internet-Based Accessible SNAP-Related Communications Reengineering Phase II.**  Subject to obtaining the requisite approvals from USDA, no later than December 1, 2016, HRA will make available a portal on its website that adheres to the Web Content Accessibility Guidelines 2.0, accessible to clients on personal computers, by which all SNAP clients can perform the following tasks in connection with participation in SNAP: (i) receive, complete, and submit Periodic Reporting/Mid-Certification documents; (ii) access Communications issued by HRA to that client; and, (iii) access online account balances and application status information.

e.  **Internet-Based Accessible SNAP-Related Communications- Reengineering Phase III.**  Subject to obtaining the requisite approvals from USDA, no later than December 1, 2017, HRA will make available a portal on its website that adheres to the Web Content Accessibility Guidelines 2.0, accessible to clients on personal computers, by which all SNAP clients can upload supporting documents that the client is required to submit to HRA in connection with participation in SNAP.

f. **Readers.** No later than one hundred and twenty (120) days after the Effective Date, HRA shall ensure that a sufficient number of personnel who are able to read effectively, accurately, and impartially using specialized SNAP and Medicaid vocabulary are available in person and via telephone during its regular hours of operation to assist members of the Class in reading, understanding, and completing any Communication it generates or provides to the Class.

g. Notwithstanding the timelines proposed in sub-paragraphs (c)-(e) of paragraph 28, to the extent that the applications and recertification forms described in these sub-paragraphs are State documents, HRA reserves the right to make these documents available on the web-based portal described in these sub-paragraphs within sixty (60) days of the State Defendants' making these documents available to HRA.

29. **Braille**.

a. No later than July 1, 2016, with respect to any Publication and Communication that OTDA will be making available in a Primary Alternative Format as set forth in paragraphs 26(b) and 32(c), respectively, OTDA shall provide the same in Braille to any member of the Class who requests it and asserts that none of the Primary Alternative Formats will be equally effective for them;

b. No later than July 1, 2016, with respect to any Publication and Communication that DOH will be making available in a Primary Alternative Format as set forth in paragraphs 27(b) and 32(d), respectively, DOH shall provide the same in Braille to any member of the Class who requests it and asserts that none of the Primary Alternative Formats will be equally effective for them; and

11

c. No later than sixty (60) days after the DAI Implementation Date, HRA will make available in Braille the HRA Applications, Publications and Communications that pertain to the SNAP and/or Medicaid programs that are identified in Appendix C.

B. <u>Identification of Potential Class Members</u>

30. No later than the Effective Date, OTDA and DOH shall separately provide the City Defendants with updated lists of potential Class members for SNAP and Medicaid, respectively, that OTDA and DOH are able to identify based on then-available information, along with relevant identifying information including upcoming renewal or recertification dates.

31. No later than the Effective Date, OTDA shall provide the SSA with a list of all SNAP recipients in New York State, along with relevant identifying information, and shall make a one-time request to the SSA for information pertaining to all such SNAP recipients' current alternative format preferences as such information is available to the SSA. Within thirty (30) days after receiving any such responsive information from the SSA pursuant to this one-time request, OTDA shall revise its disclosure to the City Defendants as set forth in paragraph 30.

C. <u>Additional Changes</u>

32. **WMS, FHIS, and CNS Systems.**

a. As of June 23, 2014, OTDA has created in WMS and FHIS a DAI field for the purpose of recording a Class member's requested alternative format accommodation. By no later than July 1, 2016, OTDA will make the DAI field operational and capable of being populated by Defendants' employees.

b.  No later than July 1, 2016, the State Defendants shall include on all Communications issued through CNS language substantially similar to: "If you are blind or seriously visually impaired and need notices or other written materials in an alternative format (large print, audio or data CD, or Braille), contact your local social services district."

c.  No later than July 1, 2016, OTDA shall cause to make the following Communications available in the Primary Alternative Formats for mailing to Class members who request such an alternative format accommodation: (i) notices issued through CNS; (ii) notices concerning mass changes to Class members' SNAP and/or Medicaid benefits issued by OTDA outside of CNS; (iii) notices concerning a Class member's application for and/or receipt of SNAP and/or Medicaid benefits issued by OTDA; (iv) notices pertaining to fair hearing requests and the scheduling thereof issued through FHIS; (v) Decisions After Fair Hearing concerning SNAP and/or Medicaid benefits; (vi) notices concerning compliance with such Decisions After Fair Hearing issued by OTDA's Office of Administrative Hearings; and (vii) reconsiderations of Decisions After Fair Hearing issued by OTDA's Office of Administrative Hearings.

d.  No later than July 1, 2016, DOH shall cause to make the following Communications available in the Primary Alternative Formats for mailing to Class members who request such an alternative format accommodation: (i) notices to terminate, reduce, suspend, or restrict Medicaid benefits issued by DOH through eMedNY, and outside of CNS; and (ii) notices to individuals automatically enrolled in Medicaid issued by DOH as a result of an individual's eligibility for Supplemental Security Income ("SSI") benefits.

33. **HRA.**

a. **SNAP Recipients.**  No later than sixty (60) days after receipt of the initial or any

   revised list of potential Class members from OTDA as set forth in paragraphs 30 and

   31, and subject to obtaining the requisite approvals from USDA, HRA shall include

   those potential members of the Class on the list of SNAP recipients who are eligible

   to recertify SNAP benefits via HRA's IVRS program into the IVRS. HRA shall offer

   these individuals and all other potential members of the Class a telephone interview

   to recertify SNAP benefits, shall call these individuals seven (7) and three (3) days

   before their recertification dates (the date of the scheduled telephone interview), and

   shall afford these individuals an opportunity to renew benefits by telephone interview.

b. **Medicaid Recipients.**  No later than one-hundred and eighty (180) days after receipt

   of the list of potential Class members from DOH as set forth in paragraph 30, HRA

   shall implement protocols to call those potential Class members on the list for whom

   HRA administers Medicaid benefits, annually, when a renewal is sent, and monthly,

   for those class members on the list who have surplus income and are eligible for

   Medicaid with a spend down.  For renewals, the telephone call will provide

   information so that the Class member will be able to contact an HRA staff member

   who will explain that the Class member needs to renew her benefits, and will offer

   readers, or home visits, or schedule an appointment at an HRA facility.  For Class

   members, for whom HRA administers Medicaid benefits, who have surplus income

   and are eligible for Medicaid with a spend down, the telephone call will remind

   clients that they must meet their monthly spend down or make a remittance to HRA.

   For Class members whose renewal determination is deferred, HRA will contact the

14

Class member and offer readers, home visits or schedule an appointment at an HRA

facility.   Given the difficulty of ascertaining the Class size, in the event that the

remedy described herein becomes unmanageable due to unanticipated volume,

counsel for City Defendants and Plaintiffs agree to meet and confer in an attempt to

negotiate an appropriate modification.

c. **Inputting Preferences.**  No later than one-hundred and twenty (120) days after the

DAI Implementation Date, HRA shall put into place a process for populating the DAI

in WMS to record a Class member's stated preferred alternative format

accommodation.

34.   Nothing contained in this Stipulation and Order shall be construed to relieve a Class

member of his or her obligations to provide timely and accurate information, including

supporting documentation of eligibility factors, to the State and City Defendants in

written, non-alternative formats, where the option for electronic submission of SNAP

and/or Medicaid application or recertification materials does not otherwise exist;

provided that HRA will allow a Class member to orally relay certain information

regarding eligibility requirements to their staff members, as a reasonable accommodation.

D.   Notice to Relevant Personnel and Local Social Services Districts and Training

35.   **Notification of Personnel.**

a.   No later than thirty (30) days after the Effective Date, the State Defendants shall

advise all of their relevant personnel, including their Public-Facing Employees, and

all local social services districts of this Stipulation and Order, and provide them with

a summary of its terms and conditions.

b. No later than ninety (90) days  after the deadlines set forth above in paragraphs 26, 27, and 32, the State Defendants shall advise all of their relevant personnel, including their Public-Facing Employees, and all local social services districts of the changes as they are implemented.

c. No later than thirty (30) days after the Effective Date, HRA shall notify all of its relevant personnel, including Public-Facing Employees, about the existence of this Stipulation and Order and provide them with a summary of its terms and conditions.

d. No later than ninety (90) days after the deadlines set forth above in paragraphs 28 and 33, HRA shall advise all of its relevant personnel, including its Public-Facing Employees, of the changes as they are implemented.

36. **Training of Personnel.**

a. No later than July 1, 2016, OTDA shall develop training materials for its Public-Facing Employees that explains the Public-Facing Employees' duties and responsibilities as they relate to members of the Class, consistent with OTDA's obligations pursuant to the terms of this Stipulation and Order; and within sixty (60) days thereafter, OTDA shall (i) train its Public-Facing Employees in accordance with the newly developed training materials as set forth in this paragraph; and (ii) provide Class Counsel with written acknowledgements of the same.  OTDA shall subsequently utilize these training materials to train its Public-Facing Employees as appropriate going forward.

b. No later than thirty (30) days prior to the deadlines imposed on HRA pursuant to paragraphs 28(a) and (b), 29(c) and 33(a)-(c) of the Stipulation and Order, HRA shall develop training materials for its Public-Facing Employees that explain their

16

obligation to administer the SNAP and Medicaid programs as pertains to members of the Class in a manner consistent with the ADA and other statutes cited in the Complaint and HRA's obligations pursuant to the terms of this Stipulation and Order. As applicable, such training materials shall, among other things, impart the importance of identifying and recording information about the accommodation preferences of potential members of the Class, and shall explain the current and anticipated resources available to Public-Facing Employees and members of the Class with respect to the administration of the SNAP and Medicaid programs for persons who are blind or seriously visually impaired.

c. No later than sixty (60) days following the deadlines imposed on HRA pursuant to paragraphs 28(a) and (b), 29(c) and 33(a)-(c) of this Stipulation and Order, HRA shall (i) ensure that its Public-Facing Employees have been trained using training materials consistent with this Stipulation and Order; and (ii) provide Class Counsel with written acknowledgements of same.  HRA shall use training materials consistent with this Stipulation and Order to train its subsequently hired Public-Facing Employees.

## SECTION III:  CONTINUING JURISDICTION AND ENFORCEMENT

A.  <u>Periodic Reporting</u>

37.  No later than thirty (30) days after receiving responsive information from the SSA pursuant to the one-time request set forth in paragraph 31 herein, and subject to SSA approval, OTDA shall provide Class Counsel with a report containing aggregate information obtained from the SSA setting forth the number of potential Class members and the breakdown of such Class members' categories of requested alternative format accommodations.

38.     Beginning July 1, 2016, and continuing until the termination of jurisdiction as set forth in paragraph 41 herein, on a quarterly basis, the State Defendants shall provide to Class Counsel reports setting forth the names, and case numbers of Class members that have been identified to-date and the Class members' requested alternative format accommodations.

39.     No later than forty-five (45) days after the Effective Date, counsel for Defendants shall be available to meet with Class Counsel to provide an update about the progress in effectuating the terms of this Stipulation and Order, and shall be available to meet with Class Counsel every ninety (90) days thereafter to provide further progress updates, as necessary, until July 1, 2016.

B.     <u>Dismissal of Claims and Enforcement</u>

40.     As of the Effective Date, all claims contained in the Complaint, with the exception of those specifically reserved herein pursuant to paragraphs 41 and 42, shall be dismissed with prejudice.

41.     The jurisdiction of this Court shall terminate at the conclusion of twelve (12) months following the Full Implementation Date, except that if Plaintiffs move pursuant to paragraph 42 herein, jurisdiction shall continue until (a) any such motion is decided; (b) if any such motion is decided favorably for Plaintiffs, until such time as directed by the Court; or (c) such time as may be extended upon agreement by the parties in modification of this Stipulation and Order.

42.     During the twelve (12) months following the Full Implementation Date, if Plaintiffs believe that one or more Defendants has not complied with the terms of this Stipulation and Order, Class Counsel shall notify Defendants' counsel in writing of the nature and

specifics of the alleged failure(s) to comply at least thirty (30) days before any motion is made regarding this Stipulation and Order.  Such written notice shall be accompanied by copies of any documents or data relied upon by Plaintiffs for the claimed violations. Unless otherwise resolved, the parties' counsel shall meet within the thirty (30) day period following such notice to Defendants' counsel to discuss the claimed violations and possible solutions.  If no resolution is reached within thirty (30) days following written notice of the claimed violation, Plaintiffs may move this Court for an order for all appropriate relief only as against the noncompliant Defendant(s), and only as to the specific provision for which non-compliance is timely alleged by Plaintiffs.

43.  Notwithstanding the foregoing, no Defendant shall be deemed to have failed to comply with the terms of this Stipulation and Order for purposes of any motion contemplated in paragraphs 41 and 42 herein unless Plaintiffs can establish that Defendants' alleged failures to comply were not *de minimis* or isolated, but rather were substantial and sufficiently frequent or widespread as to be systemic in nature.

44.  Following the termination of the Court's jurisdiction as set forth in paragraph 41 herein, this Stipulation and Order shall be deemed unenforceable as to the respective Defendants.

C.   <u>Meet and Confer Regarding New Technologies</u>

45.  If any party identifies a newly developed or significantly improved alternative format for providing information to the members of the Class, that party may, but shall not be obligated to, notify counsel for all other parties in writing.  No later than ninety (90) days after such notice, the parties agree to meet and confer in good faith to discuss the newly identified alternative format(s), and the feasibility of utilizing it as a means of communicating with the Class.  Notwithstanding the foregoing, nothing contained in this

paragraph shall be construed to be an agreement or an admission by any Defendant that any such newly identified alternative format constitutes a reasonable accommodation under the ADA, Section 504, or any relevant state or local statute or regulation.  Nor shall anything contained in this paragraph be deemed to obligate any Defendant to provide any such newly identified alternative format to any members of the Class.

## SECTION IV:  ATTORNEYS' FEES

46.   The parties shall negotiate in good faith Plaintiffs' entitlement  to reasonable attorneys' fees, costs, and disbursements to be awarded to Class Counsel pursuant to 42 U.S.C. §§ 1988 and 12205 for all work through and including the execution of the Stipulation and Order. Upon the execution of this Stipulation and Order by counsel for all parties, Class Counsel shall forward to counsel for Defendants, no later than one business day thereafter, Class Counsel's time and billing records and statements of costs incurred in this action for which recovery is sought, so the parties may proceed to negotiate the amount of reasonable attorneys' fees, costs, and disbursements.

47.   Any agreement as to attorneys' fees, costs, and disbursements that is reached by the parties ("Provisional Agreement") is subject to the approval by all appropriate State officials, in accordance with N.Y. Public Officers Law § 17 (hereinafter, "State Approval"), and by the Comptroller of the City of New York pursuant to General Municipal Law § 50-k (hereinafter, "City Approval"). Class Counsel agrees to execute and deliver all necessary and appropriate vouchers and other documentation requested with respect to obtaining such approvals and effectuating payment.

a.   If State Approval and City Approval of the amount of attorneys' fees, costs, and disbursements are obtained before such publication of the Rule 23(e) notice as the

Court may order, the parties shall file a proposed amended Stipulation and Order including the amount of attorneys' fees, costs, and disbursements as to which City and State Approvals have been obtained.

b. If State Approval and City Approval of the amount of attorneys' fees, costs, and disbursements are obtained after the publication of a Rule 23(e) notice ordered by the Court, then the terms of the settlement of attorneys' fees, costs and disbursements will be embodied in a separate stipulation that will be forwarded to the Court to be "so-ordered."

c. In the event that State Approval or City Approval is not obtained, counsel for the City or State Defendants shall notify Plaintiffs' counsel within five (5) business days of the disapproval. Disapproval of the Provisional Agreement by the approving authorities of either State or City Defendants, or both of them, shall render the terms of the Provisional Agreement null, void, and of no further force and effect.

48. Within thirty (30) days of either (i) the declaring of an impasse by a party that no agreement on the amount of Plaintiffs' entitlement to attorneys' fees, costs, and disbursements may be reached despite the parties' good faith efforts, or (ii) Plaintiffs' receipt of notification that State Approval or City Approval has been denied, Class Counsel may make an application to the Court for an award of reasonable attorneys' fees, costs, and disbursements pursuant to 42 U.S.C. §§ 1988 and 12205 for all work through and including the execution of the Stipulation and Order; and Defendants' counsel may oppose any such application.

## SECTION IV:  GENERAL PROVISIONS

49.     Nothing contained in this Stipulation and Order shall be deemed to have created any

rights or entitlements to administrative or judicial proceedings for any individual which

do not otherwise exist pursuant to the relevant New York State statutes or regulations.

Notwithstanding the foregoing, no provision of this Stipulation and Order shall be

deemed to infringe upon a Class member's ability to seek individual relief through an

administrative hearing or a judicial proceeding, including but not limited to a proceeding

brought pursuant to article 78 of the New York Civil Practice Law and Rules, pertaining

to the Class member's SNAP and/or Medicaid benefits, or a Defendant's alleged failure

to provide a Class member's requested reasonable accommodation under the ADA,

provided that the Class member does not seek to assert any claims included in the

Complaint, or otherwise to challenge the contents of this Stipulation and Order.

50.     In the event of any change in federal statute or regulation, or state or local statute or

regulation, that any Defendant believes changes his or her responsibilities pursuant to this

Stipulation and Order, such Defendant shall so notify all other parties in writing and the

parties shall attempt to come to an agreement as to any modifications of the Stipulation

and Order that are warranted by any such changes in federal, state or local law.  If no

resolution is reached within thirty (30) days following the written notice, Defendants may

move this Court for an order for all appropriate relief pursuant to Rule 60(b) of the

Federal Rules of Civil Procedure or any other applicable rule or procedure.

51.     This Stipulation and Order shall have no precedential value or effect whatsoever and

shall not be cited, used or admissible in this or any other action or proceeding as evidence

or for any other purpose, except in an action or proceeding to enforce the terms of this

Stipulation and Order, or to assert that Class members are bound by the terms of this settlement.

52.    This Stipulation and Order embodies the entire agreement of the parties in this matter and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation and Order regarding the subject matter of the instant proceedings, shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein.

53.    All parties to this Stipulation and Order have participated in its drafting such that any ambiguity contained therein shall not be construed for or against any party.

54.    The parties warrant and represent that the persons executing this Stipulation and Order are duly authorized to do so.

55.    This Stipulation and Order shall be binding upon and inure to the benefit of the parties and each of their heirs, successors, assigns, executors and legal representatives.

56.    Rule 6 of the Federal Rules of Civil Procedure shall govern the computation of any time period specified by this Stipulation and Order.

57.    This Stipulation and Order may be executed by facsimile or email signatures in multiple counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same valid and binding agreement of the parties.

58.     Any notice, report, or communication required by or made pursuant to this Stipulation

and Order, other than notices sent to individual members of the Class, shall be sent by

electronic mail, or by first class mail upon request, to counsel at the addresses specified

below.

To Plaintiffs:

Greg Bass                                          Michael Daly
Senior Attorney                                    Drinker Biddle & Reath LLP
National Center for Law and Economic Justice       One Logan Square, Suite 2000
275 Seventh Avenue, Suite 1506                     Philadelphia, Pennsylvania 19103
New York, New York 10001                           michael.daly@dbr.com
 bass@nclej.org

To City Defendants:                                To State Defendants:

Carolyn Kruk                                       Linda Fang
Assistant Corporation Counsel                      Assistant Attorney General
New York City Law Department                       New York State Attorney General's Office
100 Church Street, Room 2-192                      120 Broadway, 24th Floor
New York, New York 10007                           New York, New York 10271
ckruk@law.nyc.gov                                  linda.fang@ag.ny.gov


        [THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK]

59.     Any party may change the above designated addressees or addresses by written notice to

the other parties.  A copy of such notice shall be filed with the Clerk of this Court.


Dated:      New York, New York
            May 7, 2015


Greg Bass                                           Michael Daly
Senior Attorney                                     Drinker Biddle & Reath LLP
National Center for Law and Economic Justice        One Logan Square, Suite 2000
275 Seventh Avenue, Suite 1506                      Philadelphia, Pennsylvania 19103
New York, New York 10001                            (215) 988-2604
(212) 633-6967                                      michael.daly@dbr.com
bass@nclej.org

By:                                                 By:
        Greg Bass       5/11/15                             Michael Daly


Carolyn Kruk                                        Linda Fang
Assistant Corporation Counsel                       Assistant Attorney General
New York City Law Department                        New York State Attorney General's Office
100 Church Street, Room 2-192                       120 Broadway, 24th Floor
New York, New York 10007                            New York, New York 10271
(212) 356-0893                                      (212) 416-8656
ckruk@law.nyc.gov                                   linda.fang@ag.ny.gov

By:  Carolyn Kruk                                   By:
        Carolyn H. Kruk                                     Linda Fang      5/12/15


SO ORDERED.

this _____ day of _____ 2015.



Honorable Thomas P. Griesa
United States District Judge

25

# APPENDIX A

<u>Section I:  Applications</u>

LDSS 2291 (Request for Replacement of Food Purchased with SNAP Benefits)
LDSS 2921 (Common Application for SNAP, Medicaid, and other benefits)
LDSS 3174 (Recertification Form for SNAP, Medicaid, and other benefits)
LDSS 4826 (SNAP Recertification and Application)
LDSS 4942 (SNAP Authorized Representative Request Form)

<u>Section II:  Publications and Instructions</u>

PUB 1301 (Instructions for Completing the Common Application)
PUB 1313 (Instructions for Completing the Recertification Form)
LDSS 4148A (What You Should Know About Your Rights and Responsibilities)
LDSS 4148B (What You Should Know About Social Services Programs)
LDSS 4148C (What You Should Know If You Have An Emergency)
LDSS 4826A (Instructions for Completing the SNAP Recertification and Application)

# APPENDIX B

<u>Section I:  Applications</u>

DOH 4220 (Access NY Application for Medicaid)
DOH 4282 (Application for Family Planning Benefit Program for Medicaid)
DOH 4328 (Application for Medicare Savings Program)
DOH 4495A (Access NY Supplement A)
<u>Section II:  Publications and Instructions</u>

OHIP 0065 (Family Planning Benefit Program Fact Sheet)
DOH 4220B (List of Necessary Documentation for Access NY Application)
DOH 4220C (Information About Medicaid, Family Health Plus and Child Health Plus Programs)
DOH 4220I (Instructions for Access NY Application)
DOH 4286 (Family Planning Benefit Program Application Instructions)
DOH 5104 (Information Concerning Medical Assistance for SSI Beneficiaries)
Supplement to LDSS 4148A and LDSS 4148B (Important Changes in the Medicaid Program)
New York Medicaid Choice enrollment packet

# APPENDIX C

Section I: Applications

*Medicaid*
MAP-909E (DAB Renewal)

Section II: Publications and Instructions

*SNAP*
BRC-100 (What You Need to Know About SNAP)
BRC-901C (Recertify by Telephone: IVRS)
BRC-901D (Telephone Recertification)
BRC-681A (Are You a Person With a Disability?)
W-129G (SNAP Documentation Guide)

*Medicaid*
BRC-3000 (Medicare Savings Program)
W-119D (Eligibility Factors and Suggested Documentation Guide)
MAP-2096P (Instructions for DAB Renewal)
MAP-2096Q (Instructions for DAB Renewal)

Section III: Communications

*SNAP*
W-138Q (Supplemental Nutrition Assistance Program (SNAP) Income Guidelines)
W-113K (Documentation Requirements and/or Assessment Follow-Up)
W-119 (Request for Contact on a Supplemental Nutrition Assistance Program (SNAP) Application)
W-119D (Eligibility Factors and Suggested Documentation Guide)
W-129RR (Notice of Supplemental Nutrition Assistance Program (SNAP) Recertification Appointment)
W-908CC (Notice of Rescheduled Appointment for Recertification Interview)
W-908F (Notice of Rescheduled Supplemental Nutrition Assistance Program (SNAP) Telephone Recertification Interview)
M-40K (Notice of Denial of Expedited Supplemental Nutrition Assistance Program (SNAP) or Inability to Issue Supplemental Nutrition Assistance Program Benefits)

*Medicaid*

| MAP-3072-a | Notice to Consumer Regarding Medicaid Surplus Eligibility |
| MAP-3050 | Notice of Intent to Discontinue Medical Assistance-Family Health Plus Coverage - Excess Resources |
| MAP-2087ah | Notice of Denial Of Your Application For Public Health Insurance (H25-H26) |
| MAP-2087 | Notice of Acceptance of Your Medical Assistance Application |

28

| MAP-909 | Notice to Former SSI Beneficiary |
|---|---|
| MAP -259p | Notice of Acceptance of Your Medical Assistance Application/Recertification |
| MAP-2097W | Notice of Denial of Health Insurance Application (Excess Income/Resources Program) |
| MAP-3002E | Notice of Change From Full MA to Surplus Income Program-Medicare Savings Program (MSP) |
| MAP-259a | Notice of Your Medical Assistance Recertification Eligibility Decision (Institutional Care and Nursing Homes) |
| MAP-2070G | Notification Of Permanent Absence Status |
| MAP-259V | Notice of Decision on Your Medical Assistance Application Long-Term Care Services |
| MAP-316K | Notice To Re-Establish Medicaid-FHP After Fair Hearing (Managed Care) |
| MAP-3035B | Notice of Discontinuance (Stenson) |
| MAP-2088C | Notice Of Intent To Change Medicaid Coverage |
| MAP-2097H | Notice of Change From Full MA To Excess Income (Family Health Plus Info) |
| MAP-259B | Notice Of Denial Of Your Nursing Home Application |
| MAP-2088V | Notice of Renewal of Your Public Health Insurance Coverage |
| MAP-713F | Notice of Denial of Your Medical Assistance Application MBI-WPD-Financial |
| MAP-713D | Notice of Discontinuance of Your Medical Assistance Coverage MBI-WPD- Financial |
| MAP-713 | Notice of Acceptance of Your Medical Assistance Application MBI-WPD Premium Morator |
| MAP-909<br>W-296E<br>LDSS-486-NYC<br>MAP-25D<br>MAP-252B<br>LDSS-1151 | Stenson "Notice To Former SSI Beneficiary" |
| MAP-909F<br>W-296E<br>LDSS-486T<br>MAP-252D<br>MAP-252B<br>LDSS-1151 | MSP renewal |
| MAP-909E<br>MAP-2096P<br>MAP-909K<br>MAP-2050A<br>MAP-2096Q<br>MAP-252B<br>LDSS-486<br>LDSS-1151 | MSP renewal |

| | |
|---|---|
| HC-3002<br>MAP-3002D<br>MAP-3015 | |
| MAP-3021<br>MAP-3022 | Medicaid Nursing Home Renewal |
| MAP-2087A(E-S) | Denial Notices for rest of application Types in EDITS |
| MAP-2087A(E-S) | Ineligible (Already MA Active) |
| LDSS - 4007 | Notice of decision of initial authorization/reauthorization/or denial of personal care services |
| LDSS-4273 | Notice of intent to discontinue personal care services under the shared aide program |
| LDSS - 4008 | Notice of intent to increase, reduce or discontinue personal care services |
| LDSS-4274 | Notice of intent to continue/increase/decrease personal care services under the shared aide program |
| M-31V | Notice of Decision on CDPAP Application |